COUGHLIN DUFFY LLP
Linda Engleby, Esq. (003552000)
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
(973)267-0058
*Attorneys for Plaintiffs, Richard Layton*
*and Dana Layton-Claxton, as Executor*
*of the Estate of Harry J. Layton*

**FILED**

MAR 19 2020

JAMES S. LA CORTE
SURROGATE

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF HARRY J. LAYTON, DECEASED | : SUPERIOR COURT OF NEW JERSEY : CHANCERY DIVISION: PROBATE PART : UNION COUNTY : : DOCKET NO. R1435 : : Civil Action : : **ORDER TO SHOW CAUSE** : : : : |

**THIS MATTER** being brought before the Court by Coughlin Duffy LLP, attorneys for

Plaintiffs Richard Layton and Dayna Layton-Claxton, as Executor of the Estate of Harry J.

Layton, seeking relief by way of summary action based upon the facts set forth in the Verified

Complaint filed herewith:

**IT IS** on this *19th* day of *March*, 2020;

**ORDERED** that Defendant Alcatel Lucent USA, Inc. d/b/a Nokia appear and show cause

before the Superior Court of New Jersey at the Union County Courthouse in Elizabeth, New *Hon. Katherine R. Dupuis, P.J.Ch.*

Jersey at *9* o'clock in the *fore* noon or as soon thereafter as counsel can be heard, on

the *1st* day of *May*, 2020, why an order should not be issued reforming the

beneficiary designation form to name the trust for the benefit of Richard Layton under the Harry

J. Layton Trust dated July 21, 2005 as the beneficiary of the remaining one-half share of the Nokia Savings Plan and awarding other such relief that the Court deems proper;

And it is further **ORDERED** that:

1.    Any party in interest who wishes to be heard with respect to any of the relief requested in the verified complaint served with this order to show cause shall file with the Surrogate of Union County and serve upon the attorney for the plaintiffs at the address set forth above, a written answer, an answering affidavit, a motion returnable on the date this matter is scheduled to be heard, or other response to this order to show cause and to the relief requested in the verified complaint by *April 21*          , 2020. Filing shall be made with the Surrogate of Union County at 2 Broad Street, Elizabeth, New Jersey 07207. Such responding party in interest shall also file with such Surrogate by the foregoing date a proof of service upon the plaintiffs.

2.    Any party in interest who fails to timely file and serve a response in the manner provided in paragraph 1 of this order to show cause shall be deemed in default, the matter may proceed to judgment without any further notice to or participation by such defaulting party in interest, and the judgment shall be binding upon such defaulting party in interest.

3.    Parties in interest are hereby advised that a telephone call to the plaintiffs, to the plaintiffs' attorney, to the Surrogate, or to the Court will not protect your rights; you must file and serve your answer, answering affidavit, motion or other response with the filing fee required by statute. The check or money order for the filing fee shall be made payable to the Surrogate of the County where this matter is being heard. If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. A list of these offices is provided. If you do not have an attorney or are not eligible for free legal assistance through the Legal Services office (or such office does not provide services for this particular type of proceeding), you may

obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these office numbers is also provided.

4.      If no party in interest timely files and serves a response to this order to show cause as provided for above, the application may be decided by the Court on or after the date this matter is scheduled to be heard, and may be decided on the papers without a hearing, provided that the plaintiffs have filed a proof of service and a proposed form of judgment as required by paragraphs 7 and 9 of this order to show cause.

5.      If a party in interest timely files a response as provided for above, the court may entertain argument on the date this matter is scheduled to be heard.

6.      The plaintiffs must file and serve any written reply to the response of a party in interest by *April 28*    , 2020. The reply papers together with a proof of service must be filed with the Surrogate in the county listed above.

7.      Plaintiffs shall submit to the Surrogate an original and two copies of a proposed form of judgment addressing the relief sought on the date this matter is scheduled to be heard (along with a postage-paid return envelope) no later than *five (5)* days before the date this matter is scheduled to be heard.

8.      A copy of this order to show cause, the verified complaint, and all other papers submitted in support of this application, all of which shall be certified thereon by plaintiffs' attorney to be true copies, shall be served upon the parties in interest listed in paragraph 15 of the complaint, by certified mail, return receipt requested (or by registered mail, return receipt requested with respect to any party in interest who resides outside the United States, and by regular mail or alternatively shall be personally served upon the parties in interest listed in

paragraph 15 of the complaint within _10_ days of the date hereof, in accordance with R. 4:67-3, R. 4:4-3 and R. 4:4-4, this order to show cause being original process.

9.     The plaintiffs shall file with the Surrogate of Union County a proof of service of the documents required by paragraph 8 above to be served on the parties in interest no later than _five (5)_ days before the date this matter is scheduled to be heard.

10.     The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than _2_ days before the return date.

Sharda Badri

Sharda Badri, Deputy Surrogate

J.S.C.

350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
phone: 973-267-0058
fax: 973-267-6442
www.coughlinduffy.com



**Coughlin Duffy** LLP

Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
phone: 212-483-0105
fax: 212-480-3899

LINDA ENGLEBY, ESQ.
DIRECT DIAL: (973) 631-6032
E-MAIL: LENGLEBY@COUGHLINDUFFY.COM

March 18, 2020



RECEIVED

MAR 19 2020

Union County Surrogate

**VIA UPS OVERNIGHT MAIL**

The Hon. Katherine R. Dupuis, P.J.Ch.
Superior Court of New Jersey, Union County
2 Broad Street, 1st Floor, New Annex #1A
Elizabeth, New Jersey 07207

    **Re:    In the Matter of the Estate of Harry J. Layton**

Dear Judge Dupuis:

    This firm represents Petitioners Richard Layton and Dayna Layton-Claxton, as Executor of the Estate of Harry J. Layton in the above matter. We ask that the Court accept this letter in lieu of a formal brief in support of Petitioners' Verified Complaint for Reformation of Beneficiary Designation Form.

    Harry J. Layton (the "decedent") died on April 22, 2016, survived by his son Richard Layton, his daughter Dayna Layton-Claxton, and his spouse, with whom he had a prenuptial agreement. The decedent had the following operative estate planning documents:

1.  Will dated July 21, 2005 and the Harry J. Layton Trust dated July 21, 2005.
2.  Layton Family Trust dated February 18, 1998.
3.  Layton Irrevocable Trust dated July 24, 2012.[1]

In all three of the above trusts, the decedent left the trust assets in equal shares to his daughter and to his son, provided that his son's share was to be held in further trust. The decedent named Dayna Layton as the trustee. The terms of the trust established for Richard Layton in the Harry J. Layton Trust dated July 21, 2005 and the Layton Irrevocable Trust dated July 24, 2012 are identical; the terms of the trust established for Richard Layton in the Layton Family Trust dated February 18, 1998 are similar to the other two and the intent is identical, namely to ensure that the decedent's son will benefit from the trust assets but remain eligible to receive benefits from any government agency.

---

[1] Copies of each document are attached to the Verified Complaint as Exhibits A, B, E and F, respectively.

1700420

Hon. Katherine R. Dupuis, P.J.Ch.
March 18, 2020
Page 2



**Coughlin Duffy** LLP

Upon his death, decedent owned a Savings Plan of Alcatel-Lucent USA Inc. (doing business as Nokia) (the "Nokia Savings Plan") which had a value of approximately $205,000 as of his date of death.  He designated his children as primary beneficiaries, and provided that his son's share be distributed to the trust under his Last Will and Testament dated February 18, 1998.[2] The terms of the trust established under this superseded Will are identical to the terms of the Layton Family Trust of the same date. As is apparent, the decedent failed to update his beneficiary designation form to reflect the fact that he had revoked his Will dated February 18, 1998 by executing a new Will/Revocable Trust in 2005. At this point, the Administrator of the Nokia Savings Plan refuses to take any action to distribute Richard's share without court direction.

The doctrine of probable intent has been codified at N.J.S.A. 3B:3-33.1, which provides in part as follows:

> b.      The intention of a settlor as expressed in a trust, or of an individual as expressed in a governing instrument, controls the legal effect of the dispositions therein and the rules of construction expressed in N.J.S.A. 3B:3-34 through N.J.S.A. 3B:3-48 shall apply *unless the probable intent of such settlor or of such individual, as indicated by the trust or by such governing instrument and relevant circumstances, is contrary.* (Emphasis added)

New Jersey case law addressing the doctrine of probable intent allows a court to consider extrinsic evidence in order to effectuate the manifest intent of the testator.  In *Fidelity Union Trust Co. v. Robert*, 36 N.J. 561 (1962), the Court held that "in ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances." Id. at 564-565.  Further, the Court stated that "[so] far as the situation fairly permits, courts will scribe to the testator 'those impulses which are common to human nature and will construe the will so as to effectuate those impulses.'" Id. at 565

Clearly the dominant plan and purpose of Harry J. Layton was to benefit his two children, equally, and to hold his son's share in a "Supplemental Needs Trust" so as not to disqualify him from receiving government benefits. This dispositive pattern is consistently found in his estate planning documents executed over the course of several years. The decedent's unilateral mistake should be remedied by reformation of the mistaken testamentary disposition to allow the probable intent of the decedent to be carried out.

This principle of reformation, as well as rescission to remedy a unilateral mistake, guided the court in *Stephenson v. Spiegle*, 429 N.J. Super. 378 (2013). In Stephenson, the decedent made a mistake and named his attorney as beneficiary on a bank account which comprised a significant portion of his estate.  The Court recognized that the mistake was so consequential that to enforce

---

[2] See Exhibit A to the Certification of James B. Garland, Esq. which is annexed to the Verified Complaint as Exhibit D.

Hon. Katherine R. Dupuis, P.J.Ch.
March 18, 2020
Page 3



**Coughlin Duffy** LLP

the contract as actually made would be unconscionable, and rescission was appropriate to remedy the unilateral mistake. *Id.* at 384. The Court concluded that "[a]lthough this case did not fit many of the various causes of action applicable when a mistake in the creation of a contract or instrument is made, the judge appropriately granted relief through a common sense and equitable application of rescission principles." *Id.* at 387.

Additional principles governing the application of the doctrine of probable intent allow the Court to apply common sense and equitable application of rescission and reformation. As stated by the court in *In re Estate of Tateo*, 338 N.J. Super. 121 (App. Div.), *certif. denied*, 168 N.J. 295 (2001) "a clearly ascertained probable intent can be effectuated by the court even if it means the deletion from, substitution of or insertion in the verbiage used in the will." Further, the court stated, "the essential endeavor the court must undertake 'is to put itself in the testator's position insofar as possible in the effort to accomplish what he would have done had he 'envisioned the present inquiry.'" *Id.*, 338 N.J. Super. 127, *quoting Fidelity*, 36 N.J. at 565-566.

In this case, the Court does not have to strain far in its reasoning or common sense to conclude that had the decedent been made aware that he needed to update his beneficiary designation form after he revised his will, he would have done so by simply naming the trust for his son under his revised estate planning documents as the beneficiary of the one-half share of his Nokia Savings Plan.

In the alternative, if this Court refuses to substitute the operative document and the trust thereunder as the beneficiary of one-half of the Nokia Savings Plan, the beneficiary designation form itself states that "If a primary beneficiary does not survive you, his or her share will be divided equally among the surviving primary beneficiary(ies)."

A testator can execute a subsequent will which revokes a prior will, either expressly or by inconsistency. N.J.S.A. 3B:3-13(a). If the testator intended that the subsequent will replace rather than supplement the prior will, then the subsequent will wholly revokes the prior will by inconsistency. N.J.S.A. 3B:3-13(b)(1). Arguably the trust u/w Harry J. Layton dated February 18, 1998 does not survive, as it was effectively revoked, and therefore the share for the decedent's son should be distributed to the decedent's daughter, as the surviving primary beneficiary.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the beneficiary designation form for the Nokia Savings Plan be reformed to name the trust u/a Harry J. Layton Trust fbo Richard Layton dated July 21, 2005 as the beneficiary of the remaining one-half of the Nokia Savings Plan, and that the Plan Administrator be ordered to distribute the funds accordingly.

Thank you for the Court's time and attention to this matter.

Hon. Katherine R. Dupuis, P.J.Ch.
March 18, 2020
Page 4



Respectfully submitted,

COUGHLIN DUFFY LLP

Linda Engleby

cc:   James S. LaCorte, Union County Surrogate (via UPS overnight delivery)
Richard Layton
Dayna Layton-Claxton, as Executor of the Estate of Harry J. Layton

RECEIVED PAYMENT
JAMES S. LA CORTE, Surrogate

**FILED**

MAR 1 9 2020

**JAMES S. LA CORTE**
**SURROGATE**

COUGHLIN DUFFY LLP
Linda Engleby, Esq. (003552000)
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
(973)267-0058
*Attorneys for Plaintiffs, Richard Layton*
*and Dayna Layton-Claxton, as Executor*
*of the Estate of Harry J. Layton*

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF HARRY J. LAYTON, DECEASED | : SUPERIOR COURT OF NEW JERSEY<br>: CHANCERY DIVISION: PROBATE PART<br>: UNION COUNTY<br>:<br>: DOCKET NO. R1435<br>:<br>: Civil Action<br>:<br>: **VERIFIED COMPLAINT FOR**<br>: **REFORMATION OF BENEFICIARY**<br>: **DESIGNATION FORM** |

Plaintiff Richard Layton, residing at 106 Village Drive, Basking Ridge, New Jersey, 07920, and Plaintiff Dayna Layton-Claxton, as Executor of the Estate of Harry J. Layton, residing at 96 Jesse Court, Montville, New Jersey 07045 state:

1.     Harry J. Layton (the "decedent") died on April 22, 2016, having resided at 1425 Golf Street, Scotch Plains, N.J. 07076, leaving a Will dated July 21, 2005 and the Harry J. Layton Trust, of same date, copies of which are attached hereto as **Exhibit A** and **Exhibit B,** respectively.

2.     The decedent was survived by his spouse, Joanne D. Layton, and his two children, Dayna Layton-Claxton and Richard Layton, neither of whom are minors.

3.     The decedent and Joanne D. Layton entered into a Prenuptial Agreement on June 25, 1991, which was amended on January 6, 1998, which amendment included a current list of

separate assets. Said list included Lucent Long Term Savings Plan, valued at $260,866 as of August 31, 1999.

4.    On July 9, 1998 the decedent executed a Beneficiary Designation form for the Lucent Technologies Inc. Long Term Savings Plan ("Nokia Savings Plan"), to which his spouse Joanne D. Layton consented by executing the same document on the same date, naming his children as primary beneficiaries, in equal shares, providing, however, that the share for Richard Layton "shall be distributed to the trustees of the trust under Paragraph FIFTH of the participant Last Will and Testament dated February 18, 1998 to be administered and distributed pursuant to the terms thereof." A copy of the Beneficiary Designation form is attached hereto as **Exhibit C**.

5.    Under Paragraph FIFTH of the decedent's Will dated February 18, 1998 ("the 1998 Will"), a trust is established for the benefit of Richard Layton with the purpose of allowing the assets to be available for Richard Layton's limited benefit but not to disqualify him from receiving government benefits. An executed copy of the 1998 Will has not been located, but it was drafted by James B. Garland, Esq., who was present at the execution of the 1998 Will. A Certification of James B. Garland, Esq. and an unsigned copy of the 1998 Will is attached hereto as **Exhibit D**.

6.    On July 21, 2005, the decedent executed a Will and Trust, which were the operative documents upon the decedent's death, and said Will ("the 2005 Will") was admitted to probate on June 10, 2016 and Dayna Layton Claxton qualified as executor and received Letters Testamentary. The 2005 Will gave the residue of the decedent's Estate to the Harry J. Layton Trust dated July 21, 2005 ("the 2005 Trust").

7.    Under Paragraph 2 of the 2005 Trust, the decedent gave his surviving spouse the right to remain in the house for 60 days, after which the real property would be sold. Under

Paragraph 3 of the 2005 Trust, the decedent gave the remaining principal of the Trust estate to his two children, in equal shares, taking into consideration gifts made to each respective child during his or her lifetime, providing, however, that Richard Layton's share be distributed to the trustee of the trust under Paragraph 4. Under Paragraph 4 of the 2005 Trust, a trust is established for the benefit of Richard Layton with the purpose of allowing the assets to be available for Richard Layton's limited benefit but not to disqualify him from receiving government benefits. A copy of the 2005 Trust is attached hereto as **Exhibit B**.

8.      The decedent also established the Layton Family Trust dated February 18, 1998, which Trust held two life insurance policies insuring the decedent's life, and which provided that upon the decedent's death, the assets of the trust were to be distributed to his two children, in equal shares, providing, however, that Richard Layton's share be distributed to the trustee of the trust under Paragraph 6.  Under Paragraph 6 of the Layton Family Trust, a trust is established for the benefit of Richard Layton with the purpose of allowing the assets to be available for Richard Layton's limited benefit but not to disqualify him from receiving government benefits. A copy of the Layton Family Trust dated February 18, 1998 is attached hereto as **Exhibit E**.

9.      The decedent also established the Layton Irrevocable Trust dated July 24, 2012 which Trust held the marital residence, and which provided that upon the decedent's death, the assets of the trust were to be distributed to his two children, in equal shares, providing, however, that Richard Layton's share be distributed to the trustee of the trust under Paragraph 6.  Under Paragraph 6 of the Layton Irrevocable Trust, a trust is established for the benefit of Richard Layton with the purpose of allowing the assets to be available for Richard Layton's limited benefit but not to disqualify him from receiving government benefits.  A copy of the Layton Irrevocable Trust dated July 24, 2012 is attached hereto as **Exhibit F**.

10.     Under each of these estate planning documents, Dayna Layton-Claxton is named as the trustee for the trust established for the benefit of Richard Layton.

11.     Upon the death of Harry J. Layton, the beneficiary designation form for the Nokia Term Savings Plan (also referred to as "the Nokia Savings Plan") had not been updated to reflect that the 1998 Will was not the operative Will. The Savings Plan Administrator for Alcatel-Lucent USA Inc. (doing business as Nokia), by and through their attorney Charles P. Abraham of Day Pitney, LLP and by letter dated July 8, 2019, has determined that "a construction proceeding may be necessary to ascertain allocation of this estate." A copy of Charles P. Abraham's letter is attached hereto as **Exhibit G**.

12.     Dayna Layton-Claxton has received her share of the Nokia Savings Plan account. Richard Layton's remaining share has a market value as of September 30, 2019 of $128,048.07.

13.     Pursuant to R. 4:95-2, Richard Layton respectfully requests the Court to direct the disposition of the funds in the Nokia Savings Plan.

14.     Richard Layton respectfully suggests that it was his father's probable intent, given the entirety of the decedent's estate planning over the course of many years, competent extrinsic evidence and the common human impulse to protect assets from disqualifying heirs from the government benefits they are receiving, to have Richard's Supplemental Needs Trust under the operative documents named as beneficiary of the Nokia Savings Plan and that his father simply overlooked that this form needed to be updated in 2005.  Therefore, Richard Layton respectfully requests that the beneficiary designation form be reformed to correct the decedent's unilateral mistake of not updating the form.

15.     The following persons have an interest in the matter, are competent and of full age, and none of them is in the military service:

| Name | Address | Relationship |
|------|---------|--------------|
| Richard Layton | 108 Village Drive<br>Basking Ridge, N.J. 07920 | Son of decedent |
| Dayna Layton-Claxton | 96 Jesse Ct.<br>Montville, N.J. 07045 | Executor, child of decedent |
| Charles P. Abraham, Day Pitney LLP | Day Pitney LLP<br>One Jefferson Road<br>Parsippany, N.J. 07054 | Attorney for Alcatel-Lucent USA, Inc. (doing business as Nokia) |

16.    Joanne D. Layton died on November 8, 2016.  There are no other heirs or next of kin known to plaintiff.

**WHEREFORE**, Plaintiffs demands judgment: reforming the beneficiary designation form to name the trust for the benefit of Richard Layton under the Harry J. Layton Trust dated July 21, 2005 as the beneficiary of the remaining one-half share of the Nokia Savings Plan, and awarding such other relief as the Court deems proper.

## SECOND COUNT

17.    Plaintiffs repeat the allegations of the preceding paragraphs and incorporate those allegations as if set forth at length herein.

18.    The Beneficiary Designation form to the Alcatel-Lucent Savings/401(k) Plan (the "Plan"), provides "If a primary beneficiary does not survive you, his or her share will be divided equally among the surviving primary beneficiary(ies)."

19.    The decedent revoked his Last Will and Testament dated February 18, 1998 by executing his Will dated July 21, 2005 and therefore the trust established under Paragraph FIFTH did not exist at the time of the decedent's death.

20.     The surviving primary beneficiary is the decedent's daughter, Dayna Layton-Claxton.

21.     Richard Layton respectfully suggests that, if the beneficiary designation form is not reformed, the Participant's beneficiary of the remaining one-half of the Account is the surviving primary beneficiary, Dayna Layton-Claxton, according to the Plan's Beneficiary Designation Form.

**WHEREFORE**, Plaintiffs demands judgment that if the beneficiary designation form is not reformed, the Court deem the named beneficiary, namely "the trustees of the trust under Paragraph FIFTH of the participant Last Will and Testament dated February 18, 1998" to be not in existence and order the assets to be distributed to the remaining primary beneficiary, Dayna Layton-Claxton, and awarding such other relief as the Court deems proper.

DATED:  March 18, 2020                    **COUGHLIN DUFFY LLP**
                                          *Attorneys for Plaintiffs*


                                          Linda Engleby, Esq
                                          For the Firm

## CERTIFICATION PURSUANT TO R: 4:5-1

Pursuant to R. 4:5-1, the undersigned certifies the following:

1.     That, to the best of my knowledge and belief, this matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor any such proceeding contemplated at this time by the Plaintiffs.

2.     That, to the best of my knowledge and belief, there are no other parties who should be joined in this action.

3.     I certify that the foregoing statements are true. I am aware that if any of the foregoing statements is willfully false, I am subject to punishment.

COUGHLIN DUFFY LLP
*Attorneys for Plaintiffs*

DATED:  March 18, 2020

Linda Engleby, Esq.

VERIFICATION OF DAYNA LAYTON-CLAXTON

STATE OF NEW JERSEY          :

                                             :      ss.

COUNTY OF MORRIS          :

I, DAYNA LAYTON-CLAXTON, being duly sworn according to law, depose and state:

2.       I am the person named in the foregoing Verified Complaint.

The statements in the Complaint are true to the best of my knowledge and belief.

DATED: ~~February~~ March 13, 2020

DAYNA LAYTON-CLAXTON

Sworn to and subscribed
Before me this 13th day
Of March , 2020

Notary Public

MANDEE MICHELE ELMER
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES AUG. 13, 2024

## VERIFICATION OF RICHARD LAYTON

STATE OF NEW JERSEY    :

             :  ss.

COUNTY OF MORRIS     :

   I, RICHARD LAYTON, being duly sworn according to law, depose and state:

1.  I am the person named in the foregoing Verified Complaint.

The statements in the Complaint are true to the best of my knowledge and belief.

DATED:  November 21, 2019

RICHARD LAYTON

Sworn to and subscribed
Before me this 21 day
Of November , 2019

Notary Public

JACLYN T. McCONVILLE
NOTARY PUBLIC OF NEW JERSEY
Commission # 50040891
My Commission Expires 6/28/2021

8



Original Will being held in vault #11,074
Coughlin Duffy LLP
350 Mt. Kemble Avenue, P.O. Box 1917
Morristown, New Jersey 07962-1917

**LAST WILL AND TESTAMENT**

I, <u>HARRY J. LAYTON</u>, of the Township of Scotch Plains, in the County of Union and State of New Jersey, being of sound and disposing mind, memory and understanding, make, publish and declare the following as and for my Last Will and Testament, hereby revoking all former Wills and Codicils heretofore by me made and executed:

<u>FIRST</u>:  I direct that all my just debts, expenses of my last illness and funeral expenses be paid as soon as conveniently may be done after my decease.

I direct that all estate, transfer, succession, inheritance, legacy and similar taxes, including interest and penalties thereon, if any, but excluding any Federal Generation Skipping Transfer Tax upon or with respect to any property required to be included in my gross estate under the provisions of any tax law, and whether or not passing hereunder, or upon or with respect to any bequest or devise herein made, or upon or with respect to any person with respect to any such property, including any tax resulting from the inclusion of any amounts in the computation of the tax under any tax law, shall be paid out of my residuary estate as an expense in the settlement of my estate, and that there shall be no proration of any such taxes.  Any Federal Generation Skipping Transfer Tax resulting from a transfer occurring under this Will or the trust established by me under Agreement with HARRY J. LAYTON

and DAYNA CLAXTON, dated July 21, 2005, as from time to time amended, (the "Trust"), or with respect to any property required to be included in my gross estate under the provisions of any tax law shall be charged to the property constituting the transfer in the manner provided by applicable law.

SECOND:(a)  I give and devise to my children, namely, DAYNA CLAXTON and RICHARD LAYTON, surviving me, in equal shares, as they may desire to take, all tangible chattels owned by me at the time of my death, including but without limitation of the generality of the term tangible chattels, all furniture, books, pictures, wearing apparel, jewelry, household furnishings, china, bric-a-brac, silver, automobiles, any frequent flyer miles which I may own or be entitled to at the date of my death, and other tangible personal belongings and effects of every kind, but excluding all cash, credits, securities and all property in the nature of investments, with due reference being given to any memorandum I may leave with this Will regarding the distribution of my tangible personal property.  Any remaining items shall be sold and the proceeds of sale added to my residuary estate.

(b)  All costs of safeguarding, insuring, packing, and storing my tangible personal property before its distribution and of delivering each item to the place of residence of the beneficiary shall be paid by each such beneficiary.

THIRD:  All the rest, residue and remainder of my

-2-

estate, both real and personal, of whatsoever kind and nature and wheresoever situate, of which I may die seized or possessed, or to which I may be entitled at the time of my death, I direct be paid over and delivered to the Trustee then serving of the Trust, to be administered and distributed in accordance with the terms thereof.

FOURTH: I nominate, constitute and appoint my daughter, DAYNA CLAXTON, Executor hereof and direct that my Executor be permitted to serve without bond or other security for performing the duties of Executor in any jurisdiction. In the event my daughter shall not survive me, or having survived me shall fail to qualify, or having qualified shall for any reason cease to act, I nominate, constitute and appoint PEAPACK-GLADSTONE BANK substitute Executor hereof, likewise without bond.

FIFTH: I give to my Executor in addition to the powers conferred by law, the following further full powers, exercisable at any time and repeatedly from time to time:

(a) To retain as investments, or otherwise, without requirement of diversification, any property owned by me at the time of my death, or subsequently acquired pursuant to my Will, and to increase the investment in any such property, and to make other investments in, and to exchange any property for, any of the following: any securities of any corporation; any bonds, notes, mortgages or participations secured on real estate, wherever situate; any obligations of any government, state, county, municipality or political subdivision or instrumentality, domestic or foreign; any real estate or improvements thereon; any common trust fund established, maintained and operated by my Executor or any duly appointed successor executor; any other investments of any kind; all as in the absolute discretion of my Executor may be deemed proper, whether or not any of such investments are authorized by any

-3-

law as proper for the investment of trust funds.

(b)   To become party to any voting trust agreement, and to vote and to give proxies to vote upon any securities held, and to cast any of such votes for my Executor.

(c)   To make and carry out any contracts, leases and agreements relating to any property held by my Executor and to make such compromises or settlements of debts, claims or controversies as the fiduciary may deem necessary or advisable, even if the term of said contract, lease or agreement will extend beyond the term of administration of my estate.

(d)   To borrow money from others or from the Executor, whether to pay taxes, exercise options or subscription rights, pay assessments or to accomplish any other purpose of any nature incidental to the administration of my estate and to mortgage or pledge as security therefor any property constituting a part of my estate or at any time held by the Executor hereunder.

(e)   To make interim payments in reasonable amounts on account of fiduciary commissions or attorneys' fees, or both, at such time or times as the Executor may, in the absolute discretion of the Executor, deem beneficial for and in the best interest of my estate and the beneficiaries thereof without prior application to or approval by any court, any statute or rule of law to the contrary notwithstanding.

(f)   To pay, in the absolute discretion of the Executor, any bequest or to distribute my estate, in cash or in property, or partly in cash and partly in property, and to make non-pro rata payments or distributions of such cash or property, and for those purposes to use and allocate any property not specifically bequeathed or devised, at date of distribution values without regard to the adjusted basis for income tax purposes of any such property so paid, distributed or allocated.

(g)   To exercise or refrain from exercising any election, allocation of tax attributes or option available under the Internal Revenue Code, any successor thereto and the Regulations thereunder (the "Code"), with or without making equitable adjustments with respect to any interests in property passing hereunder by reason of any such election or option. The determination of the fiduciary as to whether and to what extent to make said election, allocation or option shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such election, allocation or option.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any

-4-

beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(h)   To allocate, in the sole and absolute discretion of the fiduciary, any exemption from the Federal Generation Skipping Transfer Tax to any property with respect to which I am the transferor as defined in §2652 of the Code for the purposes of the Federal Generation Skipping Transfer Tax (whether or not such property is included in my probate estate) and to exclude any such property from such allocation. The determination of the fiduciary as to whether and to what extent to make said allocation shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such allocation.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(i)   To hold property in the names of nominees or so that it will pass on delivery, or in the name of a corporate fiduciary without disclosing any fiduciary capacity; and to leave property in the custody of a firm of stockbrokers and registered in the name of the stockbrokers' nominees.

(j)   To renew, assign, alter, extend, compromise, abandon or release, with or without consideration or submit to arbitration, obligations or claims held by or asserted against the fiduciary or which affect assets of my estate, all as the Executor may deem advisable.

(k)   To engage accountants, appraisers and other experts and legal counsel; to employ agents, clerks and other assistants; and to remunerate and pay the expenses of such persons.  My Executor is authorized to employ custodians of the assets and other assistants and to engage and rely on investment counsel, and in the discretion of my Executor, to grant discretionary investment authority to investment counsel.

(l)   To make or continue any debt or guarantee, including any debt or guarantee owed to any Executor individually, and any pledge or mortgage securing it.

(m)   Except as provided herein, to apply any income or principal that is payable to a minor or any person who in the judgment of the fiduciary is incapable of making proper disposition thereof, by payments on behalf of the beneficiary to anyone with whom the beneficiary resides and/or by payments in discharge of the beneficiary's bills, all without the intervention of any guardian or committee or like fiduciary,

-5-

and without obligation to see to the further application thereof.

(n)  To sell for cash or on credit (at public or private sale), exchange, mortgage, lease for any period (either as landlord or tenant and including renewals of the term) and modify, extend or cancel leases, grant options, refinance mortgages on property and subordinate the interest of the fiduciary to the interest of a lender, all regardless of statutory restrictions or the probable duration of my estate or any trust, or otherwise dispose of or deal with any real or personal property, in such manner and upon such terms and conditions as the fiduciary may deem advisable; to erect, renovate or alter buildings or otherwise improve and manage buildings and property; demolish buildings; make ordinary and extraordinary repairs; grant easements and make party wall contracts; dedicate roads; subdivide; adjust boundary lines and partition; and to do everything with respect to interests in any property that any individual owner may do.

(o)  To claim administration expenses as either income tax deductions or estate tax deductions, or pay such expenses from income or corpus, as my Executor shall elect, when any such election is permitted by law, and if expenses are claimed as income tax deductions, no compensating adjustments shall thereafter be made in favor of principal, notwithstanding any statute or rule of law; and to allocate administration expenses which are incurred with respect to assets included in the marital share between income and principal, in the sole discretion of the fiduciary, as permitted under §2056 of the Code.

(p)  To remove, transfer or deposit any of the personal property forming part of my estate to any place in the world as the fiduciary may deem advisable for the safekeeping thereof, without bond or prior court approval.

(q)  To assent to or participate in any reorganization, readjustment, consolidation, merger, dissolution, sale or purchase of assets, or similar proceedings, by any corporation whose securities or obligations or rights shall be held hereunder; to consent to any contract, mortgage or other action by any corporation; to deposit securities or evidences of rights or interests or obligations under any agreement or plan for the protection of holders of securities and become a party to any such agreement or plan; and to participate in the reorganization of any corporation and pay any assessment or other expenses.

(r)  To loan principal or interest hereof, but only upon adequate interest and security, where appropriate.

-6-

(s)   To resign upon written notice to any successor Executor or Co-Executor, as the case may be, and all adult beneficiaries hereunder.

(t)   To construe all the terms and provisions of this Will and to reconcile any inconsistencies that may appear.

(u)   In general, to receive, preserve, manage, administer, partition and distribute my estate and the principal and income thereof, for the benefit of the beneficiaries interested therein, as herein provided.

(v)   To acquire, sell, lease, convey, contract and otherwise deal with and in oil, gas and other minerals, solid, liquid and gaseous, and mineral rights, royalties and economic interests therein, and to explore for, develop, operate, remove and market such minerals and mineral interests, and in connection therewith to execute leases, division orders, pooling or unitization agreements (including agreements extending beyond the term of administration of my estate) with respect to any mineral or royalty interest held or acquired by my estate.

(w)   Without regard to any other provision of law, a transaction shall not be prohibited and the Executor shall not be disqualified from entering into or continuing any transaction on behalf of the estate for the reason only that another party to such transaction is: (i) a trust or estate of which the Executor is a fiduciary, or (ii) a trust or estate established by me or in which any beneficiary has an interest. The Executor is authorized to invest or hold all or any part of the estate in common with any person or entity, including the Executor.

(x)   To allocate, in the sole and absolute discretion of the fiduciary, any adjustment to the basis of any property acquired from me as decedent as defined in §1022 of the Code for the purposes of any income, estate, inheritance or other tax (whether or not such property is included in my probate estate) in such amount and in such proportions as the fiduciary shall determine and to exclude any such property from such allocation as provided in §1022 of the Code. The determination of the fiduciary as to whether and to what extent to make said allocation shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such allocation.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(y)  My fiduciary shall have the right to disclaim, release or renounce, at any time, any one or more of the powers or options provided herein with respect to my estate, including but not limited to those powers relating to the management and investment thereof and the distribution of income and principal therefrom.

SIXTH:  The term Executor and all references thereto as used throughout this Will shall mean the executor or executors, female or male, singular or multiple, individual or corporate executor, or any combination thereof, serving as executor hereunder from time to time during the administration of my estate.

LASTLY:  It is my wish and I request that my Executor not file any inventory or any public or judicial accounting of my estate.  Nothing, however, in this paragraph shall be deemed to be a bar from recourse to appropriate proceedings in any court having jurisdiction for the settlement of accounts or to bar the beneficiary of like recourse to compel an accounting. An accounting of my Executor, approved in writing by the adult beneficiaries hereof and guardian of any minor beneficiary shall be conclusive and binding upon all persons having an interest in my estate, directly or indirectly, notwithstanding that a beneficiary hereunder may be acting as Executor hereof.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 21st day of July, 2005.

_____ (LS)

SIGNED, SEALED, PUBLISHED and DECLARED by the Testator, HARRY J. LAYTON, to be the Testator's Last Will and Testament, in our presence and in the presence of each of us, we all being present at the same time; and we, at the Testator's request, in the Testator's presence and in the presence of each other have hereunto signed our names as attesting witnesses.

I, HARRY J. LAYTON, the Testator, sign my name to this instrument this 21st day of July, 2005, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my Last Will and Testament and that I sign it willingly, that I execute it as my free and voluntary act for the purposes therein expressed, and that I am 18 years of age or older, of sound mind, and under no constraint or undue influence.

_Harry J. Layton_

James B. Garland   and   Concetta R. Zgoda , the witnesses, being first duly sworn, do each hereby declare to the undersigned that the Testator signs and executes this instrument as the Testator's Last Will and Testament and that the Testator signs it willingly and that each witness states that in the presence and hearing of the Testator, each witness hereby signs this Will as witness to the Testator's signing, and that to the best of the witness's knowledge, the Testator is 18 years of age or older, of sound mind, and under no constraint or undue influence.

The State of New Jersey
County of Morris

Subscribed, sworn to and acknowledged before me by HARRY J. LAYTON, the Testator, and subscribed and sworn to before me by  James B. Garland  and  Concetta R. Zgoda , witnesses, this 21st day of July, 2005.

YVETTE BARBAS
NOTARY PUBLIC, STATE OF NEW JERSEY
MY COMMISSION EXPIRES 12/22/2009

95319_1.DOC

-10-

B

## THE HARRY J. LAYTON TRUST

THIS AGREEMENT, made this 21st day of July, 2005,

BETWEEN:

HARRY J. LAYTON of the Township of Scotch Plains, in the County of Union and State of New Jersey, hereinafter called the Settlor,

AND

HARRY J. LAYTON and DAYNA CLAXTON, hereinafter called the Trustee;

WITNESSETH THAT:  The Settlor, in consideration of the sum of One Dollar to the Settlor in hand paid by the Trustee receipt whereof is hereby acknowledged, and of the covenants hereinafter contained, hereby assigns, transfers and sets over to the Trustee the property specified and described in Schedule A annexed hereto, hereafter called the Trust Estate.  The receipt of said property is hereby acknowledged by the Trustee upon the following express trusts and conditions and with the powers and limitations hereafter conferred and set forth.

1.  **DURING LIFETIME OF SETTLOR.**  The Trustee shall invest and reinvest the Trust Estate, collect the income therefrom and pay over the net income quarterly, or at more frequent intervals in the discretion of the Trustee, to the Settlor, or apply the same for the use and benefit of the Settlor during the Settlor's lifetime.  The Trustee shall also pay to or apply for the use and benefit of the Settlor such of the principal of the Trust Estate

as the Trustee may deem necessary or advisable for the Settlor's health, support, maintenance and education.

2.  **DISTRIBUTION OF TRUST ON DEATH OF SETTLOR.**  Upon the death of the Settlor, the assets remaining in the Trust Estate shall be administered and distributed as follows:

(a)  If Settlor's wife JOANNE LAYTON, survives Settlor, then Settlor gives his said wife the right to live and reside in and on Settlor's residence and the real property on which Settlor's residence is situate, together with the furnishings therein, for a period of sixty (60) days from the date of Settlor's death, rent free.  The expenses incurred in connection with the maintenance and operation of such residence during such period, including payment of real estate taxes, insurance premiums, repairs, utilities and other costs of general maintenance shall be paid by the Trust Estate.  In no event shall Settlor's wife encumber Settlor's said property and the real property on which it is situate in any manner whatsoever.  If at any time during the aforesaid period, Settlor's wife shall no longer desire to use and occupy Settlor's real property, then she shall notify the Trustee in writing of her intention to vacate the premises.  Upon the earlier of (i) the expiration of the aforesaid sixty (60) days period, or (ii) the death of Settlor's wife or (iii) at such time as Settlor's wife shall no longer desire to reside in Settlor's said residence, the Settlor authorizes and directs the Trustee to sell the said residential real property, at public or private

-2-

sale, at such time and for such price and upon such terms as the Trustee may deem most advantageous for the Trust Estate, and to execute and deliver good and sufficient conveyance for the transfer thereof and that the proceeds of sale therefrom shall be added to the Trust Estate to be administered and distributed as provided in Paragraph 3 below.

(b)   All costs incurred by Settlor's wife in safeguarding, insuring, and packing any tangible personal property and delivering such items to her new residence and all other costs incurred by Settlor's wife in moving to her new residence shall be deemed to be expenses of administering the Trust Estate; such expenses shall be paid by Settlor's wife.

3.   **DISTRIBUTION OF BALANCE OF TRUST ESTATE.**   The balance of principal remaining in the Trust Estate shall be divided into shares for Settlor's descendants pursuant to the formula set forth below.

(a)   To the amount of principal remaining in the Trust Estate will be added the aggregate amount of the gifts made to Settlor's son and daughter, which total shall be designated the "Sum". The Sum shall be divided by the number of Settlor's children then surviving and the number of Settlor's children who are then deceased leaving descendants then surviving, to be designated a "Portion". Each Portion, thus constituted, for a child of Settlor then surviving or for a child of Settlor then deceased leaving descendants then surviving shall be reduced by the amount of the

-3-

aggregate gifts to said child, to be designated "Amount".  In the

event the Amount for any child shall be less than zero, then said

child, or his or her descendants, shall receive no part of the

balance of principal remaining in the Trust Estate, and the balance

remaining herein shall be allocated to Settlor's other child then

surviving and the descendants then surviving of Settlor's other

child, if Settlor's other child shall be deceased.

(b)   The Trustee shall pay over and deliver the Amount thus

constituted for Settlor's daughter to Settlor's daughter, subject

to the provisions of subparagraph (c) below.  If Settlor's son,

RICHARD LAYTON, shall be then surviving, then the Amount, thus

constituted, for Settlor's said son shall be paid over and

delivered to the Trustee, hereinafter named, in trust

nevertheless, ("Son's Trust"), for the uses and purposes as set

forth in Paragraph 4 below.  The Trustee shall pay over and

deliver the Amount, thus constituted, for the descendants then

surviving of any deceased child of Settlor to such descendants,

per stirpes, subject to the provisions of subparagraph (c) below.

(c)(i)   In the event any grandchild of Settlor entitled to a

distribution hereunder shall be under the age of thirty (35)

years, then the share for such grandchild ("Beneficiary") shall be

paid over and delivered to the Trustee, hereinafter named, to be

held in separate trust as provided in Paragraph 5 below.

(ii)   In the event any descendant of a grandchild of

Settlor entitled to a distribution hereunder shall be under the

-4-

age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph 6 below.

4. **SON'S TRUST.** The Trustee, hereinafter named, shall hold the Son's Trust, thus constituted, for the uses and purposes as hereinafter set forth. The Trustee shall hold the same for the benefit of Settlor's son, RICHARD LAYTON, which trust is to be administered pursuant to this Paragraph 4 as a separate trust fund for the benefit of Settlor's son, said trust being named and hereinafter sometimes referred to as "SON'S TRUST", and the Trustee shall manage, administer, invest and reinvest the principal of such trust, shall collect and receive the income thereof and shall apply, pay over and distribute the income and principal thereof as hereinafter provided:

(a)   Subject to subparagraphs (b) through (f) below, the Trustee may at any time or times that the Trustee deems it advisable, pay or apply to or for the benefit of Settlor's son, so much, all or none of the net income therefrom and the principal of the SON'S TRUST, (including the whole thereof) for the health, support, maintenance and education of Settlor's son, as the Trustee, in such Trustee's sole, absolute, uncontrolled and nonreviewable discretion, shall deem to be in the best interest of Settlor's son, consistent with Settlor's intentions for the SON'S TRUST as described in this Paragraph 4.  In exercising or declining to exercise such discretion with respect to income or

principal, or both, at such time or times as Settlor's son shall
be a resident of a skilled nursing or health related facility or a
community residence or group home for the disabled, or such other
time or times as Settlor's son shall require extensive medical or
custodial care or financial support for his living expenses, the
Trustee shall consider any other resources, including governmental
benefits and entitlements or charitable or private benefits, owned
by or available to Settlor's son.  In no event shall the Trustee
be obligated to pay or apply the income or principal of the SON'S
TRUST for the benefit of a government agency or department, other
than for the payment of any income taxes which, from time to time,
may be owed by Settlor's son, or by the SON'S TRUST.  Any net
income not so paid or applied during any accounting year of the
trust shall be accumulated and, at the end of such year, shall be
added to, and in all respects be treated as principal.

(b)   The Trustee, in such Trustee's sole, absolute,
uncontrolled and nonreviewable discretion, shall also have full
power and authority to use the income and principal of the trust
for the purpose of retaining the services of a professional care
manager to ensure the proper supervision of Settlor's son's
health, comfort and welfare.

(c)   Settlor hereby declares his intention that the assets of
the SON'S TRUST be preserved to the maximum extent possible to
ensure the lifelong supplemental care and support of Settlor's
son, when appropriate, and to provide Settlor's son a source from

which his needs may be met to the extent that they are not adequately provided for, in the sole, absolute, uncontrolled and nonreviewable opinion of the Trustee, by governmental, charitable or private agencies or organizations.  Further, it is Settlor's intention that the Trustee pay or apply the net income and principal, or both, of the SON'S TRUST to such extent and in such amounts as is required, in the Trustee's sole, absolute, uncontrolled and nonreviewable discretion, to assure that Settlor's son be maintained, to the greatest extent possible, in an independent environment.  By way of example, the Trustee, in such Trustee's sole, absolute, uncontrolled and nonreviewable discretion, may pay or apply so much of the income or principal, or both, of the SON'S TRUST as may be required to provide for or supplement home care, housekeeping and such other services, home improvements, equipment and vehicles to assure that Settlor's son be maintained in the least restrictive environment, whether at home or in a group home or community residence for the disabled.

(d)  It is Settlor's desire to preserve the assets of the SON'S TRUST to the maximum extent possible to ensure the lifelong supplemental care and support of Settlor's son, and, upon the death of Settlor's son, to ensure that the maximum amount of the assets of the SON'S TRUST is available for the benefit of the trust remainderpersons.  If at the time of the creation of the SON'S TRUST it was known that the interest of Settlor's son would disqualify him from receiving any governmental, charitable or

-7-

private benefits or would provide a fund against which any such
governmental, charitable or private benefits provided to or for
his benefit could be recovered, Settlor would not have created the
SON'S TRUST and would have disposed of the assets directly to the
remainderpersons of the SON'S TRUST.  Moreover, Settlor believes
that the human condition of the entire disabled population will
benefit from the SON'S TRUST by providing a source from which the
standard of living of such a disabled person may be enhanced and
Settlor's son's happiness guaranteed.  Widespread use of similar
trusts has the potential of creating a substantial resource
benefiting all disabled persons.  Further, enhancing the lifestyle
or standard of living of one person elevates the conditions of
those around that person.  Accordingly, the SON'S TRUST does
permit payment, when the service involved is deemed inadequate or
not appropriate, in the sole, absolute, uncontrolled and
nonreviewable opinion of the Trustee, of expenses that might
otherwise be assumed by a governmental or charitable agency, so
long as (i) such payment would not be deemed "in-kind" income
under the rules and regulations governing any charitable or
private agency or public assistance program which, but for such
"in-kind" income, would otherwise provide benefits to or for the
benefit of Settlor's son, or (ii) if such payment would be deemed
"in-kind" income by any such charitable or private agency or
public assistance program, that the benefit to Settlor's son of
receiving such payment would outweigh the detriment to him should

-8-

such payment result in a loss or reduction of the governmental, charitable or private benefit to which Settlor's son would otherwise have been entitled.  In addition, the Trustee has the power, in such Trustee's sole, absolute, uncontrolled and nonreviewable discretion, to make gifts or donations of items of equipment, furniture, appliances, recreational supplies or other personalty, including food stuffs and the like, to such programs as Settlor's son may attend or to any such skilled nursing or health related facility or community residence or group home for the disabled where Settlor's son may reside, without regard to the fact that others attending such program, or residing in such facility, community residence or group home for the disabled also will enjoy an indirect benefit.  Accordingly, Settlor believes the SON'S TRUST to be in the public interest, despite the sole, absolute, uncontrolled and nonreviewable discretion of the Trustee to deny any principal or income distribution.  The alternative, disposal of the assets directly to the trust remainderpersons, would neither provide the quantum of security for Settlor's son nor the potential benefit to the entire disabled population that can be derived from the SON'S TRUST.

(e)  To accomplish the foregoing goal, Settlor intends that in the event Settlor's son requires extensive medical or custodial care or financial support for living expenses, existing or future governmental programs, charitable or private benefits shall be the primary source of such medical care and support so that the assets

of the SON'S TRUST can be preserved to the maximum extent possible for the lifelong supplemental care of Settlor's son and not be consumed by the extensive costs of medical or custodial care or treatment or the costs of Settlor's son's support.

(f)   Notwithstanding anything to the contrary contained in the other provisions of the SON'S TRUST, in the event that the Trustee's discretionary right to invade trust income or principal, or both, for Settlor's son has the effect of rendering Settlor's son ineligible for governmental, charitable or private benefits, the Trustee is authorized to terminate such trust, and the undistributed income and principal of the SON'S TRUST shall be paid over and distributed as if Settlor's son was deceased.  In determining whether the existence of the SON'S TRUST has the effect of rendering Settlor's son ineligible for governmental, charitable or private benefits, the Trustee is hereby granted full and complete discretion to initiate either administrative or judicial proceedings, or both, for the purpose of determining eligibility, and all costs relating thereto, including reasonable attorney fees, shall be a proper charge to the SON'S TRUST.

(g)   Upon the earlier of (i) the termination of the SON'S TRUST pursuant to subparagraph (f) above, or (ii) the death of Settlor's son, the balance of principal remaining in the trust, together with any accumulated income, shall be paid over and delivered to Settlor's son's descendants then surviving, per stirpes, subject to the provisions of subparagraph (h) below.  In

-10-

the event there shall be no such descendants then surviving, the same shall be paid over and delivered to Settlor's daughter, DAYNA CLAXTON, or to Settlor's daughter's descendants then surviving, per stirpes, if Settlor's daughter shall not be then surviving, subject to the provisions of subparagraph (h) below.

(h)(i)  In the event any grandchild of Settlor entitled to a distribution hereunder shall be under the age of thirty-five (35) years, then the share for such grandchild ("Beneficiary") shall be paid over and delivered to the Trustee, hereinafter named, to be held in a separate trust as provided in Paragraph 5 below.

(ii)  In the event any descendant of a grandchild of Settlor entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph 6 below.

5.  **TRUST FOR BENEFICIARY.**  Any separate share to be held by the Trustee for a Beneficiary hereunder shall be administered and disposed of as provided herein.

(a)  If the Beneficiary is under the age of twenty-five (25) years, the Trustee shall invest and reinvest the Beneficiary's share, collect the income therefrom and pay over to or apply for the use and benefit of the Beneficiary so much of the net income therefrom, in such amounts and in such manner as the Trustee shall deem most advisable and beneficial for the Beneficiary.  Any unexpended income shall be added at least annually to the

-11-

principal of the trust.  The Trustee shall also have full power and authority to use the principal of this trust in such amounts as the Trustee may deem necessary or advisable for the health, support, maintenance and education, including college and post-graduate work, of the Beneficiary.  The decision of the Trustee as to how much, if any, of the income or principal of the trust shall be paid to or for the benefit of such Beneficiary shall be final. So long as the Beneficiary is under the age of twenty-one (21) years, payments of principal and income may be made to any guardian in whatever jurisdiction appointed or to any parent of any minor Beneficiary without any bond being required.  The receipt executed by such guardian or parent shall be a full release to the Trustee for the payments so made.

(b)  Except as provided in Paragraph 8(d) below, when such Beneficiary attains the age of twenty-five (25) years, or if such Beneficiary is already twenty-five (25) years old when this trust share is established, the Trustee shall pay over all of the net income to or apply the same for the use and benefit of such Beneficiary during his or her lifetime, and shall also pay to him or her, or apply for his or her use and benefit, such of the principal of his or her trust as the Trustee shall deem necessary or advisable for his or her health, support, maintenance and education, including college and post-graduate work.  The Trustee shall also have full power and authority to use the principal of this trust for the education expenses and medical expenses of any

-12-

one or more of the Beneficiary's descendants in such amounts and in such proportions as the Trustee shall deem appropriate.

(c)   In making a use of income or principal for the benefit of the Beneficiary and his or her descendants, the Trustee shall give due consideration to other income and resources available to them.   Notwithstanding anything to the contrary contained herein, no distribution of income or principal shall be made to or for the benefit of a Beneficiary or his or her descendants which distribution would relieve the parent of such Beneficiary or his or her descendants of his or her legal obligation to support such Beneficiary or his or her descendants.

(d)   Except as provided in Paragraph 8(d) below, each Beneficiary for whom a separate share is held in trust hereunder shall have the absolute right to demand and receive from the Trustee the principal of his or her trust as follows:

(i)   If the Beneficiary shall graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the right to receive the principal of his or her trust as follows: one-half (1/2) thereof at any time after attaining the age of twenty-five (25) years; and all of the balance remaining therein at any time after attaining the age of thirty (30) years.

(ii)   If the Beneficiary shall not graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the

-13-

right to receive the principal of his or her trust as follows: one-half (1/2) thereof at any time after attaining the age of thirty (30) years; and all of the balance remaining therein at any time after attaining the age of thirty-five (35) years.

(iii)  All such distributions shall be made no later than the Termination Date as defined herein.

(e)  Upon the death of each Beneficiary for whom a separate share is held in trust hereunder, the balance of principal remaining in the trust for which the inclusion ratio for Federal Generation Skipping Transfer Tax purposes is other than zero, if any, shall be paid over and delivered to such of the creditors of the estate of such Beneficiary as he or she shall appoint in and by his or her Last Will and Testament, making specific reference to this power.  To the extent such Beneficiary shall fail to exercise effectively the foregoing general power of appointment, if any, then the balance of the aforesaid trust, and the balance of the trust share for which the inclusion ratio for Federal Generation Skipping Transfer Tax purposes is zero, if any, shall be paid over and delivered to his or her descendants then surviving, per stirpes.  In the event there shall be no such descendants then surviving, the same shall be paid over and delivered to the descendants then surviving of the child of Settlor who is an ancestor of the Beneficiary, per stirpes, or if none, then to Settlor's descendants then surviving, per stirpes, as the case may be.  Any share thus distributable to a grandchild

-14-

of Settlor for whom a separate share is held in trust hereunder shall be added to the trust of his or her share and administered and distributed as a part thereof; provided, however, such trusts may be continued to be held separately if the Federal Generation Skipping Transfer Tax inclusion ratios for such trusts are not the same, and such separate trusts shall be administered pursuant to the same terms and provisions.

(f)(i)   In the event Settlor's son, RICHARD LAYTON, shall be entitled to a distribution under subparagraph (e) above, then the share for Settlor's said son shall be paid over and delivered to the Trustee, hereinafter named, to be held in a separate trust as provided in Paragraph 4 above.

(ii)   In the event any grandchild of Settlor entitled to a distribution under subparagraph (e) above shall be under the age of thirty-five (35) years, the Trustee shall continue to hold his or her share in a separate trust pursuant to the terms and provisions of this Paragraph 5 as if such grandchild were a Beneficiary as defined herein.

(iii)   In the event any descendant of a grandchild of Settlor entitled to a distribution under subparagraph (e) above shall be under the age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph 6 below.

6.   **DISTRIBUTION TO DESCENDANT OF A GRANDCHILD.**   In the event any descendant of a grandchild of Settlor entitled to a

-15-

distribution hereunder shall be under the age of twenty-one (21) years or shall be under any other legal disability, the Trustee may distribute such descendant's share to any guardian in whatever jurisdiction appointed, to a custodian for such descendant under the New Jersey Uniform Transfers to Minors Act, or to any parent of such descendant (without bond being required of such guardian, custodian or parent in respect of the receipt of such property), whose written receipt, to the extent therein specified, shall be a full acquittance and release to the Trustee for the property so distributed, with the same force and effect as if such receipt had been signed by such descendant after attaining the age of twenty-one (21) years or removal of such disability, as the case may be.

7.   **ULTIMATE BENEFICIARY.**  In the event that at any time none of Settlor's descendants shall be surviving to take the balance remaining in any trust hereunder, or none of Settlor's descendants shall survive Settlor, then the balance remaining in said trust or the Trust Estate, as the case may be, shall be paid over and delivered to NEW JERSEY ALLIANCE FOR THE MENTALLY ILL, North Brunswick, New Jersey; provided, that such entity shall be an organization exempt from Federal Income Tax under §503(c)(3) of the Internal Revenue Code, or any successor thereto, and the Regulations thereunder (the "Code"), and qualify pursuant to §2055 of the Code at the time of distribution.  In the event the aforesaid organization shall not be then existing or in the event the aforesaid organization shall not be exempt from Federal Income

-16-

Tax under §503(c)(3) of the Code and qualify pursuant to §2055 of the Code at the time of distribution, then the same shall be paid over and delivered to such organization or organizations which have the same goals and purposes in assisting the mentally ill as the originally named organization, which are exempt from Federal Income Tax under §503(c)(3) of the Code and qualify pursuant to §2055 of the Code at the time of distribution, as the Trustee, in such Trustee's discretion, shall select, and in such amounts, in such proportions and in such manner as the Trustee shall deem appropriate.

    8.  **GENERAL PROVISIONS.**  All trusts hereunder shall be administered in accordance with the following general provisions where applicable:

    (a)  In the event that at any time during the term of any trust hereunder the amount of trust principal under administration shall be of a size that is no longer economical to administer, such trust may be terminated in the discretion of the Trustee, other than a beneficiary of such trust, and, if terminated, the balance of principal remaining and accumulated income shall be paid over to the Beneficiary thereof for any trust under Paragraph 5 hereof.  All trusts for the same beneficiary or beneficiaries under this agreement shall be aggregated for purposes of this subparagraph.

    (b)  The Trustee shall not be required to make physical division of the separate trust shares established hereunder except

-17-

when necessary for distribution of principal, but may, in such Trustee's discretion, keep the trust principal in one or more consolidated funds in which the separate trust shares shall have undivided interests.

(c)   No disposition, charge, or encumbrance of the income or principal of the trusts created hereunder, or of any part thereof, by any beneficiary hereunder, by way of anticipation, shall be of any validity or legal effect, or be in anywise regarded by the Trustee.

(d)   Notwithstanding any other provision of this agreement, the Trustee, other than the Beneficiary, may postpone (but not beyond the Termination Date defined below) any distribution of income or principal otherwise required to be made to any beneficiary of any trust, whether during its term or upon its termination, and postpone to that extent any trust termination that would otherwise be required, if the said Trustee determines that there is a compelling reason to do so (such as a serious illness or disability of the beneficiary, a pending divorce, potential or pending creditor claims, potential tax disadvantage to the beneficiary or his or her family, alcohol or substance abuse, or similar substantial cause).  The said Trustee may continue the postponement in whole or in part, for the entire lifetime of the beneficiary.  While the postponement continues, the provisions previously applicable to the trust shall continue to apply except that the beneficiary shall receive distributions from such

-18-

principal, and from the income therefrom, only in such amounts and at such time or times as the said Trustee deems advisable and beneficial.

(e)   The term "Termination Date" shall mean the date twenty-one (21) years after the death of the last survivor of such of the descendants of Settlor's parents as are in being at the date of Settlor's death.

(f)   Notwithstanding anything herein to the contrary, the Trustee shall not have the power to adjust between income and principal as provided in N.J.S.A. 3B:19B-4 et seq., and the income hereof, as referenced in any paragraph hereof with respect to any trust hereunder, shall be considered only the traditional fiduciary accounting income, without regard to any adjustment between income and principal.

9.   **ACCRUED INCOME.**   The Trustee shall treat as income all rents, interest, and income accrued, and dividends declared but unpaid prior to the within transfer or any subsequent transfer or delivery of securities or other property by the Settlor to the Trustee, except that dividends which have been declared on any stocks so transferred or delivered to the Trustee and which are payable to stockholders of record as of a date prior to such transfer or delivery to the Trustee shall belong to the Settlor.

10.   **POWERS OF TRUSTEE.**   In addition to the powers conferred by law, the Trustee shall have the following additional powers:

(a)   To retain any and all securities and property transferred

-19-

to the Trustee hereunder without requirement of diversification and to change investments and sell, acquire by exchange, invest and reinvest in any such stocks of any classification, bonds or other property whether or not of the same kind, without regard to the proportion such property or property of a similar character so held may bear to the entire amount held as the Trustee, in the discretion of the Trustee, may determine and whether or not the same be now or hereafter authorized by law for the investment of trust funds; and to invest and reinvest principal of the trust funds or any part thereof, in any common trust fund established, maintained and operated by the Trustee or any duly appointed successor Trustee.

(b)   To become party to any voting trust agreement and to vote and to give proxies to vote for any securities held, and to cast any of such votes for the Trustee.

(c)   To make and carry out any contracts, leases and agreements relating to any property held by the Trustee and to make such compromises or settlements of debts, claims or controversies as the Trustee may deem necessary or advisable, even if the term of said contract, lease or agreement will extend beyond the term of administration of the trust hereunder.

(d)   To borrow money from others or from the Trustee, whether to make any purchase, pay taxes, exercise options or subscription rights, pay assessments, or to accomplish any other purpose of any nature incidental to the administration of any trust or powers in trust hereunder, and to mortgage or pledge as security therefor any property held by the Trustee hereunder; and to subordinate the interest of the Trustee in any property to the interest of a lender; and if money is borrowed from others or from the Trustee, to pay interest thereon.

(e)   To make interim payments in reasonable amounts on account of fiduciary commissions or attorneys' fees, or both, at such time or times as the Trustee may, in the absolute discretion of the Trustee, deem beneficial for and in the best interest of any trust hereunder, without prior application to or approval by any court, any statute or rule of law to the contrary notwithstanding.

(f)   To pay or make any distribution of income or principal as provided herein, in cash or in property, or partly in cash and partly in property, and to make non-pro rata payments or distributions of such cash or property, and for those purposes to use and allocate any property, at date of distribution values without regard to the adjusted basis for income tax purposes of any such property so paid, distributed or allocated.

(g)  To exercise or refrain from exercising any election, allocation of tax attributes or option available under the Code, with or without making equitable adjustments with respect to any interests in property passing hereunder by reason of any such election or option. The determination of the fiduciary as to whether and to what extent to make said election, allocation or option shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such election, allocation or option.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(h)  To claim administration expenses as either income tax deductions or estate tax deductions, or pay such expenses from income or corpus, as the fiduciary shall elect, when any such election is permitted by law, and if expenses are claimed as income tax deductions, no compensating adjustments shall thereafter be made in favor of principal, notwithstanding any statute or rule of law; and to allocate administration expenses which are incurred with respect to assets included in the marital share or the charitable share between income and principal, in the sole discretion of the fiduciary, as permitted under §2055 and §2055 of the Code.

(i)  To allocate, in the sole and absolute discretion of the fiduciary, any exemption from the Federal Generation Skipping Transfer Tax to any property with respect to which the Settlor is the transferor as defined in §2652 of the Code for the purposes of the Federal Generation Skipping Transfer Tax and to exclude any such property from such allocation. The determination of the fiduciary as to whether and to what extent to make said allocation shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such allocation.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(j)  To hold property in the names of nominees or so that it will pass on delivery, or in the name of a corporate fiduciary without disclosing any fiduciary capacity; and to leave property in the custody of a firm of stockbrokers and registered in the name of the stockbrokers' nominees.

(k)  To renew, assign, alter, extend, compromise, abandon or release, with or without consideration or submit to arbitration, obligations or claims held by or asserted against the Trustee, or

which affect trust assets, all as the Trustee may deem advisable.

(l)   To engage accountants, appraisers and other experts and legal counsel; to employ agents, clerks and other assistants; and to remunerate and pay the expenses of such persons. The Trustee is authorized to employ custodians of the assets and other assistants and to engage and rely on investment counsel, and in the discretion of the Trustee, to grant discretionary investment authority to investment counsel.

(m)   To make or continue any debt or guarantee, including any debt or guarantee owed to any Trustee individually, and any pledge or mortgage securing it.

(n)   Except as provided herein, to apply any income or principal that is payable to a minor or any person who in the judgment of the Trustee is incapable of making proper disposition thereof, by payments on behalf of the beneficiary to anyone with whom the beneficiary resides and/or by payments in discharge of the beneficiary's bills, all without the intervention of any guardian or committee or like fiduciary, and without obligation to see to the further application thereof.

(o)   To sell for cash or on credit (at public or private sale), exchange, mortgage, lease for any period (either as landlord or tenant and including renewals of the term) and modify, extend or cancel leases, grant options, refinance mortgages on property and subordinate the interest of the Trustee to the interest of a lender, all regardless of statutory restrictions or the probable duration of any trust, or otherwise dispose of or deal with any real or personal property, in such manner and upon such terms and conditions as the Trustee may deem advisable; to erect, renovate or alter buildings or otherwise improve and manage buildings and property; demolish buildings; make ordinary and extraordinary repairs; grant easements and make party wall contracts; dedicate roads; subdivide; adjust boundary lines and partition; and to do everything with respect to interests in any property that any individual owner may do.

(p)   To remove, transfer or deposit any of the personal property forming part of any trust hereunder to any place in the world as the Trustee may deem advisable for the safekeeping thereof, without bond or prior court approval.

(q)   To exercise any options, privileges or rights of any nature which may be granted to or exercisable by the holders of any property which forms a part of any trust hereunder, or to purchase or sell any options, puts, calls, subscription or other rights or allow any such rights to expire or lapse.

-22-

(r)  To assent to or participate in any reorganization, readjustment, consolidation, merger, dissolution, sale or purchase of assets, or similar proceedings, by any corporation whose securities or obligations or rights shall be held hereunder; to consent to any contract, mortgage or other action by any corporation; to deposit securities or evidences of rights or interests or obligations under any agreement or plan for the protection of holders of securities and become a party to any such agreement or plan; and to participate in the reorganization of any corporation and pay any assessment or other expenses.

(s)  To loan principal or interest hereof, but only upon adequate interest and security, where appropriate.

(t)  To resign upon written notice to any Co-Trustee or successor Trustee, as the case may be, and all adult beneficiaries hereunder.

(u)  To establish, in the sole and absolute discretion of the fiduciary, separate trusts in place of any trust created hereunder in order that the Federal Generation Skipping Transfer Tax inclusion ratio, as defined in §2642 of the Code for each such trust shall be either zero or one.  The determination of the fiduciary as to whether and to what extent to make said division shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such division.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.  Each such separate trust shall be administered in accordance with the provisions of the original trust from which it is established under this agreement.  The trusts created under this subparagraph shall have the same name as the original trust, except that the trust to which the Federal Generation Skipping Transfer Tax exemption is allocated (the trust with inclusion ratio zero) shall have the phrase "GST exempt" added to its name.  Such trusts shall sometimes be referred to as "related".

(v)  To the extent it is consistent with the Trustee's fiduciary obligations, the Trustee, in making discretionary distributions of net income and principal from or investment decisions in connection with any related trusts, if established, shall utilize the opportunities provided by the creation of such related trusts to eliminate, reduce or defer the Federal Generation Skipping Transfer Tax when making distributions, and to maximize the amount of trust property that eventually may be distributed to the beneficiaries hereof at the termination of all trusts created

under this trust agreement.

(w)  To acquire, sell, lease, convey, contract and otherwise deal with and in oil, gas and other minerals, solid, liquid and gaseous, and mineral rights, royalties and economic interests therein, and to explore for, develop, operate, remove and market such minerals and mineral interests, and in connection therewith to execute leases, division orders, pooling or unitization agreements (including agreements extending beyond the term of any trust hereunder) with respect to any mineral or royalty interest held or acquired by any trust hereunder.

(x)  To construe all the terms and provisions of all trusts hereunder and to reconcile any inconsistencies that may appear.

(y)  In general, to receive, preserve, manage, administer, partition and distribute the trust estate, and the principal and income thereof, for the benefit of the beneficiaries interested therein, as herein provided.

(z)  If at any time there shall be more than one trust under this agreement with substantially similar terms or a trust under this agreement and a trust on substantially similar terms under an agreement with or the will of Settlor or Settlor's wife, the Trustee is authorized, in the absolute discretion of the Trustee, (1) to combine the principal of such trusts created hereunder, (2) to pay over the entire principal of such trust under this agreement to the trustee of such trust under the agreement or will of Settlor or Settlor's wife, as an addition to the principal of the last-mentioned trust, or (3) to receive, as an addition to the principal of such trust under this agreement, the entire principal of such trust under the agreement or will of Settlor or Settlor's wife; provided however, no trusts shall be combined unless the Federal Generation Skipping Transfer Tax inclusion ratios, as defined in §2642 of the Code, or for such trusts shall be the same.

(aa)  Notwithstanding the provisions of N.J.S.A. 3B:11-4.1 and any successor or similar provision of state law, and notwithstanding any other provision of this trust agreement, if at any time any beneficiary or any person who has a legal obligation to support a beneficiary should be serving as Trustee hereunder, such beneficiary or person shall not be entitled to exercise any discretionary right or power in any manner relating to distributions of income and principal to such beneficiary (including distributions to such beneficiary or others which may discharge any legal obligation of such beneficiary), but all such rights, powers and discretions shall be exercised solely and exclusively by the other Trustee then acting hereunder, whether one or more; and if no such other Trustee is then acting, such

discretionary rights and powers shall not be exercised and such distribution shall not be made; provided however, this provision shall not apply to a power to make distributions to such Trustee-beneficiary pursuant to a standard limited to the health, support, maintenance and education of such beneficiary nor to any power of withdrawal granted to a beneficiary hereunder.

(bb)   Without regard to any other provision of law, a transaction shall not be prohibited and a Trustee shall not be disqualified from entering into or continuing any transaction on behalf of any trust hereunder for the reason only that another party to such transaction is: (i) a trust or estate of which a Trustee is a fiduciary, (ii) a trust or estate established by the Settlor or in which any beneficiary has an interest, or (iii) any beneficiary of any trust created hereunder.  The Trustee is authorized to invest or hold all or any part of the trust estate in common with any person or entity, including the Trustee.

(cc)   To change the name or situs of any trust hereunder at any time.

(dd)   Except as otherwise provided herein, to retain as an asset of any trust hereunder any real property, or interest therein, or other personal use property for the benefit of any beneficiary hereunder, which Settlor or this Trust may own at any time, even though such asset is not income producing.

(ee)   To establish another trust in which any trust hereunder is the settlor and of which new trust shall have terms substantially similar to those of the trust serving as settlor; and to transfer assets of the trust serving as settlor of such new trust to such new trust to be administered and distributed therewith.

(ff)   The Settlor may designate a trust hereunder as the beneficiary of certain individual retirement accounts or qualified employee benefit plan funds or similar items ("Benefits") which Settlor maintains.  The fiduciary shall receive such Benefits from the custodian of each said plan pursuant to the respective beneficiary designations then in effect and may make any election regarding such distributions as the fiduciary deems most beneficial for the beneficiaries hereunder. The portion of each such payment received by the fiduciary attributable to income earned in the said plan in the year of the distribution shall be allocated to income hereunder and the balance of each such payment shall be allocated to principal hereunder, even though the entire such payment may be subject to federal income tax.

(gg)   To allocate, in the sole and absolute discretion of the fiduciary, any adjustment to the basis of any property acquired

from Settlor as decedent as defined in §1022 of the Code for the purposes of any income, estate, inheritance or other tax in such amount and in such proportions as the fiduciary shall determine and to exclude any such property from such allocation as provided in §1022 of the Code. The determination of the fiduciary as to whether and to what extent to make said allocation shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such allocation. The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(hh)  To establish, in the sole and absolute discretion of the fiduciary, separate trusts in place of any single trust created hereunder as the fiduciary deems advisable and beneficial for any trust hereunder and the beneficiaries hereof, when taking into consideration the estate, inheritance, income, gift and other tax consequences thereof as well as non-tax considerations. The determination of the fiduciary as to whether and to what extent to make said division shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such division.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph. Each such separate trust shall be administered in accordance with the provisions of the original trust from which it is established under this agreement.  The fiduciary may name each trust as the fiduciary deems appropriate.

(ii)  The fiduciary shall have the right to disclaim, release or renounce, at any time, any one or more of the powers or options provided herein with respect to any trust hereunder, including but not limited to those powers relating to the management and investment thereof and the distribution of income and principal therefrom.

11.  **TERM OF POWERS.**  All powers herein granted to the Trustee shall apply to the property held hereunder until the actual distribution thereof.

12.  **ADDITIONS TO TRUST.**  The Settlor shall have the right (with the consent of the Trustee) at any time, and from time to time to assign, transfer, deliver or deposit with the Trustee

-26-

additional securities or property which thereupon shall become a part of the Trust Estate, subject in every respect to the terms, powers and conditions of this agreement.  The Settlor shall also have the right to transfer assets to this trust by the Settlor's Will, subject in every respect to the terms, powers and conditions of this agreement.

13.  **RIGHT TO AMEND AND REVOKE.**  The Settlor hereby expressly reserves and retains the right at any time, and from time to time, by notice in writing, signed by the Settlor and filed with the Trustee:

(a)  To withdraw any or all of the property subject to the trust hereby created and to take possession of the same, subject to the payment of the Trustee's compensation and other proper expenses;

(b)  To revoke this agreement and the trust hereby created, in whole or in part, and to take possession of the property constituting at such time the principal of the trust, subject to the payment of the Trustee's compensation or other proper expenses, free and discharged from this agreement and the trust created hereby; and

(c)  With the written consent of the Trustee, to alter, amend and modify this agreement in any and every respect.

14.  **COMPENSATION OF TRUSTEE.**  The Trustee shall be entitled to compensation for the Trustee's services in carrying out this trust in accordance with a separate agreement, or in the absence

thereof, pursuant to the statutes of the State of New Jersey for a testamentary Trustee.

15.  **ACCOUNTING BY TRUSTEE.**  To avoid the expense and delay incident to a judicial settlement of the Trustee's accounts, the Trustee may from time to time render to the Settlor an account of the Trustee's transactions as Trustee.  The Settlor shall have full power to settle finally any such account and on the basis of such account to release the Trustee, individually and as Trustee, from all liability, responsibility or accountability from the Trustee's acts or omissions as Trustee.  Such settlement and release by the Settlor shall be binding upon all income beneficiaries, remaindermen and other interested parties, even if then under legal disability, or not as yet in being, and shall have the force and effect of a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for an accounting in which jurisdiction was obtained of all necessary and proper parties.  The foregoing provision, however, shall not preclude the Trustee from having the Trustee's accounts judicially settled if the Trustee shall so desire.

After the death of Settlor, this provision shall apply with equal force and effect to accounts rendered to the adult beneficiaries hereof and guardian of any beneficiary for the trusts of their separate shares.

16.  **DEBTS, TAXES AND EXPENSES.**  In the event the assets of

-28-

Settlor's residuary estate having been exhausted are not sufficient to pay all debts, pre-residuary devises, administration expenses, funeral expenses and taxes with any interest or penalties thereon due as a result of the Settlor's death, the Trustee, on proper request from the personal representative of the Settlor's estate, shall make such payments for these purposes as may be requested. Payments for debts, administration expenses and funeral expenses shall be made either directly to the creditor involved or to the personal representative of the Settlor's estate to be used for one or more of such purposes. Payments for devises shall be made either directly to the beneficiary or to the personal representative of the Settlor's estate to be used to make such distribution. Payments for taxes shall be made either directly to the taxing authority involved or to the personal representative of the Settlor's estate to be used for the payment of taxes. The Trustee may rely absolutely on any such written direction given by the personal representative of the Settlor's estate and is under no obligation and has no right to question the correctness or advisability of any such payments.

Notwithstanding the above, this trust shall terminate with respect to any United States Bonds eligible for redemption at par when used for payment of Federal Estate Taxes and the Trustee shall in all events immediately on the death of the Settlor deliver the same to the personal representative of the Settlor, to be added to Settlor's residuary estate.

17.  **SUCCESSOR AND SUBSTITUTE TRUSTEE.** (a)  During the
lifetime of the Settlor, in the event of the death, resignation,
or inability to act both of Settlor and Settlor's daughter, DAYNA
CLAXTON, as Trustee, then PEAPACK-GLADSTONE BANK is hereby named
Trustee hereunder in their place and stead; provided, however, if a
Corporate Trustee has been designated and is then serving as
provided below, then PEAPACK-GLADSTONE BANK shall not be designated
Trustee hereunder.

(b)  After the death of Settlor, Settlor's daughter, DAYNA
CLAXTON, is hereby named Trustee of the trust established under
Paragraph 4 hereunder.  In the event of the death, resignation, or
inability to act of Settlor's daughter as Trustee, then PEAPACK-
GLADSTONE BANK is hereby named Trustee of the aforesaid trust in
her place and stead; provided, however, if a Corporate Trustee has
been designated and is then serving as provided below, then PEAPACK-
GLADSTONE BANK shall not be designated Trustee of the aforesaid
trust.

(c)  After the death of Settlor, PEAPACK-GLADSTONE BANK is
hereby named Trustee of the trusts established under Paragraph 5
hereunder; provided, however, if a Corporate Trustee has been
designated and is then serving as provided below, then PEAPACK-
GLADSTONE BANK shall not be designated Trustee of the aforesaid
trusts.

(d)  Each individual serving from time to time as Trustee
(including each individual who may be appointed pursuant to this

-30-

paragraph) may appoint any person or any bank having trust powers, provided its place of business is within the State of New Jersey, to serve as such fiduciary's successor Trustee of any trust. Appointments shall be by instrument in writing, signed by the party making such designation and filed with the Trustee then in office. Any such appointment of a successor to take effect in the future may be revoked by instrument in writing so filed by the person who made the appointment at any time before the successor qualifies, and any revoked appointment may be superseded by a new appointment.

(e)   The Individual Trustee, or if none, the adult beneficiaries hereof and guardian of any beneficiary, by a vote of a majority of them, at any time and as often as deemed advisable, (i) may designate any person or any bank having trust powers, provided its place of business is within the State of New Jersey, as Trustee to serve together with the then serving Individual Trustee to administer any trust hereunder, or (ii) may remove the Corporate Trustee then serving and designate any bank having trust powers other than and in the place and stead of the then acting Corporate Trustee, provided its place of business is within the State of New Jersey, or (iii) may change the designation of the Corporate Trustee made by Settlor herein, provided its place of business is within the State of New Jersey, or (iv) may designate a Corporate Trustee in place of the designated Corporate Trustee to serve hereunder in the event of the renunciation or resignation of the designated Corporate Trustee, provided its place of business is

-31-

within the State of New Jersey.  Said removal or designation shall
be in writing, signed by the parties making such removal and
designation, delivered to the then acting Corporate Trustee and
delivered to the bank so designated.  Upon receipt of said
instrument, the then acting Corporate Trustee shall convey, assign
and transfer the entire trust estate to such bank so designated.
Any such designation of a Corporate Trustee to take effect in the
future may be revoked by instrument in writing delivered to the
then acting Corporate Trustee, if any, and such designated
Corporate Trustee by the parties who made the designation at any
time before the successor commences serving as Trustee.  No more
than one (1) Corporate Trustee shall serve at any one time.

(f)  No successor Trustee shall be liable or responsible in
any way for any acts or defaults of any predecessor Trustee, nor
for any loss or expense from or occasioned by anything done or
neglected to be done by any predecessor Trustee.  Said successor
Trustee shall be liable only for his own acts or defaults in
respect to property actually received by him as such Trustee.
Also, with the consent of the Individual Trustees and the adult
beneficiaries hereunder, the Trustee may accept the account
rendered and the assets and property delivered to him and shall
incur no liability or responsibility to any beneficiary under this
agreement by reason of so doing.

(g)  In case an Individual Trustee designates a successor or
additional Trustee as provided above, the appointing Individual

-32-

Trustee may limit the powers and duties of such successor additional Trustee by specifying the powers and duties each successor or additional Trustee shall have or not have, in writing in the written designation as provided for herein.  If no such limitations are specified in the aforesaid designation, and to the extent there are no such limitations, then, in case any successor or additional Trustee shall at any time be appointed, such a successor or additional Trustee shall be clothed and vested with all the rights, duties, titles and powers, whether discretionary or otherwise, and shall serve without bond, all as if originally named as Trustee hereof.

(h)  The Corporate Trustee, if any, may sign checks or documents or instruments for the transfer of securities or other assets of any trust hereunder and may at any time give instructions or sign documents or instruments for the purchase or sale of securities or other assets of any trust hereunder which shall be binding on all Trustees hereunder; provided, however, in the event no Corporate Trustee shall be serving hereunder, then any one Trustee serving at any time may sign checks or documents or instruments for the transfer of securities or other assets of any trust hereunder and may at any time give instructions or sign documents or instruments for the purchase or sale of securities or other assets of any trust hereunder which shall be binding on all Trustees hereunder.

(i)  Any Individual Trustee may, from time to time, by

instrument in writing, delegate any or all of his or her rights, powers, duties, authority and privileges, whether or not discretionary, to any other Trustee for such period or periods of time as may be specified in such written instrument; provided, however, that any such instrument shall be revocable at any time and that any Trustee who is granted any discretionary power hereunder may not delegate such discretionary power to any Trustee who is not granted such discretionary power.

(j)   If at any time any interest in property situated in any state other than New Jersey or in a foreign jurisdiction is subject to administration under any trust created hereunder, and if the Trustee should be unwilling or should not be qualified or otherwise able to act in such state or jurisdiction, then said Trustee may resign and refuse to serve as Trustees with respect to such property, with the other Trustee continuing to act hereunder with respect to such property, or the Trustee may appoint as Trustee to serve within such state or jurisdiction any one or more qualified individuals or a Corporate Trustee by written instrument duly executed and acknowledged, as provided above.  In like manner, the Trustee may remove such trustee so appointed and appoint successors as the need may arise in order to fill vacancies resulting from such removal or for any other reason.  Said designation shall be in writing, signed by the Trustee then serving and delivered to the trustee so designated.  Upon receipt of said instrument, the then acting Trustee shall convey, assign and

transfer such portion of the trust estate to the Trustee so designated.

18. **TERMS.** The term Trustee and all references to said Trustee as used throughout this agreement shall mean the trustee or trustees, male or female, multiple or singular, individual or corporate trustee, or any combination thereof, serving as trustee or trustees hereunder from time to time during the term of this trust.

19. **NAME OF TRUST.** This trust shall be designated and known as "The Harry J. Layton Trust".

20. **ACCEPTANCE OF TRUST; APPLICABLE LAW.** The Trustee by joining in the execution of this agreement hereby signifies the Trustee's acceptance of this trust. The Settlor hereby declares that this trust shall be construed and regulated by the laws of the State of New Jersey.

IN WITNESS WHEREOF, the said Settlor and Trustee have hereunto set their hands and seals the day and year first above written.

Signed, Sealed and Delivered
in the presence of

_____          _____ (LS)
                                   HARRY J. LAYTON,
                                   Settlor and Trustee

_____          _____ (LS)
                                   DAYNA CLAXTON,
                                   Trustee

-35-

## SCHEDULE A

$10.00

## ACKNOWLEDGEMENT

STATE OF NEW JERSEY, COUNTY OF MORRIS          SS:

BE IT REMEMBERED that on July 21, 2005, HARRY J. LAYTON personally came before me and acknowledged under oath, to my satisfaction, that this person:

    (a) is named in and personally signed the attached document; and

    (b) signed, sealed and delivered this document as his act and deed for the uses and purposes therein provided.

Notary

YVETTE BARBAS
NOTARY PUBLIC, STATE OF NEW JERSEY
MY COMMISSION EXPIRES 12/22/2009

STATE OF NEW JERSEY, COUNTY OF MORRIS          SS:

BE IT REMEMBERED that on July 21, 2005, DAYNA CLAXTON, personally came before me and acknowledged under oath, to my satisfaction, that this person:

    (a) is named in and personally signed the attached document; and

    (b) signed, sealed and delivered this document as her act and deed for the uses and purposes therein provided.

Notary

95331_1.DOC

YVETTE BARBAS
NOTARY PUBLIC, STATE OF NEW JERSEY
MY COMMISSION EXPIRES 12/22/2009

-37-

C

# BENEFICIARY DESIGNATION

### For the Lucent Technologies Inc. Long Term Savings Plan For Management Employees and the Lucent Technologies Inc. Retirement Savings and Profit Sharing Plan

PLEASE PRINT clearly, use only black or blue ink. Mark the appropriate box that designates which Plan you are in.

☐ Lucent Technologies Inc. Long Term Savings Plan for Management Employees   ☐ Lucent Technologies Inc. Retirement Savings and Profit Sharing Plan

## ABOUT YOU (Please Print)

Name (Last) **Layton**      (First) **Harry**      (Middle) **J**

Social Security Number **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**   Home Phone **(908) 654-5394**   Work Phone _____

Marital status: ☒ I am married   ☐ I am not married

## YOUR PRIMARY BENEFICIARY (Please Print)

Please indicate the amount of benefits to be received by each beneficiary otherwise, benefits will be paid to your primary beneficiary(ies) in equal shares. If a primary beneficiary(ies) doesn't survive you, his or her share will be divided equally among the surviving primary beneficiary(ies). My primary beneficiary(ies) is (are):

Name (Last) **See attached Beneficiary Designation Language attached hereto.**   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____

Name (Last) _____   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____

Name (Last) _____   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____

Name (Last) _____   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____   Check here if continued on an additional sheet ☐   Total must equal 100%

## YOUR SECONDARY BENEFICIARY (Please Print)

You may also name a secondary beneficiary(ies) to receive benefits if no primary beneficiary(ies) survives you. My secondary beneficiary is:

Name (Last) _____   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____

Name (Last) _____   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____

Name (Last) _____   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____

Name (Last) _____   (First) _____   Percentage of Benefits ___%

Relationship _____   Social Security Number _____   Check here if continued on an additional sheet ☐   Total must equal 100%

## YOUR AUTHORIZATION (You Must Sign This Form)

By signing this form, I designate the person(s) named above as my primary and/or secondary beneficiary(ies) to the Lucent Technologies Inc. Long Term Savings Plan for Management Employees or the Lucent Technologies Inc. Retirement Savings and Profit Sharing Plan. I reserve the right to withdraw or change this designation at any time by completing a new Beneficiary Designation form. I also understand that this beneficiary designation supersedes any previous beneficiary designation I have submitted. To name someone other than my spouse as primary beneficiary, I understand I must have my spouse's written consent below and that this beneficiary designation will be invalid if I later marry someone other than the spouse giving consent below.

Employee's Signature **Harry Layton**   Date **7 / 9 / 98**
Month   Day   Year

## YOUR SPOUSE'S CONSENT (Spouse Must Sign If You're Married And Name Another Primary Beneficiary)

I consent to the beneficiary designation made by my spouse above. I acknowledge that I understand that the effect of giving my consent is that upon the death of my spouse, I am not the sole primary beneficiary of my spouse's account; that the beneficiary designation elected by my spouse is not valid unless I consent to it; and that my consent is irrevocable unless my spouse revokes his or her designation.

Spouse's Signature **Joanne J. Layton**   Date **7 / 9 / 98**
Month   Day   Year

State of **New Jersey**   County of **Morris**

On this **9th** day of **July**, 19____, the undersigned spouse, **Joanne J. Layton** appeared before me. He or she ☐ is known to me to be the person described herein; OR ☐ proved to me to be the person described herein on the basis of satisfactory evidence and acknowledged that he or she willingly gave the above consent.

Seal,   Notary Public's Signature **Brenda Henderson**

**BRENDA HENDERSON**
**NOTARY PUBLIC OF NEW JERSEY**
My Commission Expires On **Dec. 15, 2002**   My Commission Expires Dec. 15, 2002

18530.001   Original copy – Send to Fidelity Investments   Yellow copy – Keep in your file   LUCENT-BENE-1095
Fidelity Investments Institutional Operations Company, Inc., 82 Devonshire Street, Boston, MA 02109

2000000222

## Beneficiary Designation Language

The primary beneficiaries are the participants' children, daughter, Dayna Layton, SS# 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, Birth date January 4, 1962; son, Richard Layton, SS# 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, Birth date Masy 3, 1964, in equal shares. Provided, however, that if any child predeceases the participant leaving children who survive the participant, the share such deceased beneficiary would have received had such deceased child survived the participant, shall be paid to the trustees of the trust under Paragraph SEVENTH of the participant's Last Will and Testament dated February 18, 1998 to be administered and distributed as a part thereof for the benefit of the deceased child's then surviving children. Provided further, however, that if the participant's child, Richard Layton, survives the participant, then the share to be distributed to said child, Richard Layton, shall be distributed to the trustees of the trust under Paragraph FIFTH of the participant's Last Will and Testament dated February 18, 1998 to be administered and distributed pursuant to the terms thereof.

Document #: 332673/JBG

D

COUGHLIN DUFFY LLP
Linda Engleby, Esq. (003552000)
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
(973)267-0058
*Attorneys for Plaintiff, Richard Layton and Dayna Layton-Claxton, as Executor of the Estate of Harry J. Layton*

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF HARRY J. LAYTON, DECEASED | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: PROBATE PART UNION COUNTY |
| | DOCKET NO. R1435 |
| | Civil Action |
| | **CERTIFICATION OF JAMES B. GARLAND, ESQ.** |

I, **JAMES B. GARLAND**, of full age, do certify as follows:

1.  I am an attorney at law duly admitted to practice in the State of New Jersey and a Partner at the law firm of Coughlin Duffy LLP. I am familiar with the facts and statements made herein.

2.  I make this Certification in support of plaintiffs, Richard Layton and Dayna Layton-Claxton's, as Executor of the Estate of Harry J. Layton ("Plaintiffs"), Order to Show Cause and Verified Complaint.

3.  Harry J. Layton ("Decedent") died on April 22, 2016, having resided at 1425 Golf Street, Scotch Plains, New Jersey 07076.

4.  On February 18, 1998, decedent executed a Last Will and Testament ("1998 Will"). An executed copy of the 1998 Will had been destroyed when the decedent's Will of July 21, 2005 was executed. A copy of the unexecuted 1998 Will is annexed hereto as **Exhibit A**.

5.  I drafted the 1998 Will for the decedent and was also present at the time of execution.

I certify that the foregoing statements are true and accurate to my best knowledge and belief and that I am subject to punishment for willfully false statements.

By: _____
James B. Garland, Esq.

Dated: January 17, 2020



## LAST WILL AND TESTAMENT

I, <u>HARRY J. LAYTON</u>, of the Township of Scotch Plains, in the County of Union and State of New Jersey, being of sound and disposing mind, memory and understanding, make, publish and declare the following as and for my Last Will and Testament, hereby revoking all former Wills and Codicils heretofore by me made and executed:

<u>FIRST:</u>  I direct that all my just debts, expenses of my last illness and funeral expenses be paid as soon as conveniently may be done after my decease.

I direct that all estate, transfer, succession, inheritance, legacy and similar taxes, including any increase in the Federal Estate Tax imposed with respect to my estate under §4980A(d) of the Internal Revenue Code, or any successor thereto, and the Regulations thereunder (the "Code"), including interest and penalties thereon, if any, but excluding any Federal Generation Skipping Transfer Tax, upon or with respect to any property required to be included in my gross estate under the provisions of any tax law, and whether or not passing hereunder, or upon or with respect to any bequest or devise herein made, or upon or with respect to any person with respect to any such property, including any tax resulting from the inclusion of any amounts in the computation of the tax under any tax law, shall be paid out of my residuary estate as an expense in the settlement of my estate, and that there shall be

no proration of any such taxes.  Any Federal Generation Skipping Transfer Tax resulting from a transfer occurring under this Will or with respect to any property required to be included in my gross estate under the provisions of any tax law shall be charged to the property constituting the transfer in the manner provided by applicable law.

SECOND:(a)  Except as provided in Paragraph FOURTH below, I give and devise to my wife, JOANNE LAYTON, if she survives me, all tangible chattels acquired by me during our marriage, including but without limitation of the generality of the term tangible chattels, all such furniture, books, pictures, wearing apparel, jewelry, household furnishings, china, bric-a-brac, silver, automobiles and other tangible personal belongings and effects of every kind, but excluding all cash, credits, securities and all property in the nature of investments, with due reference being given to any memorandum I may leave with this Will regarding the distribution of my tangible personal property.  I give and devise all such tangible chattels owned by me at the time of my death which I owned prior to my marriage to my said wife, to my children, namely, DAYNA CLAXTON and RICHARD LAYTON, surviving me, in equal shares, as they may desire to take, with due reference being given to any memorandum I may leave with this Will regarding the distribution of my tangible personal property.

Any remaining items shall be sold and the proceeds of sale added to my residuary estate.

(b)  All costs of safeguarding, insuring, packing, and storing my tangible personal property before its distribution and of delivering each item to the place of residence of the beneficiary of that item shall be deemed to be expenses of administration of my estate.

THIRD:  My wife, JOANNE LAYTON, is designated as the beneficiary of a certain Lucent Technologies sickness/death benefit plan ("the Plan") valued at approximately SEVENTY-THREE THOUSAND ONE HUNDRED TEN ($73,110.00) DOLLARS.  In the event that for any reason whatsoever my wife shall not be designated beneficiary of the aforesaid Plan and Plan benefits are paid to my estate rather than to my wife, then I give and devise the amount of said Plan benefits payable upon my death to my wife, JOANNE LAYTON, if she survives me.

FOURTH:  If my wife, JOANNE LAYTON, survives me, I give and devise to my said wife the right to live and reside in and on my residence and the real property on which my residence is situate, together with the furnishings therein, for a period of six (6) months from the date of my death, rent free.  The expenses incurred in connection with the maintenance and operation of such residence during such period, including payment of real estate taxes, insurance premiums, repairs,

utilities and other costs of general maintenance shall be paid
by my estate.   In no event shall my wife encumber my said
residence and the real property on which it is situate in any
manner whatsoever.   If at any time during the aforesaid period,
my wife shall no longer desire to use and occupy my said real
property, then she shall notify my Executor in writing of her
intention to vacate the premises.   Upon the earlier of (i) the
expiration of the aforesaid six-month period or (ii) the death
of my wife or (iii) at such time as my wife shall no longer
desire to reside in my said residence, I authorize and direct
my Executor to sell my said real property, at public or private
sale, at such time and for such price and upon such terms as my
Executor may deem most advantageous for my estate, and to
execute and deliver good and sufficient conveyance for he
transfer thereof and that the proceeds of sale therefrom shall
be added to my residuary estate and disposed of as hereinafter
set forth.

    FIFTH:  Except as hereinafter provided, I direct my
Executor to divide all the rest, residue and remainder of my
estate, both real and personal, of whatsoever kind and nature
and wheresoever situate, of which I may die seized or possessed
or to which I may be entitled at the time of my death, into
equal shares, one (1) equal share for my daughter, DAYNA
CLAXTON, one (1) equal share for my son, RICHARD LAYTON, if she

-4-

or he survives me, and one (1) equal share for the descendants surviving me of either of them who may be deceased, to be allocated among such descendants, per stirpes.  My Executor shall allocate to the share for my said daughter the aggregate amount of all gifts I made to my said daughter since the date of this Last Will and Testament of mine, even to the exhaustion of the share for my said daughter.  I give and devise one (1) share thus constituted to my daughter, DAYNA CLAXTON, if she survives me.  If my son, RICHARD LAYTON, survives me, I give and devise his share thus constituted to my Trustee hereinafter named, in trust nevertheless, for the uses and purposes as set forth in Paragraph SIXTH below.  I give and devise one (1) share thus constituted to the descendants surviving me, per stirpes, of my daughter or son who may be deceased; provided, however, in the event any grandchild of mine entitled to a distribution hereunder shall be under the age of thirty-five (35) years, then I give and devise the share for such grandchild ("Beneficiary") to my Trustee hereinafter named, to be held in a separate trust for the uses and purposes as provided in Paragraph SEVENTH below.  In the event any descendant of a grandchild of mine entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be distributed as provided in Paragraph EIGHTH below.

SIXTH: My Trustee, hereinafter named, shall hold the share for my son, RICHARD LAYTON, for the uses and purposes as hereinafter set forth.

(a) Except as otherwise provided in subparagraphs (b) and (c) below, the Trustee shall invest and reinvest the same, collect the income therefrom and pay over the net income to or apply the same for the use and benefit of my son, RICHARD LAYTON, in such manner and in such amounts as the Trustee shall deem most advisable and beneficial for him. The decision of the Trustee as to how much of the net income shall be distributed shall be final. Any unexpended income shall be added at least annually to the principal of the trust. The Trustee shall also have full power and authority to use the principal of this trust in such amounts as the Trustee may deem most advisable and beneficial for my son. In determining the advisability of making any distribution of income or principal from this trust to or for the benefit of my son, the Trustee may, but need not, first give due consideration to other income and resources available to him. In making the distribution of principal and income, the Trustee shall take into consideration any government or other benefits for which my son may be eligible as set forth in subparagraph (b) below, and the effect any payments from this trust may have on my son's eligibility for said programs and benefits.

-6-

(b)   In the event my son shall be eligible to receive benefits of whatsoever kind from any governmental agency, or otherwise, including but not limited to the Social Security Administration, Veterans Administration, Medicare, Medicaid, Supplemental Security Income, S.S.D.I., and P.A.A.D. and other agencies or programs which may exist subsequent to the date of this Will, the Trustee shall take all steps necessary to assist my son in making application for and obtaining said benefits. The Trustee shall collect and expend such benefits for my son but shall not commingle such benefits with this trust fund.

(c)   The Trustee shall also have the power and authority to use the principal of this trust in such amounts for such items as the Trustee may deem necessary or advisable for the comfort of my son which items are not otherwise provided by the said government financial assistance and benefits or by the provider of services, including but not limited to vacations, house furnishings and incidentals; provided, however, the Trustee shall not pay or reimburse any amounts to the federal government, any state or subdivision or institution thereof, or any governmental agency for any purpose, including the care, support, and maintenance of my said son.

(d)   In the event that any time, and from time to time, during the term of this trust, my son becomes a resident

of either a regular nursing home or a skilled nursing or health related facility or a mental health institution, then, during such period of time as my son is such a resident, the Trustee may make only payments of income to or on behalf of my said son in accordance with subparagraph (c) above and the Trustee may not distribute any trust principal on behalf of or for the benefit of my son while he is such a resident as aforesaid.

(e)   Upon the death of my son, the balance of principal remaining in the trust together with any accumulated income shall be paid over and delivered to his descendants then surviving, in equal shares, per stirpes.   In the event there shall be no descendants then surviving, then the same shall be paid over and delivered to my daughter, DAYNA CLAXTON, or to my daughter's descendants then surviving in equal shares, per stirpes, if my daughter shall not be then surviving.   In the event any grandchild of mine entitled to a distribution hereunder shall be under the age of thirty-five (35) years, my Trustee shall continue to hold the share for such descendant ("Beneficiary") in a separate trust for the uses and purposes as provided in Paragraph SEVENTH below.   In the event any descendant of a grandchild of mine entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be distributed as provided in Paragraph EIGHTH below.

SEVENTH:  Any separate share to be held by my Trustee for a Beneficiary hereunder shall be administered and disposed of as provided herein.

(a)  My Trustee shall invest and reinvest the Beneficiary's share, collect the income therefrom and pay over to or apply for the use and benefit of the Beneficiary so much of the net income therefrom, in such amounts and in such manner as my Trustee shall deem most advisable and beneficial for the Beneficiary.  Any unexpended income shall be added at least annually to the principal of the trust.  My Trustee shall also have full power and authority to use the principal of this trust in such amounts as my Trustee may deem necessary or advisable for the health, support, maintenance and education, including college and post-graduate work, of the Beneficiary. The decision of my Trustee as to how much, if any, of the income or principal of the trust shall be paid to or for the benefit of such Beneficiary shall be final.

(b)  When such Beneficiary attains the age of twenty-five (25) years, or if such Beneficiary is already twenty-five (25) years old when this trust share is established, my Trustee shall pay over all of the net income to or apply the same for the use and benefit of such Beneficiary during his or her lifetime, and shall also pay to him or her, or apply for his or her use and benefit, such of the principal of his or her trust

-9-

as my Trustee shall deem necessary or advisable for his or her health, support, maintenance and education, including college and post-graduate work.  My Trustee shall also have full power and authority to use the principal of this trust for the education expenses and medical expenses of any one or more of the Beneficiary's descendants in such amounts and in such proportions as my Trustee shall deem appropriate.

(c)  In making a use of income or principal for the benefit of the Beneficiary and his or her descendants, my Trustee shall give due consideration to other income and resources available to them.  Notwithstanding anything to the contrary contained herein, no distribution of income or principal shall be made to or for the benefit of a Beneficiary which distribution would relieve the parent of such Beneficiary of his or her legal obligation to support such Beneficiary.

(d)  Each Beneficiary for whom a separate share is held in trust hereunder shall have the absolute right to demand and receive from my Trustee the principal of his or her trust as follows:

(i)  If the Beneficiary shall graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the right to receive the principal of his or her trust as follows:  one-half (1/2) thereof at any time after

-10-

attaining the age of twenty-five (25) years; and all of the balance remaining therein at any time after attaining the age of thirty (30) years.

(ii)  If the Beneficiary shall not graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the right to receive the principal of his or her trust as follows:  one-half (1/2) thereof at any time after attaining the age of thirty (30) years; and all of the balance remaining therein at any time after attaining the age of thirty-five (35) years.

(iii)  All such distributions shall be made no more than twenty-one (21) years after the death of all of the descendants of my parents who are alive at the date of my death.

(e)  Upon the death of each Beneficiary for whom a separate share is held in trust hereunder, the balance of principal remaining in his or her share shall be paid over and delivered to his or her descendants then surviving, in equal shares, per stirpes.  In the event there shall be no such descendants then surviving, the same shall be paid over and delivered to the descendants then surviving of the ancestor of the Beneficiary in nearest degree who is my issue, or if none, to my descendants then surviving, in equal shares, per stirpes,

as the case may be.  Any share thus distributable to my said son for whom a separate share is held in trust hereunder shall be added to the trust of his share and administered and distributed as a part thereof.  Any share thus distributable to a grandchild of mine for whom a separate share is held in trust hereunder shall be added to the trust of his or her share and administered and distributed as a part thereof; provided, however, such trusts may be continued to be held separately if the Federal Generation Skipping Transfer Tax inclusion ratios for such trusts are not the same, and such separate trusts shall be administered pursuant to the same terms and provisions.

(f)(i)   In the event any grandchild of mine entitled to a distribution of principal hereunder shall be under the age of thirty-five (35) years, my Trustee shall continue to hold his or her share in trust pursuant to the terms and provisions of this Paragraph SEVENTH as if such grandchild were a Beneficiary as defined herein.

(ii)   In the event any descendant of a grandchild of mine entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph EIGHTH below.

EIGHTH:   In the event any descendant of a grandchild

of mine entitled to a distribution hereunder shall be under the age of twenty-one (21) years or shall be under any other legal disability, my Trustee or Executor, as the case may be, may distribute such descendant's share to any guardian in whatever jurisdiction appointed, to a custodian for such individual under the New Jersey Uniform Transfers to Minors Act, or to any parent of such individual (without bond being required of such guardian, custodian or parent in respect of the receipt of such property), whose written receipt, to the extent therein specified, shall be a full acquittance and release to the Executor or Trustee for the property so distributed, with the same force and effect as if such receipt had been signed by such individual after attaining the age of twenty-one (21) years or removal of such disability, as the case may be.

NINTH:  In the event there shall be no descendants of mine surviving to receive all or any part of the principal of any trust or to receive my residuary estate, then upon the death of all of my descendants, the balance of principal remaining in the trust or my residuary estate, as the case may be, shall be paid over and delivered to New Jersey Alliance For the Mentally Ill, North Brunswick, New Jersey; provided, however that such entity shall be an organization entitled to exemption from Federal income tax under §501(c)(3) of the Code and qualify pursuant to §170(c), §2055(a) and §2522 of the Code

at the time of my death.

TENTH:  All trusts hereunder shall be administered in accordance with the following general provisions where applicable:

(a)  In the event that at any time during the term of any trust hereunder the amount of trust principal under administration shall be of a size that is no longer economical to administer, the trust may be terminated in the discretion of my Trustee, and, if terminated, the balance of principal remaining and accumulated income shall be paid over and delivered (i) to my son for the trust under Paragraph SIXTH hereof, or (ii) to the Beneficiary thereof for any trust under Paragraph SEVENTH hereof.  All trusts for the same beneficiary or beneficiaries under this Will shall be aggregated for purposes of this subparagraph.

(b)  My Trustee shall not be required to make physical division of the separate trust shares established hereunder except when necessary for distribution of principal, but may, in such Trustee's discretion, keep the trust principal in one or more consolidated funds in which the separate trust shares shall have undivided interests.

(c)  No disposition, charge, or encumbrance of the income or principal of the trusts created hereunder, or of any part thereof, by any beneficiary hereunder, by way of

-14-

anticipation, shall be of any validity or legal effect, or be in anywise regarded by my Trustee.

ELEVENTH:  I nominate, constitute and appoint my daughter, DAYNA CLAXTON, Executor hereof and direct that she be permitted to serve without bond or other security for the faithful performance of her duties in any jurisdiction.  In the event my daughter shall not survive me, or having survived me shall fail to qualify, or having qualified shall for any reason cease to act, then I nominate, constitute and appoint PEAPACK-GLADSTONE BANK substitute Executor hereof, likewise without bond.

TWELFTH:(a)  I nominate, constitute and appoint my daughter, DAYNA CLAXTON, Trustee hereunder and direct that my Trustee be permitted to serve without bond or other security for the faithful performance of her duties in any jurisdiction. In the event my daughter shall not survive me, or having survived me shall fail to qualify, or having qualified shall for any reason cease to act, then I nominate, constitute and appoint PEAPACK-GLADSTONE BANK substitute Trustee hereunder, likewise without bond; provided, however, if a Corporate Trustee has been designated and is then serving as provided below, then PEAPACK-GLADSTONE BANK shall not be designated Trustee hereunder.

(b)  Each individual serving from time to time as

-15-

Trustee (including each individual who may be appointed pursuant to this paragraph) may appoint any person to serve as such fiduciary's successor Trustee of any trust.  Appointments shall be by instrument in writing, signed by the party making such designation, filed with the Trustees then in office, and filed with the Surrogate of the County where my Will is admitted to probate at the time of my death.  Any such appointment of a successor to take effect in the future may be revoked by instrument in writing so filed by the person who made the appointment at any time before the successor qualifies, and any revoked appointment may be superseded by a new appointment.

(c)  My Individual Trustees, or if none, the adult beneficiaries hereof, other than my son, RICHARD LAYTON, and the guardian or court appointed legal representative of my son and any minor beneficiary, by a vote of a majority of them, at any time and as often as deemed advisable, (i) may designate any bank having trust powers, provided its place of business is within the State of New Jersey, as Trustee to serve together with the then serving Individual Trustees to administer any trust hereunder, or (ii) may remove the Corporate Trustee then serving and designate any bank having trust powers other than and in the place and stead of the then acting Corporate Trustee, or (iii) may designate a Corporate Trustee in place of

-16-

the designated Corporate Trustee to serve hereunder in the event of the renunciation or resignation of the designated Corporate Trustee, provided its place of business is within the State of New Jersey.  Said designation shall be in writing, signed by the parties making such removal and designation, delivered to the then acting Corporate Trustee, delivered to the bank so designated, and filed with the Surrogate of the County where my Will is admitted to probate at the time of my death.  Upon receipt of said instrument, the then acting Corporate Trustee shall convey, assign and transfer the entire trust estate to such bank so designated.  Any such designation of a Corporate Trustee to take effect in the future may be revoked by instrument in writing delivered to the then acting Corporate Trustee, if any, and such designated Corporate Trustee by the parties who made the designation at any time before the successor commences serving as Trustee.  No more than one (1) Corporate Trustee shall serve at any one time.

(d)  No successor Trustee shall be liable or responsible in any way for any acts or defaults of any predecessor Trustee, nor for any loss or expense from or occasioned by anything done or neglected to be done by any predecessor Trustee.  Said successor Trustee shall be liable only for his own acts or defaults in respect to property actually received by him as such Trustee.  Also, with the

consent of the Individual Trustees and the adult beneficiaries hereunder, the Trustee may accept the account rendered and the assets and property delivered to him and shall incur no liability or responsibility to any beneficiary under this Will by reason of so doing.

(e)   In case any successor or additional Trustee shall at any time be appointed, such a successor or additional Trustee shall be clothed and vested with all the rights, duties, titles and powers, whether discretionary or otherwise, and shall serve without bond, all as if originally named as Trustee hereof.

(f)   Any one Trustee serving at any time may sign checks or documents or instruments for the transfer of securities or other assets of any trust hereunder and may at any time give instructions or sign documents or instruments for the purchase or sale of securities or other assets of any trust hereunder which shall be binding on all Trustees hereunder.

(g)   If at any time any interest in property situated in any state other than New Jersey or foreign jurisdiction is subject to administration under any trust created hereunder, and if my Trustee should be unwilling or should not be qualified or otherwise able to act in such state or jurisdiction, then said Trustee may resign and refuse to serve as Trustee with respect to such property, with the other

Trustees continuing to act hereunder with respect to such property, or the Trustee may appoint as Trustee to serve within such state or jurisdiction any one or more qualified individuals or a Corporate Trustee by written instrument duly executed and acknowledged, as provided above.  In like manner, the Trustee may remove such trustee so appointed and appoint successors as the need may arise in order to fill vacancies resulting from such removal or for any other reason.  Said designation shall be in writing, signed by the Trustee then serving, delivered to the trustee so designated, and filed with the Surrogate of the County where my Will is admitted to probate at the time of my death.  Upon receipt of said instrument, the then acting Trustee shall convey, assign and transfer the entire trust estate to the Trustee so designated.

THIRTEENTH:  I give to my Executor and Trustee, in addition to the powers conferred by law, the following further full powers, exercisable at any time and repeatedly from time to time - to my Executor over all property, real and personal, of my estate until finally administered and distributed; to my Trustee over all property, real and personal, at any time held by my Trustee in trust:

(a)  To retain as investments, or otherwise, without requirement of diversification, any property owned by me at the time of my death, or subsequently acquired pursuant to my Will, or distributed by my Executor to my Trustee, and to increase the investment in any such property, and to make other investments in, and to exchange any property for any of the

following:  any securities of any corporation; any bonds, notes, mortgages, or participations secured on real estate, wherever situate, any obligations of any government, state, county, municipality or political subdivision or instrumentality, domestic or foreign; any real estate or improvements thereon; any common trust fund established, maintained and operated by my Executor or Trustee or any duly appointed successor executor or trustee; any other investments of any kind; all as in the absolute discretion of my Executor or my Trustee may be deemed proper, whether or not any of such investments are authorized by any law as proper for the investment of trust funds.

(b)   To become party to any voting trust agreement, and to vote and to give proxies to vote upon any securities held, and to cast any of such votes for my Executor or my Trustee.

(c)   To make and carry out any contracts, leases and agreements relating to any property held by my Executor or my Trustee; and to execute any papers on any terms deemed by her appropriate in exercising any of her powers; and to make such compromises or settlements of debts, claims or controversies as she may deem necessary or advisable, even if the term of said contract, lease or agreement will extend beyond the term of administration of my estate or any trust created hereunder.

(d)   To borrow money from others or from herself, whether to pay taxes, exercise options or subscription rights, pay assessments, or to accomplish any other purpose of any nature incidental to the administration of my estate or of the trust or powers in trust hereunder, and to mortgage or pledge as security therefor any property constituting a part of my estate or at any time held by her hereunder.

(e)   To make interim payments in reasonable amounts on account of fiduciary commissions or attorneys' fees, or both, at such time or times as she may, in her absolute discretion, deem beneficial for and to the best interest of my estate and the beneficiaries thereof, without prior application to or approval by any court, any statute or rule of law to the contrary notwithstanding.

(f)   To pay, in her absolute discretion, any bequest or to distribute my estate and any trust created hereunder, in cash or in property, or partly in cash and partly in property, and to make non-pro rata payments or distributions of such cash or property, and for those purposes to use and allocate any

property not specifically bequeathed or devised at date of distribution values without regard to the adjusted basis for income tax purposes of any such property so paid, distributed or allocated.

(g)   To exercise or refrain from exercising any election or option available under the Code, with or without making equitable adjustments with respect to any interests in property passing hereunder by reason of any such election or option.

(h)   To allocate, in her sole and absolute discretion, any exemption from the Federal Generation Skipping Transfer Tax to any property with respect to which I am the transferor as defined in §2652 of the Code for the purposes of the Federal Generation Skipping Transfer Tax (whether or not such property is included in my probate estate) and to exclude any such property from such allocation.

(i)   To hold property in the names of nominees or so that it will pass on delivery, or in the name of the corporate fiduciary without disclosing any fiduciary capacity; and to leave property in the custody of a firm of stockbrokers and registered in the name of the stockbrokers' nominees.

(j)   To renew, assign, alter, extend, compromise, abandon or release, with or without consideration or submit to arbitration, obligations or claims held by or asserted against her or which affect trust assets, all as she may deem advisable.

(k)   To engage accountants, appraisers and other experts and legal counsel; to employ agents, clerks and other assistants; and to remunerate and pay the expenses of such persons.  If at any time no corporate fiduciary is serving, my Executor and Trustee are authorized to employ custodians of the assets and other assistants and to engage and rely on investment counsel, and in the discretion of my Executor and Trustee, to grant discretionary investment authority to investment counsel.

(l)   To make or continue any debt or guarantee, including any debt or guarantee owed to any Executor or Trustee individually, and any pledge or mortgage securing it.

(m)   Except as provided herein, to apply any income or principal that is payable to a minor or any person who in her judgment is incapable of making proper disposition thereof, by

payments on behalf of the beneficiary to anyone with whom the
beneficiary resides and/or by payments in discharge of the
beneficiary's bills, all without the intervention of any
guardian or committee or like fiduciary, and without obligation
to see to the further application thereof.

(n)  To sell for cash or on credit (at public or
private sale), exchange, mortgage, lease for any period (either
as landlord or tenant and including renewals of the term) and
modify, extend or cancel leases, grant options, refinance
mortgages on property and subordinate her interest to the
interest of a lender, all regardless of statutory restrictions
or the probable duration of any trust, or otherwise dispose of
or deal with any real or personal property, in such manner and
upon such terms and conditions as she may deem advisable; to
erect, renovate or alter buildings or otherwise improve and
manage buildings and property; demolish buildings; make
ordinary and extraordinary repairs; grant easements and make
party wall contracts; dedicate roads; subdivide; adjust
boundary lines and partition; and to do everything with respect
to interests in any property that any individual owner may do.

(o)  To claim expenses as either income tax deductions
or estate tax deductions when an election is permitted by law,
and if expenses are claimed as income tax deductions, no
compensating adjustments shall thereafter be made in favor of
principal, notwithstanding any statute or rule of law.

(p)  To remove, transfer or deposit any of the
personal property forming part of the trust created hereunder
to any place in the world as she may deem advisable for the
safekeeping thereof, without bond or prior court approval.

(q)  To exercise any options, privileges or rights of
any nature which may be granted to or exercisable by the
holders of any property which forms a part of this estate or
trust or sell any subscription or other rights or allow any
such rights to expire or lapse.

(r)  To assent to or participate in any
reorganization, readjustment, consolidation, merger,
dissolution, sale or purchase of assets, or similar
proceedings, by any corporation whose securities or obligations
or rights shall be held hereunder; to consent to any contract,
mortgage or other action by any corporation; to deposit
securities or evidences of rights or interests or obligations
under any agreement or plan for the protection of holders of
securities and become a party to any such agreement or plan;

and to participate in the reorganization of any corporation and pay any assessment or other expenses.

(s)   To loan principal or interest hereof, but only upon adequate interest or security, where appropriate.

(t)   To resign upon written notice to any successor Executor or Trustee or Co-Trustee, as the case may be, and all adult beneficiaries hereunder.

(u)   To establish in her sole and absolute discretion, separate trusts in place of any trust created hereunder in order that the Federal Generation Skipping Transfer Tax inclusion ratio, as defined in §2642 of the Code for each such trust shall be either zero or one.   The determination of my Executor or Trustee as to whether and to what extent to make said division shall be absolute and conclusive, regardless of the personal interest any Executor or Trustee may have in the consequences of such division.   My Executor or Trustee shall not be liable, responsible, or accountable, in court or otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph. Each such separate trust shall be administered in accordance with the provisions of the original trust from which it is established under this Will.   The trusts created under this subparagraph shall have the same name as the original trust, except that the trust to which the Federal Generation Skipping Transfer Tax exemption is allocated (the trust with inclusion ratio zero) shall have the phrase "GST Exempt" added to its name.   Such trusts shall be sometimes referred to as "related".

(v)   To the extent it is consistent with my Trustee's fiduciary obligations, my Trustee, in making discretionary distributions of net income and principal from or investment decisions in connection with any related trusts, if established, shall utilize the opportunities provided by the creation of such related trusts to eliminate, reduce or defer the Federal Generation Skipping Transfer Tax when making distributions, and to maximize the amount of trust property that eventually may be distributed to my descendants at the termination of all trusts created under this Will.

(w)   To acquire, sell, lease, convey, contract and otherwise deal with and in oil, gas and other minerals, solid, liquid and gaseous, and mineral rights, royalties and economic interests therein, and to explore for, develop, operate, remove and market such minerals and mineral interests, and in

connection therewith to execute leases, division orders, pooling or unitization agreements (including agreements extending beyond the term of administration of my estate or any trust hereunder) with respect to any mineral or royalty interest held or acquired by my estate or any trust.

(x)   To construe all the terms and provisions of this Will and the trust established hereunder and to reconcile any inconsistencies that may appear.

(y)   In general, to receive, preserve, manage, administer, partition, and distribute my estate and trust estate, and the principal and income thereof, for the benefit of the beneficiaries interested therein, as herein provided.

(z)   I also give to my Executor only the following additional power:  To distribute any property, or portion thereof, given to my Trustee, which trust pursuant to its terms would be immediately subjected to final distribution and termination upon receipt of the property, directly to the beneficiaries of the trust in order to avoid the needless transfer of property to my Trustee as a preliminary step to distribution to the ultimate beneficiaries.

(aa)   Notwithstanding any other provision of this Will, if at any time any beneficiary should be serving as Trustee hereunder, such beneficiary shall not be entitled to exercise any discretionary right or power in any manner relating to distributions of income and principal to such beneficiary (including distributions to such beneficiary or others which may discharge any legal obligation of such beneficiary), but all such rights, powers and discretions shall be exercised solely and exclusively by the other Trustees then acting hereunder, whether one or more; and if no such other Trustees are then acting, such discretionary rights and powers shall not be exercised and such distribution shall not be made. This provision shall not apply to a power to make distributions to such Trustee-beneficiary pursuant to a standard limited to the health, support, maintenance and education of such beneficiary nor to any power of withdrawal granted to a beneficiary hereunder.

(bb)   Without regard to any other provision of law, a transaction shall not be prohibited and the Executor or Trustee shall not be disqualified from entering into or continuing any transaction on behalf of the estate or any trust, as the case may be, for the reason only that another party to such transaction is: (i) a trust or estate of which the Executor or

-24-

Trustee is a fiduciary, (ii) a trust or estate established by me or in which any beneficiary has an interest, or (iii) any beneficiary of any trust created hereunder. The Executor and Trustee are authorized to invest or hold all or any part of the estate or trust estate in common with any person or entity, including the Executor or Trustee.

(cc)   I may designate any trust hereunder as the beneficiary of certain Individual Retirement Accounts (IRAs) or other employee benefits which I maintain.  The Trustee shall receive such funds from the custodian of each said IRA or qualified plan pursuant to the respective beneficiary designations then in effect and may make any election regarding such distributions as the Trustee deems most beneficial for the beneficiaries hereunder.  The portion of each such payment received by the Trustee attributable to income earned in the IRA or qualified plan in the year of the distribution shall be allocated to income hereunder and the balance of each such payment shall be allocated to principal hereunder, even though the entire such payment may be subject to federal income tax.

FOURTEENTH:  The terms Executor and Trustee and all references to each of them as used throughout this Will shall mean the executor or trustee, as the case may be, male or female, multiple or singular, individual or corporate executor or trustee, or any combination thereof, serving as executor or trustee hereunder from time to time during the administration of my estate or any trust established hereunder.

LASTLY:  It is my wish and I request that my Executor and Trustee not file any inventory or any public or judicial accounting of my estate.  Nothing however, in this paragraph shall be deemed to be a bar from recourse to appropriate proceedings in any court having jurisdiction for the settlement of accounts, or to bar the beneficiaries of like recourse to compel an accounting.  An accounting of my Executor and

Trustee, approved in writing by the adult beneficiaries hereof and guardian of any minor beneficiary or legal representative of any beneficiary shall be conclusive and binding upon all persons having an interest in my estate, directly or indirectly.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _____ day of _____ , in the year of Our Lord, One Thousand Nine Hundred and Ninety-Eight.

_____ (L.S.)


SIGNED, SEALED, PUBLISHED and DECLARED by the Testator, HARRY J. LAYTON, to be his Last Will and Testament, in our presence and in the presence of each of us, we all being present at the same time; and we at his request, in his presence and in the presence of each other, have hereunto signed our names as attesting witnesses.


_____     _____


_____     _____

I, HARRY J. LAYTON, the Testator, sign my name to this instrument this _____ day of _____, 1998, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my Last Will and Testament and that I sign it willingly, that I execute it as my free and voluntary act for the purposes therein expressed, and that I am 18 years of age or older, of sound mind, and under no constraint or undue influence.

_____

_____ and _____,

the witnesses, being first duly sworn, do each hereby declare to the undersigned that the Testator signs and executes this instrument as his Last Will and Testament and that he signs it willingly and that each of us states that in the presence and hearing of the Testator, he hereby signs this Will as witness to the Testator's signing, and that to the best of his knowledge the Testator is 18 years of age or older, of sound mind, and under no constraint or undue influence.

_____     _____

_____     _____

The State of New Jersey
County of Morris

Subscribed, sworn to and acknowledged before me by HARRY J. LAYTON, the Testator, and subscribed and sworn to before me by _____ and _____, witnesses, this _____ day of _____, 1998.

_____

210101

-27-

E

## THE LAYTON FAMILY TRUST

THIS AGREEMENT, made as of the 18 day of Feb ,
Nineteen Hundred and Ninety-Eight,

BETWEEN:

HARRY J. LAYTON, of the Township of Scotch Plains, in the
County of Union and State of New Jersey, hereinafter called the
Insured;

AND

DAYNA CLAXTON, hereinafter called the Trustee;

WITNESSETH THAT: WHEREAS the Insured desires to establish a
trust of the proceeds of certain Life Insurance as set forth on
Schedule A attached hereto, which insurance is about to be
irrevocably assigned to the Trustee, on the terms and conditions
hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and the
mutual covenants and agreements herein contained, and the sum of
One Dollar and other good and valuable consideration, receipt
whereof is hereby acknowledged, the parties hereto agree as
follows:

1. The Trustee shall have all of the right, title, claim,
interest and benefit and all other incidents of ownership of
whatever nature in and to the insurance under the Policy set
forth on Schedule A attached hereto and the same shall be Held IN
TRUST by said Trustee, for the uses and purposes and on the terms
and conditions herein set forth.

Such ownership includes, without limitation of the foregoing, all rights, powers, options, advantages, title, claim, interest and benefit to or under the Policy (including the right to receive the proceeds thereof) and to or under any insurance which may arise by virtue of conversion of all or part of such insurance, notwithstanding that the insurance obtained by any such conversion may be of a type different from the initial life insurance policy.

Without limiting the generality of the foregoing, such ownership has vested in the Trustee such and all of the following rights with respect to the Policy:

(a)  The sole and exclusive right and power to exercise any right or option under the Policy or otherwise to apply for and obtain by conversion or otherwise one or more policies of individual insurance on the life of Insured, any such individual policy or policies to be the absolute property of the Trustee or assigns, to surrender for cash, extended insurance or a paid-up policy and to borrow against any such policy or policies;

(b)  The sole and exclusive right to designate and change the beneficiaries under the Policy provided that the Insured shall not be designated as such beneficiary;

(c)  The sole and exclusive right to demand, collect and receive from the company or companies issuing said policies

all such proceeds of the Policy as shall become a claim,
unless by assignment or designation of beneficiary the
Trustee shall have otherwise designated;

(d)  The sole and exclusive right to cancel any Policy and
any interest in the Policy and to surrender the converted
Policy; and

(e)  The sole and exclusive right to assign any and all
rights received under such assignment from the Insured to
the Trustee.

Notwithstanding anything to the contrary herein contained,
the Trustee hereunder shall not be required to pay premiums, to
collect the proceeds of any policy of which she does not have
actual notice, or to bring suit for the proceeds of any policy
unless she is indemnified against the cost of that suit.  If the
Insured does not fund the Trust with assets other than interests
in life insurance, the Trustee will have no assets to pay the
premiums thereon, nor would the Trustee be likely to have notice
of the existence of any option thereon or of any default by the
Insured in payment of the premiums or of the cancellation of the
insurance.  The Insured recognizes that if the Insured does not
fund the Trust it will be an inactive Trust and also that the
Trustee will have no control over whether or not premiums are
paid, options exist, or if the insurance is cancelled.
Accordingly, the Insured hereby expressly relieves the Trustee

-3-

from all liability and responsibility to determine whether or not premiums on any group life insurance policies are paid, or whether any options should be exercised or the coverage kept in force with respect to any policies held herein.

2. During the lifetime of the Insured, the Trustee shall hold the property of this trust for the following purposes:

(a) The Trustee shall collect the income of the trust property and shall apply the net income to the payment of premiums on the life insurance policies owned by the trust. If the net income is insufficient to pay such premiums, the Trustee shall notify (in writing) the Insured and the beneficiaries of the trust of such insufficiency and give them the opportunity to furnish the necessary funds. If neither the Insured nor any of the beneficiaries furnishes the funds necessary to pay the premiums, the Trustee may, but is not required to, obtain the funds required to pay such premiums by selling a portion of the trust principal, or borrowing on the security of the trust principal, by borrowing against the cash surrender values of the policies or surrendering some policies and using the proceeds to pay premiums on other policies. The Trustee is also authorized to convert any policies to paid up or extended term insurance if the Trustee does not have the necessary funds to pay the premiums. If no funds are available for the payment of premiums on any policy, the Trustee is authorized to distribute such

policy to the children of the Insured living at the time of the
distribution in equal shares.

(b)   If there is any trust income remaining after the
payment of premiums in accordance with subparagraph (a) above,
the Trustee may pay over the net income to or apply the same for
the use and benefit of Insured's daughter, DAYNA CLAXTON, and
Insured's said daughter's descendants, in such manner, in such
amounts and in such proportions as the Trustee shall deem most
advisable and beneficial for them.  Any unexpended income shall
be added at least annually to the principal of the trust.  The
Trustee may also use the principal of this trust in such amounts
and proportions as may be deemed necessary or advisable for the
health, support, maintenance and education, including college and
post-graduate work, of Insured's said daughter and her
descendants.  In making a use of income or principal for the
benefit of Insured's said daughter and her descendants, the
Trustee shall give due consideration to other income and
resources available to them.  The decision of the Trustee as to
whether any of Insured's said daughter or her descendants shall
receive any part of the net income of this trust and if so, how
much, shall be final.

3.(a)   The Trustee shall be responsible for the proceeds of
any insurance policy only when, as and if such proceeds shall be
actually received by the Trustee and shall not be liable to

-5-

anyone if, for any reason, such policies or any of them shall lapse or otherwise become uncollectible. The term "proceeds" when used herein shall include, without limitation by the enumeration thereof, any payments by reason of, under or pursuant to any policy or any option, privilege or other right. To the extent permitted by law such proceeds shall be treated as principal, except that any sickness, disability or other similar benefits paid by any insurer shall be treated as income.

(b) Except at her option, the Trustee shall not enter into or maintain any litigation to enforce payment of any such policies until the Trustee shall have been indemnified to the Trustee's sole satisfaction against all expenses and liabilities to which, in the Trustee's sole discretion, the Trustee may be subjected by such action on the Trustee's part, and then only if it shall appear advisable to the Trustee in her absolute discretion to institute or maintain such litigation. The Trustee may, however, utilize the proceeds of any policy to meet the expenses incurred in connection with enforcing the payment of any other policy.

(c) The Trustee is authorized to compromise and adjust claims arising on such insurance policies, or any of them, upon such terms and conditions as she may deem just or expedient, and the discharge of the Trustee shall be binding and conclusive upon all persons and corporations interested therein.

(d)   If the policies or any of them shall be subject to any charges which shall be deducted from the proceeds of the policies when they become payable, the Trustee shall accept the net proceeds of such policies after the deduction of such charges and shall not be obliged to collect and shall not collect from any other person the amount of such charges so deducted from the proceeds of such policies.

4.   During the lifetime of the Insured, at such time as cash or other property is transferred to the trust by the Insured, or any other person or the then acting Trustee is advised by the Insured that premiums with respect to life insurance policies held by the trust have been paid by the Insured, the Trustee shall promptly notify the Insured's descendants that such property has been received or premiums have been paid, as the case may be.

(a)   Insured's said daughter and each of her descendants shall have the unrestricted right for a period of thirty (30) days from the date notice is received to demand in writing and receive from the trust payment equal to (1) the value of the property received or the amount of premiums paid by the Insured divided by (2) a number equal to the number of Insured's said daughter and her descendants then living; provided however, the amount over which Insured's said daughter or any of her descendants shall have such right of withdrawal shall be limited

-7-

to the amount for which the Insured or Insured's wife could claim a gift tax annual exclusion under §2503(b) of the Code, if the property were given outright to the descendant (hereinafter the "Sum"). If there is insufficient cash to satisfy any such demand from principal, the Trustee may take such action as she may deem necessary or appropriate to convert sufficient assets of the trust into cash, to borrow, or to distribute assets in kind to the extent necessary to satisfy such demands.

(b)   In the event the Sum exceeds the amount that qualifies under §2514(e) of the Internal Revenue Code, or any successor thereto, and the Regulations thereunder (the "Code"), over which a power of invasion may lapse without being considered a release of such power, and in the event Insured's said daughter or any of her descendants shall die prior to the death of the Insured, then upon the death of Insured's said daughter of any of her descendants, the aggregate of the Sums with respect to such deceased individual for all such years of the trust shall be paid over and delivered to such person or persons, including the estate of such individual, as such individual shall appoint in and by his or her Last Will and Testament. In the event such individual shall fail to exercise effectively the foregoing general power of appointment, then said amount shall remain in this trust to be administered and distributed as a part hereof.

(c)   If any descendant of Insured's said daughter is a minor

or is otherwise under a disability, the guardian, conservator or

other authorized representative of the said descendant may

exercise the power of withdrawal on his or her behalf; provided

that under no circumstances may the Insured so act on behalf of a

beneficiary.

(d)   The powers herein granted to Insured's said daughter

and her descendants shall expire upon the death of the Insured.

5.   Upon the death of the Insured, the Trustee shall, as

soon as possible, collect the net proceeds of such life insurance

policies as are then in force, which proceeds, together with any

other assets at any time forming a part of this trust, are herein

sometimes referred to as the Trust Estate and shall administer

the Trust Estate as hereinafter set forth.   The Trustee shall

divide the Trust Estate into equal shares, one (1) equal share

for Insured's daughter, DAYNA CLAXTON, one (1) equal share for

Insured's son, RICHARD LAYTON, if she or he survives Insured, and

one (1) equal share for the descendants then surviving of either

of them who may be deceased, to be allocated among such

descendants, per stirpes.   The Trustee shall pay over and deliver

one (1) equal share to Insured's daughter, DAYNA CLAXTON, if she

is then surviving.   If Insured's son, RICHARD LAYTON, is then

surviving, the Trustee shall hold one (1) equal share for

Insured's said son in a separate trust for the uses and purposes

as set forth in Paragraph 6 below.   The Trustee shall pay over

-9-

and deliver one (1) equal share to the descendants then surviving, per stirpes, of Insured's daughter or son who may be deceased; provided, however, in the event any grandchild of Insured entitled to a distribution hereunder shall be under the age of thirty-five (35) years, then the Trustee shall continue to hold the share for such grandchild ("Beneficiary") in a separate trust for the uses and purposes as provided in Paragraph 7 below. In the event any descendant of a grandchild of Insured entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be distributed as provided in Paragraph 8 below.

6.  The Trustee shall hold the share for Insured's son, RICHARD LAYTON, for the uses and purposes as hereinafter set forth.

(a)  Except as otherwise provided in subparagraphs (b) and (c) below, the Trustee shall invest and reinvest the same, collect the income therefrom and pay over the net income to or apply the same for the use and benefit of Insured's son, RICHARD LAYTON, in such manner and in such amounts as the Trustee shall deem most advisable and beneficial for him.  The decision of the Trustee as to how much of the net income shall be distributed shall be final.  Any unexpended income shall be added at least annually to the principal of the trust.  The Trustee shall also have full power and authority to use the principal of this trust

in such amounts as the Trustee may deem most advisable and beneficial for Insured's son.  In determining the advisability of making any distribution of income or principal from this trust to or for the benefit of Insured's son, the Trustee may, but need not, first give due consideration to other income and resources available to him.  In making the distribution of principal and income, the Trustee shall take into consideration any government or other benefits for which Insured's son may be eligible as set forth in subparagraph (b) below, and the effect any payments from this trust may have on Insured's son's eligibility for said programs and benefits.

(b)   In the event Insured's son shall be eligible to receive benefits of whatsoever kind from any governmental agency, or otherwise, including but not limited to the Social Security Administration, Veterans Administration, Medicare, Medicaid, Supplemental Security Income, S.S.D.I., and P.A.A.D. and other agencies or programs which may exist subsequent to the date of this agreement, the Trustee shall take all steps necessary to assist Insured's son in making application for and obtaining said benefits.  The Trustee shall collect and expend such benefits for Insured's son but shall not commingle such benefits with this trust fund.

(c)   The Trustee shall also have the power and authority to use the principal of this trust in such amounts for such items as

the Trustee may deem necessary or advisable for the comfort of Insured's son which items are not otherwise provided by the said government financial assistance and benefits or by the provider of services, including but not limited to vacations, house furnishings and incidentals; provided, however, the Trustee shall not pay or reimburse any amounts to the federal government, any state or subdivision or institution thereof, or any governmental agency for any purpose, including the care, support, and maintenance of Insured's said son.

(d)   In the event that any time, and from time to time, during the term of this trust, Insured's son becomes a resident of either a regular nursing home or a skilled nursing or health related facility or a mental health institution, then, during such period of time as Insured's son is such a resident, the Trustee may make only payments of income to or on behalf of Insured's said son in accordance with subparagraph (c) above and the Trustee may not distribute any trust principal on behalf of or for the benefit of Insured's son while he is such a resident as aforesaid.

(e)   Upon the death of Insured's son, the balance of principal remaining in the trust together with any accumulated income shall be paid over and delivered to his descendants then surviving, in equal shares, per stirpes.  In the event there shall be no descendants then surviving, then the same shall be

-12-

paid over and delivered to Insured's daughter, DAYNA CLAXTON, or to Insured's daughter's descendants then surviving in equal shares, per stirpes, if Insured's daughter shall not be then surviving. In the event any grandchild of Insured entitled to a distribution hereunder shall be under the age of thirty-five (35) years, the Trustee shall continue to hold the share for such descendant ("Beneficiary") in a separate trust for the uses and purposes as provided in Paragraph 7 below. In the event any descendant of a grandchild of Insured entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be distributed as provided in Paragraph 8 below.

7. Any separate share to be held by the Trustee for a Beneficiary hereunder shall be administered and disposed of as provided herein.

(a) The Trustee shall invest and reinvest the Beneficiary's share, collect the income therefrom and pay over to or apply for the use and benefit of the Beneficiary so much of the net income therefrom, in such amounts and in such manner as the Trustee shall deem most advisable and beneficial for the Beneficiary. Any unexpended income shall be added at least annually to the principal of the trust. The Trustee shall also have full power and authority to use the principal of this trust in such amounts as the Trustee may deem necessary or advisable for the health,

-13-

support, maintenance and education, including college and post-graduate work, of the Beneficiary.  The decision of the Trustee as to how much, if any, of the income or principal of the trust shall be paid to or for the benefit of such Beneficiary shall be final.

(b)  When such Beneficiary attains the age of twenty-five (25) years, or if such Beneficiary is already twenty-five (25) years old when this trust share is established, the Trustee shall pay over all of the net income to or apply the same for the use and benefit of such Beneficiary during his or her lifetime, and shall also pay to him or her, or apply for his or her use and benefit, such of the principal of his or her trust as the Trustee shall deem necessary or advisable for his or her health, support, maintenance and education, including college and post-graduate work.  The Trustee shall also have full power and authority to use the principal of this trust for the education expenses and medical expenses of any one or more of the Beneficiary's descendants in such amounts and in such proportions as the Trustee shall deem appropriate.

(c)  In making a use of income or principal for the benefit of the Beneficiary and his or her descendants, the Trustee shall give due consideration to other income and resources available to them.  Notwithstanding anything to the contrary contained herein, no distribution of income or principal shall be made to or for

-14-

the benefit of a Beneficiary which distribution would relieve the parent of such Beneficiary of his or her legal obligation to support such Beneficiary.

(d)  Each Beneficiary for whom a separate share is held in trust hereunder shall have the absolute right to demand and receive from the Trustee the principal of his or her trust as follows:

(i)  If the Beneficiary shall graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the right to receive the principal of his or her trust as follows: one-half (1/2) thereof at any time after attaining the age of twenty-five (25) years; and all of the balance remaining therein at any time after attaining the age of thirty (30) years.

(ii)  If the Beneficiary shall not graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the right to receive the principal of his or her trust as follows: one-half (1/2) thereof at any time after attaining the age of thirty (30) years; and all of the balance remaining therein at any time after attaining the age of thirty-five (35) years.

(iii)  All such distributions shall be made no more than twenty-one (21) years after the death of all of the

descendants of Insured's parents who are alive at the date of this agreement.

(e)  Upon the death of each Beneficiary for whom a separate share is held in trust hereunder, the balance of principal remaining in his or her share shall be paid over and delivered to his or her descendants then surviving, in equal shares, per stirpes.  In the event there shall be no such descendants then surviving, the same shall be paid over and delivered to the descendants then surviving of the ancestor of the Beneficiary in nearest degree who is Insured's issue, or if none, to Insured's descendants then surviving, in equal shares, per stirpes, as the case may be.  Any share thus distributable to Insured's said son for whom a separate share is held in trust hereunder shall be added to the trust of his share and administered and distributed as a part thereof.  Any share thus distributable to a grandchild of Insured for whom a separate share is held in trust hereunder shall be added to the trust of his or her share and administered and distributed as a part thereof; provided, however, such trusts may be continued to be held separately if the Federal Generation Skipping Transfer Tax inclusion ratios for such trusts are not the same, and such separate trusts shall be administered pursuant to the same terms and provisions.

(f)(i)  In the event any grandchild of Insured entitled to a distribution of principal hereunder shall be under the age of

thirty-five (35) years, the Trustee shall continue to hold his or her share in trust pursuant to the terms and provisions of this Paragraph 7 as if such grandchild were a Beneficiary as defined herein.

(ii)  In the event any descendant of a grandchild of Insured entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph 8 below.

8.  In the event any descendant of a grandchild of Insured entitled to a distribution hereunder shall be under the age of twenty-one (21) years or shall be under any other legal disability, the Trustee may distribute such descendant's share to any guardian in whatever jurisdiction appointed, to a custodian for such individual under the New Jersey Uniform Transfers to Minors Act, or to any parent of such individual (without bond being required of such guardian, custodian or parent in respect of the receipt of such property), whose written receipt, to the extent therein specified, shall be a full acquittance and release to the Trustee for the property so distributed, with the same force and effect as if such receipt had been signed by such individual after attaining the age of twenty-one (21) years or removal of such disability, as the case may be.

9.  In the event there shall be no descendants of Insured

surviving to receive all or any part of the principal of any

trust, then upon the death of all of Insured's descendants, the

balance of principal remaining in the trust shall be paid over

and delivered to New Jersey Alliance For the Mentally Ill, North

Brunswick, New Jersey; provided, however that such entity shall

be an organization entitled to exemption from Federal income tax

under §501(c)(3) of the Code and qualify pursuant to §170(c),

§2055(a) and §2522 of the Code at the time of my death.

10.  All trusts hereunder shall be administered in

accordance with the following general provisions where

applicable.

(a)  In the event that at any time during the term of any

trust hereunder the amount of trust principal under

administration shall be of a size that is no longer economical to

administer, the trust may be terminated in the discretion of the

Trustee and, if terminated, the balance of principal remaining

and accumulated income shall be paid over and delivered (i) to

Insured's son for the trust under Paragraph 6 hereof, or (ii) to

the Beneficiary thereof for any trust under Paragraph 7 hereof.

All trusts for the same beneficiary or beneficiaries under this

agreement shall be aggregated for purposes of this subparagraph.

(b)  The Trustee shall not be required to make physical

division of the separate trust shares established hereunder

except when necessary for distribution of principal, but may, in

such Trustee's discretion, keep the trust principal in one or more consolidated funds in which the separate trust shares shall have undivided interests.

(c)  No disposition, charge, or encumbrance of the income or principal of the trusts created hereunder, or of any part thereof, by any beneficiary hereunder, by way of anticipation, shall be of any validity or legal effect, or be in anywise regarded by the Trustee.

11.  In the event that during the lifetime of the Insured, the amount of Life Insurance in force and subject to the terms of this agreement shall be less than $50,000.00, this trust may be terminated in the discretion of the then acting Trustee and, if terminated, the Trustee shall forthwith assign and set over such insurance absolutely to Insured's daughter if she is then surviving.

12.  In addition to the powers conferred by law, the Trustee shall have the following additional powers:

(a)  To retain as investments without requirement of diversification any property owned by the trust and subsequently transferred to this trust, pursuant to the terms of his Will, to change investments and to sell, acquire by exchange, invest and reinvest in any real estate and in any such stocks of any classification, bonds or other property whether or not of the same kind, without regard to the proportion such property or property of a similar character so held may bear to the entire amount held as she, in her discretion, may determine and whether or not the same be now or hereafter authorized by law for the investment of trust funds; and to invest and reinvest principal of the trust funds or any part thereof, in any common trust fund established, maintained and operated by the Trustee or any duly appointed successor trustee; to purchase or pay the premiums on

life insurance policies of any kind on the life of the Insured.

(b)  To become party to any voting trust agreement and to vote and to give proxies to vote for any securities held.

(c)  To enter upon such contracts, leases and agreements, and to make such compromises or settlements of debts, claims or controversies, as she may deem necessary or advisable, even if the term of said contract, lease or agreement will extend beyond the term of this trust.

(d)  To borrow money from others or from herself, whether to make any purchase, pay taxes, exercise options or subscription rights, pay assessments, or to accomplish any other purpose of any nature incidental to the administration of this trust or powers in trust hereunder, and to mortgage or pledge as security therefor any property held by her hereunder; and to subordinate her interest in any property to the interest of a lender; and if money is borrowed from others or from herself, to pay interest thereon.

(e)  To make interim payments in reasonable amounts on account of fiduciary commissions or attorneys' fees, or both, at such time or times as she may, in her absolute discretion, deem beneficial for and to the best interest of this trust, without prior application to or approval by any court, any statute or rule of law to the contrary notwithstanding.

(f)  To pay or make any distribution of income or principal as provided herein, in cash or in property, or partly in cash and partly in property, and to make non-pro rata payments or distributions of such cash or property, and for those purposes to use and allocate any property at date of distribution values without regard to the adjusted basis for income tax purposes of any such property so paid, distributed or allocated.

(g)  To exercise or refrain from exercising any election or option available under the Code, with or without making equitable adjustments with respect to any interests in property passing hereunder by reason of any such election or option.

(h)  To hold property in the names of nominees or so that it will pass on delivery, or in the name of the corporate fiduciary without disclosing any fiduciary capacity; and to leave property in the custody of a firm of stockbrokers and registered in the name of the stockbrokers' nominees.

(i)  To renew, assign, alter, extend, compromise, abandon or

release, with or without consideration or submit to arbitration, obligations or claims held by or asserted against her or which affect trust assets, all as she may deem advisable.

(j)   To engage accountants, appraisers and other experts and legal counsel; to employ agents, clerks and other assistants; and to remunerate and pay the expenses of such persons.  If at any time no corporate fiduciary is serving, the Trustee is authorized to employ custodians of the assets and other assistants and to engage and rely on investment counsel, and in the discretion of the Trustee, to grant discretionary investment authority to investment counsel.

(k)   To make or continue any debt or guarantee, including any debt or guarantee owed to any Trustee individually, and any pledge or mortgage securing it.

(l)   Except as provided herein, to apply any income or principal that is payable to a minor or any person who in her judgment is incapable of making proper disposition thereof, by payments on behalf of the beneficiary to anyone with whom the beneficiary resides and/or by payments in discharge of the beneficiary's bills--all without regard to other resources of the beneficiary, including the resources of a minor's parents, and without the intervention of any guardian or committee or like fiduciary, and without obligation to see to the further application thereof.

(m)   To sell for cash or on credit (at public or private sale), exchange, mortgage, lease for any period (either as landlord or tenant and including renewals of the term) and modify, extend or cancel leases, grant options, refinance mortgages on property and subordinate her interest to the interest of a lender--all regardless of statutory restrictions or the probable duration of any trust, or otherwise dispose of or deal with any real or personal property, in such manner and upon such terms and conditions as she may deem advisable; to erect, renovate or alter buildings or otherwise improve and manage buildings and property; demolish buildings; make ordinary and extraordinary repairs; grant easements and make party wall contracts; dedicate roads; subdivide; adjust boundary lines and partition; and to do everything with respect to interests in any property that any individual owner may do.

(n)   To claim expenses as either income tax deductions or estate tax deductions when an election is permitted by law, and if expenses are claimed as income tax deductions, no compensating adjustments shall thereafter be made in favor of principal,

notwithstanding any statute or rule of law.

(o)   To remove, transfer or deposit any of the personal
property forming part of the trust created hereunder to any place
in the world as she may deem advisable for the safekeeping
thereof, without bond or prior court approval.

(p)   To exercise any options, privileges or rights of any
nature which may be granted to or exercisable by the holders of
any property which forms a part of this trust or sell any
subscription or other rights or allow any such rights to expire
or lapse.

(q)   To assent to or participate in any reorganization,
readjustment, consolidation, merger, dissolution, sale or
purchase of assets, or similar proceedings, by any corporation
whose securities or obligations or rights shall be held
hereunder; to consent to any contract, mortgage or other action
by any corporation; to deposit securities or evidences of rights
or interest or obligations under agreement or plan for the
protection of holders of securities and become a party to any
such agreement or plan; and to participate in the reorganization
of any corporation and pay any assessment or other expenses.

(r)   To loan principal or interest hereof, but only upon
adequate interest and security, where appropriate.

(s)   To resign upon written notice to any successor Trustee
or Co-Trustee, as the case may be, and all adult beneficiaries
hereunder.

(t)   To establish in her discretion, separate trusts in
place of any trust created hereunder in order that the Federal
Generation Skipping Transfer Tax inclusion ratio, as defined in
§2642 of the Code for each such trust shall be either zero or
one.  The determination of the Trustee as to whether and to what
extent to make said division shall be absolute and conclusive,
regardless of the personal interest any Trustee may have in the
consequences of such division.  The Trustee shall not be liable,
responsible, or accountable, in court or otherwise, to any
beneficiary, for the consequences of the exercise, the manner of
the exercise, or failure to exercise the power granted under this
subparagraph.  Each such separate trust shall be administered in
accordance with the provisions of the original trust from which
it is established under this agreement.  The trusts created under
this subparagraph shall have the same name as the original trust,
except that the trust to which the Federal Generation Skipping
Transfer Tax exemption is allocated (the trust with inclusion

ratio zero) shall have the phrase "GST Exempt" added to its name. Such trusts shall be sometimes referred to as "related".

(u)   To the extent it is consistent with the Trustee's fiduciary obligations, the Trustee, in making discretionary distributions of net income and principal from or investment decisions in connection with any related trusts, if established, shall utilize the opportunity provided by the creation of such related trusts to eliminate, reduce or defer the Federal Generation Skipping Transfer Tax when making distributions, and to maximize the amount of trust property that eventually may be distributed to the beneficiaries hereof at the termination of all trusts created under this Agreement.

(v)   To acquire, sell, lease, convey, contract and otherwise deal with and in oil, gas and other minerals, solid, liquid and gaseous, and mineral rights, royalties and economic interests therein, and to explore for, develop, operate, remove and market such minerals and mineral interests, and in connection therewith to execute leases, division orders, pooling or unitization agreements (including agreements extending beyond the term of any trust hereunder) with respect to any mineral or royalty interest held or acquired by any trust.

(w)   To construe all the terms and provisions of this trust and to reconcile any inconsistencies that may appear.

(x)   In general, to receive, preserve, manage, administer, partition, and distribute the trust estate, and the principal and income thereof, for the benefit of the beneficiaries interested therein, as herein provided.

(y)   If at any time there shall be more than one trust under this agreement with substantially similar terms, or a trust under this agreement and a trust on substantially similar terms under an agreement with or the will of Insured or Insured's wife, the Trustee is authorized, in her absolute discretion, (1) to combine the principal of such trusts created hereunder, (2) to pay over the entire principal of such trust under this agreement to the trustee of such trust under the agreement or will of Insured or Insured's wife as an addition to the principal of the last-mentioned trust, or (3) to receive, as an addition to the principal of such trust under this agreement, the entire principal of such trust under the agreement or will of Insured or Insured's wife; provided however, no trusts shall be combined unless the Federal Generation Skipping Transfer Tax inclusion ratios, as defined in §2642 of the Code for such trusts shall be the same.

(z)  No powers herein given to the Trustee shall be construed to enable the Insured, Trustee or anyone else to purchase, exchange or otherwise deal with or dispose of principal or income of the trust for less than adequate or full consideration in money or money's worth.

(aa)  No person other than the Trustee shall have or exercise the power to vote or direct the voting of any stock or other securities of the trust, to control the investment of the trust either by directing investments or reinvestments, or by vetoing proposed investments or reinvestments, unless the Trustee has specifically granted discretionary investment authority to investment counsel.

(bb)  Notwithstanding any other provision of this agreement, if at any time any beneficiary should be serving as Trustee hereunder, such beneficiary shall not be entitled to exercise any discretionary right or power in any manner relating to distributions of income and principal to such beneficiary (including distributions to such beneficiary or others which may discharge any legal obligation of such beneficiary), but all such rights, powers and discretions shall be exercised solely and exclusively by the other Trustee then acting hereunder, whether one or more; and if no such other Trustee is then acting, such discretionary rights and powers shall not be exercised and such distribution shall not be made.  This provision shall not apply to a power to make distributions to such Trustee-beneficiary pursuant to a standard limited to the health, support, maintenance and education of such beneficiary nor to any power of withdrawal granted to a beneficiary hereunder.

13.  Anything herein to the contrary notwithstanding, if all

or any part of the assets of this trust are deemed to be part of

the Insured's taxable estate for Federal Estate Tax purposes,

then the Trustee may pay to the Executor under the Will of

Insured the amount determined herein.  The Trustee may pay to the

Executor under the Will of Insured an amount up to the amount of

the corpus of the Trust Estate or the Trust Estate and Trust

Estate GST Exempt, as the case may be, that bears the same ratio

to the total Federal Estate Tax as the amount in this trust, which is included in the taxable estate, bears to Insured's Federal gross estate reduced by all expenses, debts and liabilities under §2053 of the Code.

14. The Insured shall have the right, with the consent of the Trustee, at any time and from time to time of assigning additional life insurance policies to the Trustee and the Insured or any other person shall have the further right at any time and from time to time to assign, transfer and deliver to the Trustee securities or property during the lifetime of the Insured or such other persons, or by the Will of the Insured or such other person, which property thereupon shall become part of the Trust Estate subject in every respect to the terms, powers and conditions of this agreement.

15. The Trustee shall be entitled to compensation for services in carrying out this trust in accordance with a separate agreement, or in the absence thereof, according to the laws of the State of New Jersey for a testamentary trustee.

16.(a) The Trustee shall have full power and authority to purchase assets from the estate of the Insured as she may deem most appropriate for the purpose of assisting such Insured's estate in the payment of any death taxes on his estate or to make loans to Insured's estate on terms satisfactory to the Trustee for any purpose consistent with the orderly administration of his

estate.

(b)  Without regard to any other provision of law, a transaction shall not be prohibited and the Trustee shall not be disqualified from entering into or continuing any transaction on behalf of any trust for the reason only that another party to such transaction is: (i) a trust or estate of which the Trustee is a fiduciary, (ii) a trust or estate established by the Insured or in which any beneficiary has an interest, or (iii) any beneficiary of any trust created hereunder.  The Trustee is authorized to invest or hold all or any part of the trust estate in common with any person or entity, including the Trustee.

17.  In order to avoid the expense and delay incident to a judicial settlement of the Trustee's account after the death of the Insured, the Trustee may from time to time render to the Insured's son, Insured's daughter, the adult descendants of Insured's son and daughter and the guardian of any minor descendant of Insured's son and daughter, an account of her transactions as Trustee.  The Insured's son, Insured's daughter, the adult descendants of Insured's son and daughter and the guardian of any minor descendant of Insured's son and daughter shall have full power to settle finally any such account and on the basis of such account, to release the Trustee, individually and as Trustee from all liability, responsibility or accountability from her acts or omissions as Trustee.  Such

settlement and release by the Insured's son, Insured's daughter, the adult descendants of Insured's son and daughter and the guardian of any minor descendant of Insured's son and daughter shall be binding upon all income beneficiaries, remaindermen and other interested parties, even if then under legal disability or not as yet in being, and shall have the force and effect of a final decree, judgment or order of a court of competent jurisdiction rendered in any appropriate action or proceeding for an accounting in which jurisdiction was obtained of all necessary and proper parties. The foregoing provision, however, shall not preclude the Trustee from having the accounts judicially settled if she shall so desire.

18.(a)  In the event of the death, resignation or inability to act of Insured's daughter, DAYNA CLAXTON, as Trustee hereunder, then PEAPACK-GLADSTONE BANK is hereby named Trustee in her place and stead; provided, however, if a Corporate Trustee has been designated and is then serving as provided below, then PEAPACK-GLADSTONE BANK shall not be designated Trustee hereunder.

(b)  Each individual serving from time to time as Trustee (including each individual who may be appointed pursuant to this paragraph) may appoint any person to serve as such fiduciary's successor Trustee of any trust.  Appointments shall be by instrument in writing, signed by the party making such designation and filed with the Trustees then in office.  Any such

appointment of a successor to take effect in the future may be revoked by instrument in writing so filed by the person who made the appointment at any time before the successor qualifies, and any revoked appointment may be superseded by a new appointment. In no event shall the Insured be designated as Trustee hereunder.

(c)  The Individual Trustee, or if none, the adult beneficiaries hereof, other than Insured's son, RICHARD LAYTON, and the guardian or court appointed legal representative of Insured's son and any minor beneficiary, by a vote of a majority of them, at any time and as often as deemed advisable, (i) may designate any bank having trust powers, provided its place of business is within the State of New Jersey, as Trustee to serve together with the then serving Individual Trustee to administer any trust hereunder, or (ii) may remove the Corporate Trustee then serving and designate any bank having trust powers other than and in the place and stead of the then acting Corporate Trustee, or (iii) may designate a Corporate Trustee in place of the designated Corporate Trustee to serve hereunder in the event of the renunciation or resignation of the designated Corporate Trustee, provided its place of business is within the State of New Jersey.  Said designation shall be in writing, signed by the parties making such removal and designation, delivered to the then acting Corporate Trustee and delivered to the bank so designated.  Upon receipt of said instrument, the then acting

Corporate Trustee shall convey, assign and transfer the entire trust estate to such bank so designated. Any such designation of a Corporate Trustee to take effect in the future may be revoked by instrument in writing delivered to the then acting Corporate Trustee, if any, and such designated Corporate Trustee by the parties who made the designation at any time before the successor commences serving as Trustee. No more than one (1) Corporate Trustee shall serve at any one time.

(d) No successor Trustee shall be liable or responsible in any way for any acts or defaults of any predecessor Trustee, nor for any loss or expense from or occasioned by anything done or neglected to be done by any predecessor Trustee. Said successor Trustee shall be liable only for his own acts or defaults in respect to property actually received by him as such Trustee. Also, with the consent of the Individual Trustees and the adult beneficiaries hereunder, the Trustee may accept the account rendered and the assets and property delivered to him and shall incur no liability or responsibility to any beneficiary under this Will by reason of so doing.

(e) In case any successor or additional Trustee shall at any time be appointed, such a successor or additional Trustee shall be clothed and vested with all the rights, duties, titles and powers, whether discretionary or otherwise, and shall serve without bond, all as if originally named as Trustee hereof.

(f)  Any one Trustee serving at any time may sign checks or documents or instruments for the transfer of securities or other assets of any trust hereunder and may at any time give instructions or sign documents or instruments for the purchase or sale of securities or other assets of any trust hereunder which shall be binding on all Trustees hereunder.

(g)  If at any time any interest in property situated in any state other than New Jersey or foreign jurisdiction is subject to administration under any trust created hereunder, and if the Trustee should be unwilling or should not be qualified or otherwise able to act in such state or jurisdiction, then said Trustee may resign and refuse to serve as Trustee with respect to such property, with the other Trustees continuing to act hereunder with respect to such property, or the Trustee may appoint as Trustee to serve within such state or jurisdiction any one or more qualified individuals or a Corporate Trustee by written instrument duly executed and acknowledged, as provided above.  In like manner, the Trustee may remove such trustee so appointed and appoint successors as the need may arise in order to fill vacancies resulting from such removal or for any other reason.  Said designation shall be in writing, signed by the Trustee then serving and delivered to the trustee so designated.  Upon receipt of said instrument, the then acting Trustee shall convey, assign and transfer the entire trust estate to the

IN WITNESS WHEREOF, the said Insured and the said Trustee have hereunto set their hands and seals the day and year first above written.

Signed, Sealed and Delivered
in the presence of

_____  _____ (LS)
                             HARRY J. LAXTON,
                             Insured

_____  _____ (LS)
                             DAYNA CLAXTON,
                             Trustee

-32-

**SCHEDULE A**

Life Insurance acquired by the Trustee on the life of the

Insured, HARRY J. LAYTON, the                    Policy No.

**ACKNOWLEDGEMENT**

STATE OF NEW JERSEY, COUNTY OF MORRIS          SS:

    BE IT REMEMBERED that on Feb 18th , 1998, HARRY J.
LAYTON personally came before me and acknowledged under oath, to
my satisfaction, that this person:

    (a)   is named in and personally signed the attached
          document; and

    (b)   signed, sealed and delivered this document as his act
          and deed for the uses and purposes therein expressed.

                                             LUANNE CIARAMELLA
                                     A Notary Public of New Jersey
                               My Commission Expires Nov. 3, 2002

STATE OF NEW JERSEY, COUNTY OF MORRIS          SS:

    BE IT REMEMBERED that on Feb 18th , 1998, DAYNA
CLAXTON personally came before me and acknowledged under oath, to
my satisfaction, that this person:

    (a)   is named in and personally signed the attached
          document; and

    (b)   signed, sealed and delivered this document as her act
          and deed for the uses and purposes therein expressed.

                                         Notary
                                     LUANNE CIARAMELLA
                                   A Notary Public of New Jersey
                               My Commission Expires Nov. 3, 2002

210811

-34-

F

## THE LAYTON IRREVOCABLE TRUST

THIS AGREEMENT, made this 24th day of July, 2012,

BETWEEN:

HARRY J. LAYTON, of the Township of Scotch Plains, in the County of Union and State of New Jersey, hereinafter called the Settlor,

AND

DAYNA CLAXTON, hereinafter called the Trustee;

WITNESSETH THAT:  The Settlor, in consideration of the sum of One Dollar to the Settlor in hand paid by the Trustee receipt whereof is hereby acknowledged, and of the covenants hereinafter contained, hereby assigns, transfers and sets over to the Trustee the property specified and described in Schedule A annexed hereto, hereafter called the Trust Estate.  The receipt of said property is hereby acknowledged by the Trustee upon the following express trusts and conditions and with the powers and limitations hereafter conferred and set forth.

1.  DURING LIFETIME OF SETTLOR.  The Trustee shall invest and reinvest the Trust Estate, collect the income therefrom and pay over to or apply for the use and benefit of Settlor's daughter, DAYNA CLAXTON, so much of the net income therefrom and such of the principal thereof as the Trustee, in such Trustee's discretion, may deem necessary or advisable for the health, support, maintenance and education of Settlor's said daughter during the lifetime of Settlor's said daughter.  In the event of the death of

Settlor's daughter, DAYNA CLAXTON, prior to the date of death of Settlor, the Trustee shall continue to collect the income of this trust and shall then pay over to or apply for the use and benefit of the children of Settlor's daughter, DAYNA CLAXTON, so much of the net income therefrom and such of the principal thereof in such amounts, in such proportions and in such manner as the Trustee, in such Trustee's discretion, may deem necessary or advisable for the health, support, maintenance and education of the children of Settlor's said daughter during the lifetime of Settlor.  Any unexpended income shall be added at least annually to the principal of the trust.

2.  <u>DISTRIBUTION OF REAL PROPERTY IN TRUST ESTATE ON DEATH OF SETTLOR.</u>  Upon the death of the Settlor, if this Trust shall own real property located at 1425 Golf Street, Scotch Plains, New Jersey ("Residence"), then the Residence shall be administered and distributed as follows:

(a)  If Settlor's wife, JOANNE LAYTON, survives Settlor, then Settlor gives his said wife the right to live and reside in and on the Residence for a period of sixty (60) days from the date of Settlor's death, rent free.  The expenses incurred in connection with the maintenance and operation of the Residence during such period, including payment of real estate taxes, insurance premiums, repairs, utilities and other costs of general maintenance shall be paid by the Trust Estate.  In no event shall Settlor's wife encumber the Residence in any manner whatsoever.  If at any time

-2-

during the aforesaid period, Settlor's wife shall no longer desire to use and occupy the Residence, then she shall notify the Trustee in writing of her intention to vacate the premises.  Upon the earlier of (i) the expiration of the aforesaid sixty (60) days period, or (ii) the death of Settlor's wife or (iii) at such time as Settlor's wife shall no longer desire to reside in the Residence, the Trustee shall sell the Residence, at public or private sale, at such time and for such price and upon such terms as the Trustee may deem most advantageous for the Trust Estate, and to execute and deliver good and sufficient conveyance for the transfer thereof and that the proceeds of sale therefrom shall be added to the Trust Estate to be administered and distributed as provided in Paragraph 3 below.

(b)  If Settlor's wife, JOANNE LAYTON, shall not survive Settlor, then the Trustee shall sell the Residence, at public or private sale, at such time and for such price and upon such terms as the Trustee may deem most advantageous for the Trust Estate, and to execute and deliver good and sufficient conveyance for the transfer thereof and that the proceeds of sale therefrom shall be added to the Trust Estate to be administered and distributed as provided in Paragraph 3 below.

3.  <u>DISTRIBUTION OF BALANCE OF TRUST ESTATE ON DEATH OF SETTLOR.</u>  The balance of principal remaining in the Trust Estate shall be divided into shares for Settlor's descendants pursuant to the formula set forth below.

-3-

(a)   To the amount of principal remaining in the Trust Estate will be added the aggregate amount of the gifts made to Settlor's son and daughter, which total shall be designated the "Sum".  The Sum shall be divided by the number of Settlor's children then surviving and the number of Settlor's children who are then deceased leaving descendants then surviving, to be designated a "Portion".  Each Portion, thus constituted, for a child of Settlor then surviving or for a child of Settlor then deceased leaving descendants then surviving shall be reduced by the amount of the aggregate gifts to said child, with each Portion after such reduction, if any, to be designated "Amount".  In the event the Amount for any child shall be less than zero, then said child, or his or her descendants, shall receive no part of the balance of principal remaining in the Trust Estate, and the balance remaining herein shall be allocated to Settlor's other child then surviving and the descendants then surviving of Settlor's other child, if Settlor's other child shall be deceased.

(b)   Notwithstanding anything to the contrary contained herein, the Amount for each child of Settlor pursuant to the formula in subparagraph (a) above, shall be administered and distributed as follows:

(i) if Settlor's daughter, DAYNA CLAXTON, shall be then surviving, then the Trustee shall pay over and deliver the Amount, thus constituted, for Settlor's daughter to Settlor's daughter; provided, however, that the aforesaid Amount shall first be paid

-4-

from the estate of Settlor pursuant to Settlor's Last Will and
Testament and THE HARRY J. LAYTON TRUST dated July 21, 2005, as
from time to time amended.  In the event the estate of Settlor and
THE HARRY J. LAYTON TRUST dated July 21, as from time to time
amended, shall not fully satisfy the aforesaid devised Amount, then
a sum equal to the difference between the aforesaid devised Amount
and the amount paid by the estate of Settlor and the aforesaid
Trust against the aforesaid devised Amount shall be paid from the
assets hereunder.

(ii)  If Settlor's son, RICHARD LAYTON, shall be then
surviving, then the Amount, thus constituted, for Settlor's said
son shall be paid over and delivered to the Trustee, hereinafter
named, in trust nevertheless, ("Son's Trust"), for the uses and
purposes as set forth in Paragraph 4 below; provided, however, that
the aforesaid Amount shall first be paid from the estate of Settlor
pursuant to Settlor's Last Will and Testament and THE HARRY J.
LAYTON TRUST dated July 21, 2005, as from time to time amended.  In
the event the estate of Settlor and THE HARRY J. LAYTON TRUST dated
July 21, as from time to time amended, shall not fully satisfy the
aforesaid devised Amount, then a sum equal to the difference
between the aforesaid devised Amount and the amount paid by the
estate of Settlor and the aforesaid Trust against the aforesaid
devised Amount shall be paid from the assets hereunder.

(iii)  If either child of Settlor shall be deceased leaving
descendants then surviving, then the Trustee shall pay over and

deliver the Amount, thus constituted, for the descendants then surviving, per stirpes, of any such deceased child of Settlor, subject to the provisions of subparagraph (c) below; provided, however, that the aforesaid Amount shall first be paid from the estate of Settlor pursuant to Settlor's Last Will and Testament and THE HARRY J. LAYTON TRUST dated July 21, 2005, as from time to time amended.   In the event the estate of Settlor and THE HARRY J. LAYTON TRUST dated July 21, as from time to time amended, shall not fully satisfy the aforesaid devised Amount, then a sum equal to the difference between the aforesaid devised Amount and the amount paid by the estate of Settlor and the aforesaid Trust against the aforesaid devised Amount shall be paid from the assets hereunder.

(c)(i)   In the event any grandchild of Settlor entitled to a distribution hereunder shall be under the age of thirty (35) years, then the share for such grandchild ("Beneficiary") shall be paid over and delivered to the Trustee, hereinafter named, to be held in separate trust as provided in Paragraph 5 below.

(ii)   In the event any descendant of a grandchild of Settlor entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph 6 below.

4.   **SON'S TRUST.**   The Trustee, hereinafter named, shall hold the Son's Trust, thus constituted, for the uses and purposes as hereinafter set forth.   The Trustee shall hold the same for the benefit of Settlor's son, RICHARD LAYTON, which trust is to be

-6-

administered pursuant to this Paragraph 4 as a separate trust fund for the benefit of Settlor's son, said trust being named and hereinafter sometimes referred to as "SON'S TRUST", and the Trustee shall manage, administer, invest and reinvest the principal of such trust, shall collect and receive the income thereof and shall apply, pay over and distribute the income and principal thereof as hereinafter provided:

(a)   Subject to subparagraphs (b) through (f) below, the Trustee may at any time or times that the Trustee deems it advisable, pay or apply to or for the benefit of Settlor's son, so much, all or none of the net income therefrom and the principal of the SON'S TRUST, (including the whole thereof) for the health, support, maintenance and education of Settlor's son, as the Trustee, in such Trustee's sole, absolute, uncontrolled and nonreviewable discretion, shall deem to be in the best interest of Settlor's son, consistent with Settlor's intentions for the SON'S TRUST as described in this Paragraph 4.  In exercising or declining to exercise such discretion with respect to income or principal, or both, at such time or times as Settlor's son shall be a resident of a skilled nursing or health related facility or a community residence or group home for the disabled, or such other time or times as Settlor's son shall require extensive medical or custodial care or financial support for his living expenses, the Trustee shall consider any other resources, including governmental benefits and entitlements or charitable or private benefits, owned by or

available to Settlor's son.  In no event shall the Trustee be
obligated to pay or apply the income or principal of the SON'S
TRUST for the benefit of a government agency or department, other
than for the payment of any income taxes which, from time to time,
may be owed by Settlor's son, or by the SON'S TRUST.  Any net
income not so paid or applied during any accounting year of the
trust shall be accumulated and, at the end of such year, shall be
added to, and in all respects be treated as principal.

(b)   The Trustee, in such Trustee's sole, absolute,
uncontrolled and nonreviewable discretion, shall also have full
power and authority to use the income and principal of the trust
for the purpose of retaining the services of a professional care
manager to ensure the proper supervision of Settlor's son's health,
comfort and welfare.

(c)   Settlor hereby declares his intention that the assets of
the SON'S TRUST be preserved to the maximum extent possible to
ensure the lifelong supplemental care and supplemental support of
Settlor's son, when appropriate, and to provide Settlor's son a
source from which his needs may be met to the extent that they are
not adequately provided for, in the sole, absolute, uncontrolled
and nonreviewable opinion of the Trustee, by governmental,
charitable or private agencies or organizations.  Further, it is
Settlor's intention that the Trustee pay or apply the net income
and principal, or both, of the SON'S TRUST to such extent and in
such amounts as is required, in the Trustee's sole, absolute,

uncontrolled and nonreviewable discretion, to assure that Settlor's son be maintained, to the greatest extent possible, in an independent environment.  By way of example, the Trustee, in such Trustee's sole, absolute, uncontrolled and nonreviewable discretion, may pay or apply so much of the income or principal, or both, of the SON'S TRUST as may be required to provide for or supplement home care, housekeeping and such other services, home improvements, equipment and vehicles to assure that Settlor's son be maintained in the least restrictive environment, whether at home or in a group home or community residence for the disabled.

(d)  It is Settlor's desire to preserve the assets of the SON'S TRUST to the maximum extent possible to ensure the lifelong supplemental care and supplemental support of Settlor's son, and, upon the death of Settlor's son, to ensure that the maximum amount of the assets of the SON'S TRUST is available for the benefit of the trust remainderpersons.  If at the time of the creation of the SON'S TRUST it was known that the interest of Settlor's son would disqualify him from receiving any governmental, charitable or private benefits or would provide a fund against which any such governmental, charitable or private benefits provided to or for his benefit could be recovered, Settlor would not have created the SON'S TRUST and would have disposed of the assets directly to the remainderpersons of the SON'S TRUST.  Moreover, Settlor believes that the human condition of the entire disabled population will benefit from the SON'S TRUST by providing a source from which the

standard of living of such a disabled person may be enhanced and Settlor's son's happiness guaranteed.  Widespread use of similar trusts has the potential of creating a substantial resource benefiting all disabled persons.  Further, enhancing the lifestyle or standard of living of one person elevates the conditions of those around that person.  Accordingly, the SON'S TRUST does permit payment, when the service involved is deemed inadequate or not appropriate, in the sole, absolute, uncontrolled and nonreviewable opinion of the Trustee, of expenses that might otherwise be assumed by a governmental or charitable agency, so long as (i) such payment would not be deemed "in-kind" income under the rules and regulations governing any charitable or private agency or public assistance program which, but for such "in-kind" income, would otherwise provide benefits to or for the benefit of Settlor's son, or (ii) if such payment would be deemed "in-kind" income by any such charitable or private agency or public assistance program, that the benefit to Settlor's son of receiving such payment would outweigh the detriment to him should such payment result in a loss or reduction of the governmental, charitable or private benefit to which Settlor's son would otherwise have been entitled.  In addition, the Trustee has the power, in such Trustee's sole, absolute, uncontrolled and nonreviewable discretion, to make gifts or donations of items of equipment, furniture, appliances, recreational supplies or other personalty, including food stuffs and the like, to such programs as Settlor's son may attend or to

-10-

any such skilled nursing or health related facility or community residence or group home for the disabled where Settlor's son may reside, without regard to the fact that others attending such program, or residing in such facility, community residence or group home for the disabled also will enjoy an indirect benefit. Accordingly, Settlor believes the SON'S TRUST to be in the public interest, despite the sole, absolute, uncontrolled and nonreviewable discretion of the Trustee to deny any principal or income distribution.  The alternative, disposal of the assets directly to the trust remainderpersons, would neither provide the quantum of security for Settlor's son nor the potential benefit to the entire disabled population that can be derived from the SON'S TRUST.

(e)  To accomplish the foregoing goal, Settlor intends that in the event Settlor's son requires extensive medical or custodial care or financial support for living expenses, existing or future governmental programs, charitable or private benefits shall be the primary source of such medical care and support so that the assets of the SON'S TRUST can be preserved to the maximum extent possible for the lifelong supplemental care and supplemental support of Settlor's son and not be consumed by the extensive costs of medical or custodial care or treatment or the costs of Settlor's son's support.

(f)  Notwithstanding anything to the contrary contained in the other provisions of the SON'S TRUST, in the event that the

-11-

Trustee's discretionary right to invade trust income or principal, or both, for Settlor's son has the effect of rendering Settlor's son ineligible for governmental, charitable or private benefits, the Trustee is authorized to terminate such trust, and the undistributed income and principal of the SON'S TRUST shall be paid over and distributed as if Settlor's son was deceased.  In determining whether the existence of the SON'S TRUST has the effect of rendering Settlor's son ineligible for governmental, charitable or private benefits, the Trustee is hereby granted full and complete discretion to initiate either administrative or judicial proceedings, or both, for the purpose of determining eligibility, and all costs relating thereto, including reasonable attorney fees, shall be a proper charge to the SON'S TRUST.

(g)  Upon the earlier of (i) the termination of the SON'S TRUST pursuant to subparagraph (f) above, or (ii) the death of Settlor's son, the balance of principal remaining in the trust, together with any accumulated income, shall be paid over and delivered to Settlor's son's descendants then surviving, per stirpes, subject to the provisions of subparagraph (h) below.  In the event there shall be no such descendants then surviving, the same shall be paid over and delivered to Settlor's daughter, DAYNA CLAXTON, or to Settlor's daughter's descendants then surviving, per stirpes, if Settlor's daughter shall not be then surviving, subject to the provisions of subparagraph (h) below.

(h)(1)  In the event any grandchild of Settlor entitled to a

-12-

distribution hereunder shall be under the age of thirty-five (35) years, then the share for such grandchild ("Beneficiary") shall be paid over and delivered to the Trustee, hereinafter named, to be held in a separate trust as provided in Paragraph 5 below.

(2)  In the event any descendant of a grandchild of Settlor entitled to a distribution hereunder shall be under the age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph 6 below.

5.  **TRUST FOR BENEFICIARY.**  Any separate share to be held by the Trustee for a Beneficiary hereunder shall be administered and disposed of as provided herein.

(a)  If the Beneficiary is under the age of twenty-five (25) years, the Trustee shall invest and reinvest the Beneficiary's share, collect the income therefrom and pay over to or apply for the use and benefit of the Beneficiary so much of the net income therefrom, in such amounts and in such manner as the Trustee shall deem most advisable and beneficial for the Beneficiary.  Any unexpended income shall be added at least annually to the principal of the trust.  The Trustee shall also have full power and authority to use the principal of this trust in such amounts as the Trustee may deem necessary or advisable for the health, support, maintenance and education, including college and post-graduate work, of the Beneficiary.  The decision of the Trustee as to how much, if any, of the income or principal of the trust shall be paid to or for the benefit of such Beneficiary shall be final.

-13-

So long as the Beneficiary is under the age of twenty-one (21) years, payments of principal and income may be made to any guardian in whatever jurisdiction appointed or to any parent of any minor Beneficiary without any bond being required.  The receipt executed by such guardian or parent shall be a full release to the Trustee for the payments so made.

(b)  Except as provided in Paragraph 8 (d) below, when such Beneficiary attains the age of twenty-five (25) years, or if such Beneficiary is already twenty-five (25) years old when this trust share is established, the Trustee shall pay over all of the net income to or apply the same for the use and benefit of such Beneficiary during his or her lifetime, and shall also pay to him or her, or apply for his or her use and benefit, such of the principal of his or her trust as the Trustee shall deem necessary or advisable for his or her health, support, maintenance and education, including college and post-graduate work.  The Trustee shall also have full power and authority to use the principal of this trust for the education expenses and medical expenses of any one or more of the Beneficiary's descendants in such amounts and in such proportions as the Trustee shall deem appropriate.

(c)  In making a use of income or principal for the benefit of the Beneficiary and his or her descendants, the Trustee shall give due consideration to other income and resources available to them.  Notwithstanding anything to the contrary contained herein, no distribution of income or principal shall be made to or for the

-14-

benefit of a Beneficiary or his or her descendants which distribution would relieve the parent of such Beneficiary or his or her descendants of his or her legal obligation to support such Beneficiary or his or her descendants.

(d)   Except as provided in Paragraph 8 (d) below, each Beneficiary for whom a separate share is held in trust hereunder shall have the absolute right to demand and receive from the Trustee the principal of his or her trust as follows:

(i)   If the Beneficiary shall graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the right to receive the principal of his or her trust as follows: one-half (1/2) thereof at any time after attaining the age of twenty-five (25) years; and all of the balance remaining therein at any time after attaining the age of thirty (30) years.

(ii)   If the Beneficiary shall not graduate from a four-year college or university by the time the Beneficiary attains the age of twenty-five (25) years, then the Beneficiary shall have the right to receive the principal of his or her trust as follows: one-half (1/2) thereof at any time after attaining the age of thirty (30) years; and all of the balance remaining therein at any time after attaining the age of thirty-five (35) years.

(iii)  All such distributions shall be made no later than the Termination Date as defined herein.

(e)   Upon the death of each Beneficiary for whom a separate

-15-

share is held in trust hereunder, the balance of principal remaining in the trust for which the inclusion ratio for Federal Generation Skipping Transfer Tax purposes is other than zero, if any, shall be paid over and delivered to such of the creditors of the estate of such Beneficiary as he or she shall appoint in and by his or her Last Will and Testament, making specific reference to this power.  To the extent such Beneficiary shall fail to exercise effectively the foregoing general power of appointment, if any, then the balance of the aforesaid trust, and the balance of the trust share for which the inclusion ratio for Federal Generation Skipping Transfer Tax purposes is zero, if any, shall be paid over and delivered to his or her descendants then surviving, per stirpes.  In the event there shall be no such descendants then surviving, the same shall be paid over and delivered to the descendants then surviving of the child of Settlor who is an ancestor of the Beneficiary, per stirpes, or if none, then to Settlor's descendants then surviving, per stirpes, as the case may be.  Any share thus distributable to a grandchild of Settlor for whom a separate share is held in trust hereunder shall be added to the trust of his or her share and administered and distributed as a part thereof; provided, however, such trusts may be continued to be held separately if the Federal Generation Skipping Transfer Tax inclusion ratios for such trusts are not the same, and such separate trusts shall be administered pursuant to the same terms and provisions.

(f)(i)   In the event Settlor's son, RICHARD LAYTON, shall be entitled to a distribution under subparagraph (e) above, then the share for Settlor's said son shall be paid over and delivered to the Trustee, hereinafter named, to be held in a separate trust as provided in Paragraph 4 above.

(ii)   In the event any grandchild of Settlor entitled to a distribution under subparagraph (e) above shall be under the age of thirty-five (35) years, the Trustee shall continue to hold his or her share in a separate trust pursuant to the terms and provisions of this Paragraph 5 as if such grandchild were a Beneficiary as defined herein.

(iii)   In the event any descendant of a grandchild of Settlor entitled to a distribution under subparagraph (e) above shall be under the age of twenty-one (21) years, then the share for such descendant shall be administered and distributed as provided in Paragraph 6 below.

6.   <u>DISTRIBUTION TO DESCENDANTS OF A GRANDCHILD OF SETTLOR.</u>

In the event any descendant of a grandchild of Settlor entitled to a distribution hereunder shall be under the age of twenty-one (21) years or shall be under any other legal disability, the Trustee may distribute such descendant's share to any guardian in whatever jurisdiction appointed, to a custodian for such descendant under the New Jersey Uniform Transfers to Minors Act, or to any parent of such descendant (without bond being required of such guardian, custodian or parent in respect of

-17-

the receipt of such property), whose written receipt, to the extent therein specified, shall be a full acquittance and release to the Trustee for the property so distributed, with the same force and effect as if such receipt had been signed by such descendant after attaining the age of twenty-one (21) years or removal of such disability, as the case may be.

7. **ULTIMATE BENEFICIARY.** In the event that at any time none of Settlor's descendants shall be surviving to take the balance remaining in any trust hereunder, or none of Settlor's descendants shall survive Settlor, then the balance remaining in said trust or the Trust Estate, as the case may be, shall be paid over and delivered to NEW JERSEY ALLIANCE FOR THE MENTALLY ILL, North Brunswick, New Jersey; provided, that such entity shall be an organization exempt from Federal Income Tax under §503(c)(3) of the Internal Revenue Code, or any successor thereto, and the Regulations thereunder (the "Code"), and qualify pursuant to §2055 of the Code at the time of distribution. In the event the aforesaid organization shall not be then existing or in the event the aforesaid organization shall not be exempt from Federal Income Tax under §503(c)(3) of the Code and qualify pursuant to §2055 of the Code at the time of distribution, then the same shall be paid over and delivered to such organization or organizations which have the same goals and purposes in assisting the mentally ill as the originally named organization, which are exempt from Federal Income Tax under §503(c)(3) of the Code and qualify pursuant to §2055 of

-18-

the Code at the time of distribution, as the Trustee, in such Trustee's discretion, shall select, and in such amounts, in such proportions and in such manner as the Trustee shall deem appropriate.

8.   **GENERAL PROVISIONS.**   All trusts hereunder shall be administered in accordance with the following general provisions where applicable:

(a)   In the event that at any time during the term of any trust hereunder the amount of trust principal under administration shall be of a size that is no longer economical to administer, such trust may be terminated in the discretion of the Trustee, other than a beneficiary of such trust, and, if terminated, the balance of principal remaining and accumulated income shall be paid over to the Beneficiary thereof for any trust under Paragraph 5 hereof.   All trusts for the same beneficiary or beneficiaries under this agreement shall be aggregated for purposes of this subparagraph.

(b)   The Trustee shall not be required to make physical division of the separate trust shares established hereunder except when necessary for distribution of principal, but may, in such Trustee's discretion, keep the trust principal in one or more consolidated funds in which the separate trust shares shall have undivided interests.

(c)   No disposition, charge, or encumbrance of the income or principal of the trusts created hereunder, or of any part thereof,

-19-

by any beneficiary hereunder, by way of anticipation, shall be of
any validity or legal effect, or be in anywise regarded by the
Trustee.

(d)   Notwithstanding any other provision of this agreement,
the Trustee, other than a Beneficiary hereunder, may postpone (but
not beyond the Termination Date defined below) any distribution of
income or principal otherwise required to be made to any
beneficiary of any trust, whether during its term or upon its
termination, and postpone to that extent any trust termination that
would otherwise be required, if the said Trustee determines that
there is a compelling reason to do so (such as a serious illness or
disability of the beneficiary, a pending divorce, potential or
pending creditor claims, potential tax disadvantage to the
beneficiary or his or her family, alcohol or substance abuse, or
similar substantial cause).  The said Trustee may continue the
postponement in whole or in part, for the entire lifetime of the
beneficiary.  While the postponement continues, the provisions
previously applicable to the trust shall continue to apply except
that the beneficiary shall receive distributions from such
principal, and from the income therefrom, only in such amounts and
at such time or times as the said Trustee deems advisable and
beneficial.

(e)   The term "Termination Date" shall mean the date twenty-
one (21) years after the death of the last survivor of such of the
descendants of Settlor's parents as are in being at the date of

-20-

Settlor's death.

(f)   Notwithstanding anything herein to the contrary, the Trustee shall not have the power to adjust between income and principal as provided in N.J.S.A. 3B:19B-4 et seq., and the income hereof, as referenced in any paragraph hereof with respect to any trust hereunder, shall be considered only the traditional fiduciary accounting income, without regard to any adjustment between income and principal.

9.   **ACCRUED INCOME.**   The Trustee shall treat as income all rents, interest, and income accrued, and dividends declared but unpaid prior to the within transfer or any subsequent transfer or delivery of securities or other property by the Settlor to the Trustee, except that dividends which have been declared on any stocks so transferred or delivered to the Trustee and which are payable to stockholders of record as of a date prior to such transfer or delivery to the Trustee shall belong to the Settlor.

10.   **POWERS OF TRUSTEE.**   In addition to the powers conferred by law, the Trustee shall have the following additional powers:

(a)   To retain any and all securities and property transferred to the Trustee hereunder without requirement of diversification and to change investments and sell, acquire by exchange, invest and reinvest in any such stocks of any classification, bonds or other property whether or not of the same kind, without regard to the proportion such property or property of a similar character so held may bear to the entire amount held as the Trustee, in the discretion of the Trustee, may determine and whether or not the same be now or hereafter authorized by law for the investment of trust funds; and to invest and reinvest principal of the trust funds or any part thereof, in any common trust fund established, maintained and operated by the Trustee or any duly appointed successor Trustee.

-21-

(b)   To become party to any voting trust agreement and to vote and to give proxies to vote for any securities held, and to cast any of such votes for the Trustee.

(c)   To make and carry out any contracts, leases and agreements relating to any property held by the Trustee and to make such compromises or settlements of debts, claims or controversies as the Trustee may deem necessary or advisable, even if the term of said contract, lease or agreement will extend beyond the term of administration of the trust hereunder.

(d)   To borrow money from others or from the Trustee, whether to make any purchase, pay taxes, exercise options or subscription rights, pay assessments, or to accomplish any other purpose of any nature incidental to the administration of any trust or powers in trust hereunder, and to mortgage or pledge as security therefor any property held by the Trustee hereunder; and to subordinate the interest of the Trustee in any property to the interest of a lender; and if money is borrowed from others or from the Trustee, to pay interest thereon.

(e)   To make interim payments in reasonable amounts on account of fiduciary commissions or attorneys' fees, or both, at such time or times as the Trustee may, in the absolute discretion of the Trustee, deem beneficial for and in the best interest of any trust hereunder, without prior application to or approval by any court, any statute or rule of law to the contrary notwithstanding.

(f)   To pay or make any distribution of income or principal as provided herein, in cash or in property, or partly in cash and partly in property, and to make non-pro rata payments or distributions of such cash or property, and for those purposes to use and allocate any property, at date of distribution values without regard to the adjusted basis for income tax purposes of any such property so paid, distributed or allocated.

(g)   To exercise or refrain from exercising any election, allocation of tax attributes or option available under the Internal Revenue Code, any successor thereto and the Regulations thereunder (the "Code"), with or without making equitable adjustments with respect to any interests in property passing hereunder by reason of any such election or option. The determination of the fiduciary as to whether and to what extent to make said election, allocation or option shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such election, allocation or option.   The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of

-22-

the exercise, or failure to exercise the power granted under this subparagraph.

(h)   To claim administration expenses as either income tax deductions or estate tax deductions, or pay such expenses from income or corpus, as the fiduciary shall elect, when any such election is permitted by law, and if expenses are claimed as income tax deductions, no compensating adjustments shall thereafter be made in favor of principal, notwithstanding any statute or rule of law; and to allocate administration expenses which are incurred with respect to assets included in the charitable share between income and principal, in the sole discretion of the fiduciary, as permitted under §2055 of the Code.

(i)   To allocate, in the sole and absolute discretion of the fiduciary, any exemption from the Federal Generation Skipping Transfer Tax to any property with respect to which the Settlor is the transferor as defined in §2652 of the Code for the purposes of the Federal Generation Skipping Transfer Tax and to exclude any such property from such allocation. The determination of the fiduciary as to whether and to what extent to make said allocation shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such allocation.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(j)   To hold property in the names of nominees or so that it will pass on delivery, or in the name of a corporate fiduciary without disclosing any fiduciary capacity; and to leave property in the custody of a firm of stockbrokers and registered in the name of the stockbrokers' nominees.

(k)   To renew, assign, alter, extend, compromise, abandon or release, with or without consideration or submit to arbitration, obligations or claims held by or asserted against the Trustee, or which affect trust assets, all as the Trustee may deem advisable.

(l)   To engage accountants, appraisers and other experts and legal counsel; to employ agents, clerks and other assistants; and to remunerate and pay the expenses of such persons. The Trustee is authorized to employ custodians of the assets and other assistants and to engage and rely on investment counsel, and in the discretion of the Trustee, to grant discretionary investment authority to investment counsel.

(m)   To make or continue any debt or guarantee, including any debt or guarantee owed to any Trustee individually, and any pledge

-23-

or mortgage securing it.

(n)   Except as provided herein, to apply any income or principal that is payable to a minor or any person who in the judgment of the Trustee is incapable of making proper disposition thereof, by payments on behalf of the beneficiary to anyone with whom the beneficiary resides and/or by payments in discharge of the beneficiary's bills, all without the intervention of any guardian or committee or like fiduciary, and without obligation to see to the further application thereof.

(o)   To sell for cash or on credit (at public or private sale), exchange, mortgage, lease for any period (either as landlord or tenant and including renewals of the term) and modify, extend or cancel leases, grant options, refinance mortgages on property and subordinate the interest of the Trustee to the interest of a lender, all regardless of statutory restrictions or the probable duration of any trust, or otherwise dispose of or deal with any real or personal property, in such manner and upon such terms and conditions as the Trustee may deem advisable; to erect, renovate or alter buildings or otherwise improve and manage buildings and property; demolish buildings; make ordinary and extraordinary repairs; grant easements and make party wall contracts; dedicate roads; subdivide; adjust boundary lines and partition; and to do everything with respect to interests in any property that any individual owner may do.

(p)   To remove, transfer or deposit any of the personal property forming part of any trust hereunder to any place in the world as the Trustee may deem advisable for the safekeeping thereof, without bond or prior court approval.

(q)   To exercise any options, privileges or rights of any nature which may be granted to or exercisable by the holders of any property which forms a part of any trust hereunder, or to purchase or sell any options, puts, calls, subscription or other rights or allow any such rights to expire or lapse.

(r)   To assent to or participate in any reorganization, readjustment, consolidation, merger, dissolution, sale or purchase of assets, or similar proceedings, by any corporation whose securities or obligations or rights shall be held hereunder; to consent to any contract, mortgage or other action by any corporation; to deposit securities or evidences of rights or interests or obligations under any agreement or plan for the protection of holders of securities and become a party to any such agreement or plan; and to participate in the reorganization of any corporation and pay any assessment or other expenses.

(s)  To loan principal or interest hereof, but only upon adequate interest and security, where appropriate.

(t)  To resign upon written notice to any Co-Trustee or successor Trustee, as the case may be, and all adult beneficiaries hereunder.

(u)  To establish, in the sole and absolute discretion of the fiduciary, separate trusts in place of any trust created hereunder in order that the Federal Generation Skipping Transfer Tax inclusion ratio, as defined in §2642 of the Code for each such trust shall be either zero or one.  The determination of the fiduciary as to whether and to what extent to make said division shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such division.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph. Each such separate trust shall be administered in accordance with the provisions of the original trust from which it is established under this agreement.  The trusts created under this subparagraph shall have the same name as the original trust, except that the trust to which the Federal Generation Skipping Transfer Tax exemption is allocated (the trust with inclusion ratio zero) shall have the phrase "GST exempt" added to its name.  Such trusts shall sometimes be referred to as "related".

(v)  To the extent it is consistent with the Trustee's fiduciary obligations, the Trustee, in making discretionary distributions of net income and principal from or investment decisions in connection with any related trusts, if established, shall utilize the opportunities provided by the creation of such related trusts to eliminate, reduce or defer the Federal Generation Skipping Transfer Tax when making distributions, and to maximize the amount of trust property that eventually may be distributed to the beneficiaries hereof at the termination of all trusts created under this trust agreement.

(w)  To acquire, sell, lease, convey, contract and otherwise deal with and in oil, gas and other minerals, solid, liquid and gaseous, and mineral rights, royalties and economic interests therein, and to explore for, develop, operate, remove and market such minerals and mineral interests, and in connection therewith to execute leases, division orders, pooling or unitization agreements (including agreements extending beyond the term of any trust hereunder) with respect to any mineral or royalty interest held or acquired by any trust hereunder.

(x)   To construe all the terms and provisions of all trusts hereunder and to reconcile any inconsistencies that may appear.

(y)   In general, to receive, preserve, manage, administer, partition and distribute the trust estate, and the principal and income thereof, for the benefit of the beneficiaries interested therein, as herein provided.

(z)   Notwithstanding the provisions of N.J.S.A. 3B:11-4.1 and any successor or similar provision of state law, and notwithstanding any other provision of this trust agreement, if at any time any beneficiary or any person who has a legal obligation to support a beneficiary should be serving as Trustee hereunder, such beneficiary or person shall be not be entitled to exercise any discretionary right or power in any manner relating to distributions of income and principal to such beneficiary (including distributions to such beneficiary or others which may discharge any legal obligation of such beneficiary), but all such rights, powers and discretions shall be exercised solely and exclusively by the other Trustee then acting hereunder, whether one or more; and if no such other Trustee is then acting, such discretionary rights and powers shall not be exercised and such distribution shall not be made; provided however, this provision shall not apply to a power to make distributions to such Trustee-beneficiary pursuant to a standard limited to the health, support, maintenance and education of such beneficiary nor to any power of withdrawal granted to a beneficiary hereunder.

(aa)   Without regard to any other provision of law, a transaction shall not be prohibited and a Trustee shall not be disqualified from entering into or continuing any transaction on behalf of any trust hereunder for the reason only that another party to such transaction is: (i) a trust or estate of which a Trustee is a fiduciary, (ii) a trust or estate established by the Settlor or in which any beneficiary has an interest, or (iii) any beneficiary of any trust created hereunder.  The Trustee is authorized to invest or hold all or any part of the trust estate in common with any person or entity, including the Trustee.

(bb)   To change the name or situs of any trust hereunder at any time.

(cc)   Except as otherwise provided herein, to retain as an asset of any trust hereunder any real property, or interest therein, or other personal use property for the benefit of any beneficiary hereunder, which Settlor or this Trust may own at any time, even though such asset is not income producing.

(dd)   To establish another trust in which any trust hereunder

is the settlor and which new trust shall have terms substantially similar to those of the trust serving as settlor; and to transfer assets of the trust serving as settlor of such new trust to such new trust to be administered and distributed therewith.

(ee)  The Settlor may designate a trust hereunder as the beneficiary of certain individual retirement accounts or qualified employee benefit plan funds or similar items ("Benefits") which Settlor maintains.  The fiduciary shall receive such Benefits from the custodian of each said plan pursuant to the respective beneficiary designations then in effect and may make any election regarding such distributions as the fiduciary deems most beneficial for the beneficiaries hereunder. The portion of each such payment received by the fiduciary attributable to income earned in the said plan in the year of the distribution shall be allocated to income hereunder and the balance of each such payment shall be allocated to principal hereunder, even though the entire such payment may be subject to federal income tax.

(ff)  To establish, in the sole and absolute discretion of the fiduciary, separate trusts in place of any single trust created hereunder as the fiduciary deems advisable and beneficial for any trust hereunder and the beneficiaries hereof, when taking into consideration the estate, inheritance, income, gift and other tax consequences thereof as well as non-tax considerations. The determination of the fiduciary as to whether and to what extent to make said division shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such division.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph. Each such separate trust shall be administered in accordance with the provisions of the original trust from which it is established under this agreement.  The fiduciary may name each trust as the fiduciary deems appropriate.

(gg)  The fiduciary shall have the right to disclaim, release or renounce, at any time, any one or more of the powers or options provided herein with respect to any trust hereunder, including but not limited to those powers relating to the management and investment thereof and the distribution of income and principal therefrom.

11.  **TERM OF POWERS.**  All powers herein granted to the Trustee shall apply to the property held hereunder until the actual distribution thereof.

12.  **ADDITIONS TO TRUST.**  The Settlor shall have the right (with the consent of the Trustee) at any time, and from time to time to assign, transfer, deliver or deposit with the Trustee additional securities or property which thereupon shall become a part of the Trust Estate, subject in every respect to the terms, powers and conditions of this agreement.  The Settlor shall also have the right to transfer assets to this trust by the Settlor's Will, subject in every respect to the terms, powers and conditions of this agreement.

13.  **COMPENSATION OF TRUSTEE.**  The Trustee shall be entitled to compensation for the Trustee's services in carrying out this trust in accordance with a separate agreement, or in the absence thereof, pursuant to the statutes of the State of New Jersey for a testamentary Trustee.

14.  **ACCOUNTING BY TRUSTEE.**  To avoid the expense and delay incident to a judicial settlement of the Trustee's accounts, the Trustee may from time to time render to the adult beneficiaries hereof and guardian of any beneficiary an account of the Trustee's transactions as Trustee for the trusts of their separate shares. The adult beneficiaries hereof and guardian of any beneficiary shall have full power to settle finally any such account and on the basis of such account to release the Trustee, individually and as Trustee, from all liability, responsibility or accountability from the Trustee's acts or omissions as Trustee.  Such settlement and release by the adult beneficiaries hereof and guardian of any

-28-

beneficiary shall be binding upon all income beneficiaries, remaindermen and other interested parties, even if then under legal disability, or not as yet in being, and shall have the force and effect of a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for an accounting in which jurisdiction was obtained of all necessary and proper parties.  The foregoing provision, however, shall not preclude the Trustee from having the Trustee's accounts judicially settled if the Trustee shall so desire.

15. **SUCCESSOR AND SUBSTITUTE TRUSTEE.** (a)  During the lifetime of Settlor, in the event of the death, resignation, or inability to act of Settlor's daughter, DAYNA CLAXTON, as Trustee hereunder, then PEAPACK-GLADSTONE BANK is hereby named Trustee hereunder in her place and stead; provided, however, if a Corporate Trustee has been designated and is then serving pursuant as provided herein, then PEAPACK-GLADSTONE BANK shall not be designated Trustee hereunder.  In the event of the resignation, declination or inability to act of PEAPACK-GLADSTONE BANK as Trustee hereunder, then Settlor's daughter's husband, DAVID CLAXTON, is hereby named Trustee hereunder in its place and stead.

(b)  Upon the death of Settlor, Settlor's daughter, DAYNA CLAXTON, is hereby designated Trustee of the trust established under Paragraph 4 hereof.  In the event of the death, resignation, or inability to act of Settlor's daughter as Trustee, then PEAPACK-GLADSTONE BANK is hereby named Trustee of the aforesaid trust in

-29-

her place and stead; provided, however, if a Corporate Trustee has been designated and is then serving pursuant as provided herein, then PEAPACK-GLADSTONE BANK shall not be designated Trustee of the aforesaid trust.  In the event of the resignation, declination or inability to act of PEAPACK-GLADSTONE BANK as Trustee, then Settlor's daughter's husband, DAVID CLAXTON, is hereby named Trustee of the aforesaid trust in its place and stead.

(c)   Upon the death of Settlor, PEAPACK-GLADSTONE BANK is hereby named Trustee of the trusts established under Paragraph 5 hereof; provided, however, if a Corporate Trustee has been designated and is then serving pursuant as provided herein, then PEAPACK-GLADSTONE BANK shall not be designated Trustee of the aforesaid trusts.  In the event of the resignation, declination or inability to act of PEAPACK-GLADSTONE BANK as Trustee, then Settlor's daughter's husband, DAVID CLAXTON, is hereby named Trustee of the aforesaid trusts in its place and stead.

(d)   Each individual serving from time to time as Trustee (including each individual who may be appointed pursuant to this paragraph) may appoint any person or any bank having trust powers, provided its place of business is within the State of New Jersey, to serve as such fiduciary's successor Trustee of any trust. Appointments shall be by instrument in writing, signed by the party making such designation and filed with the Trustee then in office. Any such appointment of a successor to take effect in the future may be revoked by instrument in writing so filed by the person who

-30-

made the appointment at any time before the successor qualifies, and any revoked appointment may be superseded by a new appointment.

(e)   The Individual Trustee, or if none, the adult beneficiaries hereof and guardian of any beneficiary, by a vote of a majority of them, at any time and as often as deemed advisable, (i) may designate any person or any bank having trust powers, provided its place of business is within the State of New Jersey, as Trustee to serve together with the then serving Individual Trustee to administer any trust hereunder, or (ii) may remove the Corporate Trustee then serving and designate any bank having trust powers other than and in the place and stead of the then acting Corporate Trustee, provided its place of business is within the State of New Jersey, or (iii) may change the designation of the Corporate Trustee made by Settlor herein, provided its place of business is within the State of New Jersey, or (iv) may designate a Corporate Trustee in place of the designated Corporate Trustee to serve hereunder in the event of the renunciation or resignation of the designated Corporate Trustee, provided its place of business is within the State of New Jersey.  Said removal and designation shall be in writing, signed by the parties making such removal and designation, delivered to the then acting Corporate Trustee and delivered to the bank so designated.  Upon receipt of said instrument, the then acting Corporate Trustee shall convey, assign and transfer the entire trust estate to such bank so designated. Any such designation of a Corporate Trustee to take effect in the

-31-

future may be revoked by instrument in writing delivered to the then acting Corporate Trustee, if any, and such designated Corporate Trustee by the parties who made the designation at any time before the successor commences serving as Trustee.  No more than one (1) Corporate Trustee shall serve at any one time.

(f)  No successor Trustee shall be liable or responsible in any way for any acts or defaults of any predecessor Trustee, nor for any loss or expense from or occasioned by anything done or neglected to be done by any predecessor Trustee.  Said successor Trustee shall be liable only for his own acts or defaults in respect to property actually received by him as such Trustee. Also, with the consent of the Individual Trustees and the adult beneficiaries hereunder, the Trustee may accept the account rendered and the assets and property delivered to him and shall incur no liability or responsibility to any beneficiary under this agreement by reason of so doing.

(g)  In case an Individual Trustee designates a successor or additional Trustee as provided above, the appointing Individual Trustee may limit the powers and duties of such successor additional Trustee by specifying the powers and duties each successor or additional Trustee shall have or not have, in writing in the written designation as provided for herein.  If no such limitations are specified in the aforesaid designation, and to the extent there are no such limitations, then, in case any successor or additional Trustee shall at any time be appointed, such a

-32-

successor or additional Trustee shall be clothed and vested with all the rights, duties, titles and powers, whether discretionary or otherwise, and shall serve without bond, all as if originally named as Trustee hereof.

(h)  The Corporate Trustee, if any, may sign checks or documents or instruments for the transfer of securities or other assets of any trust hereunder and may at any time give instructions or sign documents or instruments for the purchase or sale of securities or other assets of any trust hereunder which shall be binding on all Trustees hereunder; provided, however, in the event no Corporate Trustee shall be serving hereunder, then any one Trustee serving at any time may sign checks or documents or instruments for the transfer of securities or other assets of any trust hereunder and may at any time give instructions or sign documents or instruments for the purchase or sale of securities or other assets of any trust hereunder which shall be binding on all Trustees hereunder.

(i)  Any Individual Trustee may, from time to time, by instrument in writing, delegate any or all of his or her rights, powers, duties, authority and privileges, whether or not discretionary, to any other Trustee for such period or periods of time as may be specified in such written instrument; provided, however, that any such instrument shall be revocable at any time and that any Trustee who is granted any discretionary power hereunder may not delegate such discretionary power to any Trustee

-33-

who is not granted such discretionary power.

(j)   If at any time any interest in property situated in any state other than New Jersey or in a foreign jurisdiction is subject to administration under any trust created hereunder, and if the Trustee should be unwilling or should not be qualified or otherwise able to act in such state or jurisdiction, then said Trustee may resign and refuse to serve as Trustees with respect to such property, with the other Trustee continuing to act hereunder with respect to such property, or the Trustee may appoint as Trustee to serve within such state or jurisdiction any one or more qualified individuals or a Corporate Trustee by written instrument duly executed and acknowledged, as provided above.   In like manner, the Trustee may remove such trustee so appointed and appoint successors as the need may arise in order to fill vacancies resulting from such removal or for any other reason.   Said designation shall be in writing, signed by the Trustee then serving and delivered to the trustee so designated.   Upon receipt of said instrument, the then acting Trustee shall convey, assign and transfer such portion of the trust estate to the Trustee so designated.

16.   **TERMS.**   The term Trustee and all references to said Trustee as used throughout this agreement shall mean the trustee or trustees, male or female, multiple or singular, individual or corporate trustee, or any combination thereof, serving as trustee or trustees hereunder from time to time during the term of this trust.

17. <u>**NAME OF TRUST.**</u>  This trust shall be designated and known as "The Layton Irrevocable Trust".

18. <u>**ACCEPTANCE OF TRUST; APPLICABLE LAW.**</u>  The Trustee by joining in the execution of this agreement hereby signifies the Trustee's acceptance of this trust.  The Settlor hereby declares that this trust shall be construed and regulated by the laws of the State of New Jersey.  This Trust is irrevocable and not amendable in any way.

**IN WITNESS WHEREOF**, the said Settlor and Trustee have hereunto set their hands and seals the day and year first above written.

Signed, Sealed and Delivered
    in the presence of

_____                   (LS)
                           HARRY J. LAYTON,
                           Settlor

_____                   (LS)
                           DAYNA CLAXTON,
                           Trustee

<u>SCHEDULE A</u>

$10.00

**ACKNOWLEDGEMENT**

STATE OF NEW JERSEY, COUNTY OF MORRIS            SS:

BE IT REMEMBERED that on July 24, 2012, HARRY J. LAYTON
personally came before me and acknowledged under oath, to my
satisfaction, that this person:

    (a)  is named in and personally signed the attached document;
        and
    (b)  signed, sealed and delivered this document as his
        act and deed for the uses and purposes therein provided.

_____
                              Notary

IVETE RIZZOLO
A NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES DECEMBER 22, 20 _14_

STATE OF NEW JERSEY, COUNTY OF MORRIS            SS:

BE IT REMEMBERED that on July 24, 2012, DAYNA CLAXTON
personally came before me and acknowledged under oath, to my
satisfaction, that this person:

    (a)  is named in and personally signed the attached document;
        and
    (b)  signed, sealed and delivered this document as her
        act and deed for the uses and purposes therein provided.

_____
                              Notary

444270

IVETE RIZZOLO
A NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES DECEMBER 22, 20 ___ _14_

G

# DAY PITNEY LLP

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

CHARLES P. ABRAHAM
Attorney at Law

One Jefferson Road
Parsippany, NJ 07054-2891
T: (973) 966-8029 F: (973) 206-5993
cabraham@daypitney.com

July 8, 2019

Linda N. Engleby, Esq.
Coughlin Duffy
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962

     Re:   Estate of Harry J. Layton

Dear Ms. Engleby:

On behalf of Alcatel-Lucent USA Inc. (doing business as Nokia), we have reviewed your letter dated July 2, 2019 on behalf of Dayna Layton Claxton, together with the Harry J. Layton Trust for the Estate of Harry J. Layton (the "Documents"). We find the Documents not acceptable with respect to the retirement plans, savings plans and group health and welfare plans sponsored by Nokia. In order to obtain a passcode, a construction proceeding may be necessary to ascertain allocation of this estate.

Should you have any questions regarding Nokia benefits, please feel free to contact the Benefits Center.

Very truly yours,

Charles P. Abraham

CPA/dmr
Enclosures

103137318.1